UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HERITAGE FOUNDATION *et al.*,

*Plaintiffs*,

v.

U.S. DEPARTMENT OF JUSTICE,

*Defendant*.

No. 23-cv-1854 (DLF)

**ORDER**

Plaintiffs the Heritage Foundation and one of its officers, Mike Howell, bring this action against the U.S. Department of Justice under the Freedom of Information Act ("FOIA"), seeking the production of certain documents related to DOJ's investigation of Robert Hunter Biden, the son of the President of the United States, Joseph R. Biden.[1] *See* Compl., Dkt. 1.  The plaintiffs' request, dated March 10, 2023, seeks (1) "[a]ll documents and communications sent or received by . . . any employee of the U.S. Attorney's Office for the District of Delaware referring or relating to Special Counsel status for the investigation concerning Hunter Biden" and (2) "[a]ll documents and communications between or among employees of the U.S. Attorney's Office for the District of Delaware and employees of any other U.S. Attorney's Office with venue to bring charges against Hunter Biden or his associates in that jurisdiction."  FOIA Request at 1 (March 10, 2023), Pls.' Ex. 1, Dkt. 1-5.  The plaintiffs also contemporaneously sought expedited processing, *id.* at 6–11, which was granted on March 27, 2023, Pls.' Ex. 10, Dkt. 1-14.  As such, by statute, DOJ is required to process the plaintiffs' request "as soon as practicable."  5 U.S.C. § 552(a)(6)(E)(iii).

---

[1] For clarity, the Court will refer separately to "Hunter Biden" and "President Biden."

Roughly three months after the plaintiffs filed their request, on June 20, 2023, Hunter Biden was charged by information in the U.S. District Court for the District of Delaware with one count of knowingly possessing a firearm while an unlawful user of and addicted to a controlled substance, 18 U.S.C. §§ 922(g)(3), 924(a)(2), and two counts of willful failure to pay income tax, 26 U.S.C. § 7203.  *See* Information, *United States v. Biden*, No. 23-cr-61 (D. Del. June 20, 2023), Dkt. 2; Information, *United States v. Biden*, No. 23-mj-274 (D. Del. June 20, 2023), Dkt. 2.  That same day, the government and Hunter Biden jointly requested that the court schedule an initial appearance at which Hunter Biden would plead guilty to the tax charges and enter a pretrial diversion agreement as to the firearm charge.  *See* Letter, *Biden*, No. 23-cr-61, Dkt. 1 (June 20, 2023); Letter, *Biden*, No. 23-mj-274, Dkt. 1 (June 20, 2023).  The hearing was subsequently scheduled for July 26, 2023.  Order, *Biden*, No. 23-cr-61, Dkt. 3 (June 21, 2023).

The plaintiffs filed this suit on June 26, 2023.  Their complaint references the statements of two "IRS whistleblower[s]" regarding alleged efforts from within DOJ to block, delay, or otherwise hinder the criminal investigation of Hunter Biden.  Compl. ¶¶ 47–51; *see id.* ¶¶ 56–94.  In particular, the complaint alleges that according to the whistleblowers, "U.S. Attorney [for the District of Delaware David] Weiss sought to charge Hunter Biden with felony tax charges in the District of Columbia and Northern District of California, but in each case, the local U.S. Attorney—both appointed by President Biden—blocked him from doing so."  *Id.* ¶ 4.  Similarly, according to the whistleblowers and as alleged, "U.S. Attorney Weiss further stated . . . that he then requested Special Counsel authority from Main Justice to allow him to bring such charges directly, but was denied."  *Id.*

Before the Court is the plaintiffs' Motion for a Preliminary Injunction, Dkt. 6, which seeks, in light of recent developments and Hunter Biden's forthcoming plea hearing, to "compel the

2

production by July 21, 2023, of a narrowed subset of the records sought by the" original request. Pls.' Memo. in Support at 5, Dkt. 6-1.[2] The scope of requested documents for purposes of the preliminary injunction is "narrowed" only modestly:  As to only the second category of information originally requested, the plaintiffs now seek records only for which the U.S. Attorney for the District of Delaware is the custodian.  Mot. for Prelim. Inj. at 1, Dkt. 6.

## I. Legal Standard

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011) (quoting *Winter v. NRDC*, 555 U.S. 7, 22 (2008)). To prevail, a party seeking preliminary relief must make a "clear showing that four factors, taken together, warrant relief: likely success on the merits, likely irreparable harm in the absence of preliminary relief, a balance of the equities in its favor, and accord with the public interest." *League of Women Voters v. Newby*, 838 F.3d 1, 6 (D.C. Cir. 2016) (citation omitted).  The plaintiff "bear[s] the burdens of production and persuasion." *Qualls v. Rumsfeld*, 357 F. Supp. 2d 274, 281 (D.D.C. 2005) (citing *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004)).

Failure to show a likelihood of irreparable harm is sufficient to defeat a motion for a preliminary injunction. *See Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006).  The D.C. Circuit "has set a high standard for irreparable injury." *Mdewakanton Sioux Indians of Minn. v. Zinke*, 255 F. Supp. 3d 48, 52 (D.D.C. 2017) (quoting *Chaplaincy*, 454 F.3d at 297).  "First, the injury must be both certain and great; it must be actual and not theoretical.

---

[2] Although the Court appreciates the concerns raised by DOJ as to the acceptance of the plaintiffs' proposed reply brief, the Court will grant the motions to file a reply and accompanying affidavits due to the arguments raised in DOJ's opposition that were not fully addressed in the plaintiffs' opening brief.

The moving party must show the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm. Second, the injury must be beyond remediation." *Chaplaincy*, 454 F.3d at 297 (cleaned up).

## II.     Analysis

On the existing record, the plaintiffs have not made a sufficient showing of irreparable harm. Nor have they shown that they are sufficiently likely to succeed on the merits, or that the balance of the equities or the public interest weigh in favor of an entering an injunction. Accordingly, and for the reasons stated below, the Court will deny their motion for a preliminary injunction without prejudice.

### A.     Irreparable Harm

Because a failure to make a sufficient showing of irreparable harm is alone grounds to deny a motion for a preliminary injunction, *see Chaplaincy*, 454 F.3d at 297, the Court considers this factor before analyzing the other three. Here, the plaintiffs provide two reasons why failure to produce responsive documents ahead of their proposed deadline would cause irreparable harm. Neither is persuasive.

First, the plaintiffs cannot show irreparable harm simply because "[t]he information sought by this Motion goes to the heart of on-going House investigations and raging political controversy." Pls.' Memo. at 32. Undoubtedly, all FOIA requesters prefer to receive responsive records sooner rather than later. And in certain cases—including the one here—an agency will accelerate processing of a request because of a "compelling need" to do so. 5 U.S.C. § 552(a)(6)(E)(i)(I). But for the extraordinary remedy of a preliminary injunction ordering an agency to fulfill its obligations *by a date certain*, "[c]ourts in our district have generally found irreparable harm . . . only where the requested documents are 'time-sensitive and highly probative,

4

or even essential to the integrity, of an imminent event, after which event the utility of the records would be lessened or lost.'" *Heritage Foundation v. EPA*, No. 23-cv-748, 2023 WL 2954418, at *4 (D.D.C. Apr. 14, 2023) (quoting *N.Y. Times Co. v. Def. Health Agency*, No. 21-cv-566, 2021 WL 1614817, at *8 (D.D.C. Apr. 25, 2021)).  This fact alone distinguishes many of the cases cited by the plaintiffs.  As Chief Judge Boasberg has ably explained:

> For example, courts have granted preliminary injunctions in cases seeking documents regarding potential political interference with mail-in voting ahead of the imminent 2020 Presidential election, *see Protect Democracy Project, Inc. v. U.S. Dep't of Just.*, 498 F. Supp. 3d 132, 141 (D.D.C. 2020); documents relevant to the 2020 census where "the value of the information sought . . . would be materially lessened or lost" once the census process concluded, [*Brennan Ctr. for Just. at NYU Sch. of Law v. Dep't of Com.*, 498 F. Supp. 3d 87, 100 (D.D.C. 2020)]; documents related to an ongoing and time-limited impeachment process, [*Ctr. for Pub. Integrity v. DOD*, 411 F. Supp. 3d 5, 7, 11 (D.D.C. 2019)]; and documents related to a requester's role as a confidential FBI informant ahead of an imminent evidentiary hearing. *Aguilera v. FBI*, 941 F. Supp. 144, 151 (D.D.C. 1996); *see also generally New York Times*, 2021 WL 1614817, at *8 n.9 (canvassing these cases).  By contrast, courts have denied preliminary injunctions in cases without a definite impending or time-limited event, such as where plaintiffs sought documents related to FISA surveillance generally, *Elec. Privacy Info. Ctr. v. Dep't of Justice*, 15 F. Supp. 3d 32, 35, 39–40 (D.D.C. 2014); an already existing Consumer Financial Protection Bureau rule, [*Allied Progress v. CFPB*, No. 17-cv-686, 2017 WL 1750263, at *6 (D.D.C. May 4, 2017)]; records related to former Secretary of State Hillary Clinton's use of a private email server well before the election, *Daily Caller v. U.S. Dep't of State*, 152 F. Supp. 3d 1, 8–13 (D.D.C. 2015); or records concerning an individual's termination after the event.  *Wadelton v. Dep't of State*, 941 F. Supp. 2d 120, 121 (D.D.C. 2013).

*Id.* at *4.  The public debate inside and outside of Congress over Hunter Biden's actions, his criminal prosecution, and any involvement therein by the President of the United States will not end on July 26, 2023.[3]   Indeed, the issue may become even more salient over time as relevant investigations continue.

---

[3] Some case law suggests that, in order to secure a preliminary injunction for production by a date certain, a plaintiff need not point to a definite date after which the information's value diminishes. *See Am. Immigr. Council v. DHS*, 470 F. Supp. 3d 32, 38 (D.D.C. 2020).  But here, the plaintiffs specifically state in their reply brief that the "correct standard" "to justify injunctive relief" is whether the "utility of the records would be lessened or lost by a date certain."  Pls.' Reply at 26,

Second, as to the only specific event on a particular date on which the plaintiffs rely—Hunter Biden's scheduled July 26, 2023 plea hearing—the plaintiffs have not established how their access to this information would have any bearing on a judicial plea proceeding. The plaintiffs are not party to Hunter Biden's criminal case in the U.S. District Court for the District of Delaware; they cannot themselves "use [the information] in relation to Robert Hunter Biden's plea hearing set for July 26, 2023." Mot. for Prelim. Inj. at 2. And whether that court should accept Hunter Biden's guilty plea is not a political question subject to public debate that could be sparked by the production of documents under FOIA; it is a legal question for the presiding judge to determine under Rule 11 of the Federal Rules of Criminal Procedure. The plaintiffs have provided no reason to think that the court in Hunter Biden's case is incapable of deciding for itself whether it has sufficient information to determine whether to accept the plea or whether it must demand more. And the broader questions that are indeed the subject of public debate—the justifiability of DOJ's prosecution decisions with respect to Hunter Biden and any influence the President and his appointees exerted on that decision—will continue to have the same salience long after the July 26, 2023 plea hearing.[4]

Moreover, further undermining a claim of irreparable harm, DOJ has provided substantial reason to think that the requested records "are highly likely to be exempt in whole or significant

---

Dkt. 15-1 (cleaned up). In any event, even if the plaintiffs were not required to identify such a specific date, they have not shown that the information is likely to lose its relevance to public debate in roughly the timeframe they propose. That is, it may be that, at some future point, the delays in processing will have significantly lessened the utility of the records sought. But the plaintiffs have not provided probative, concrete evidence—beyond alleging generally that some committee investigations have begun—that the documents they seek will lose their utility in these congressional proceedings and their accompanying debates after July 26, 2023.

[4] Because the Court finds that the plaintiffs have not established irreparable harm, it need not consider whether, as DOJ argues, Def.'s Opp'n at 12–13, Dkt. 10, the plaintiffs' delay in filing their complaint and motion for preliminary injunction undermines their claim of irreparable harm.

part." Def.'s Opp'n at 9; *see Elec. Privacy Info. Ctr.*, 15 F. Supp. 3d at 46 (explaining that a party "cannot claim to be injured—much less 'irreparably' so—if the [agency] withholds documents that [the requester] is not entitled to access in the first instance"). For example, Exemption 5 protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5); *see, e.g.*, *CREW v. DOJ*, 45 F.4th 963, 971–72 (D.C. Cir. 2022) (deliberative-process privilege); *Jud. Watch, Inc. v. DOJ*, 432 F.3d 366, 369 (D.C. Cir. 2005) (work-product privilege). And Exemption 7(A) protects "records or information compiled for law enforcement purposes . . . to the extent that the production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7). On its face, the plaintiffs' request appears to call for the production predominantly of documents that would fit squarely within these and other exemptions. Of course, none of this is to prejudge any legal issues that may arise if and when the agency ultimately asserts these exemptions when producing responsive records. As in all cases, these FOIA exemptions do not give the agency a blank check to refuse to produce documents; instead, they simply authorize the withholding of documents in specific circumstances, subject to review by the Court. At least at this stage, however, it appears to the Court that the documents most likely to vindicate the plaintiffs' asserted interests justifying injunctive relief are those that are also most likely to be exempt from disclosure under FOIA.[5]

---

[5] Indeed, even if the Court were to order the plaintiffs' proposed production deadline, the Court would have to resolve any dispute over these exemptions before a final production. It is thus difficult to conceive of any scenario in which the plaintiffs would receive much of the information they seek by July 26, 2023, the date of the Hunter Biden plea hearing.

### B.      Likelihood of Success on the Merits

In addition, DOJ has raised serious doubts about the plaintiffs' likelihood of success on the merits. Both parties agree that the relevant merits question is whether DOJ is "*actually* processing the request as soon as practicable," Pls.' Memo. at 16 (cleaned up); *accord* Def.'s Opp'n at 8, and so whether it would be "practicable" to process the request in full by July 21, 2023. The plaintiffs have not met their burden of showing a likelihood of success on the merits of this question.

DOJ submitted along with its opposition an affidavit stating that there are "2,523 pages of potentially responsive records," Cain Aff. ¶ 15, Dkt. 10-1,[6] and attesting to several factors contributing to possible delays in processing the plaintiffs' request. Among those factors is the requirement that, for records that contain communications between the U.S. Attorney's Office for the District of Delaware and another DOJ component, the Executive Office for U.S. Attorneys ("EOUSA") must "forward . . . records to th[at] component[]." *Id.* ¶ 18. In addition, and for reasons already explained above, the processing time will be further lengthened by the agency's need to determine withholding and redactions for a high volume of potential exemptions. *See id.* ¶ 19. And in the EOUSA alone, there are "14 expedited requests that were received before" the one at issue in this case. *Id.* ¶ 20.[7] None of this is to say that the Court specifically endorses or tacitly accepts DOJ's proposed production schedule; that will be determined in the near future, after DOJ answers the complaint. But it does cast substantial doubt on the plaintiffs' claim—for which they marshal virtually no supporting evidence—that the "as soon as practicable" standard

---

[6] To be sure, that number might be reduced based on the modest narrowing of the plaintiffs' request for the purposes of this preliminary injunction motion.

[7] That DOJ might reallocate resources from other units to the EOUSA, use up more funding, or otherwise "surge the necessary resources when it considers a matter a priority," Pls.' Reply at 10–12, does not change the fact that the plaintiffs have not met their burden of showing that the production schedule they request would be, at a minimum, "practicable."

demands production on or before July 21, 2023, just 22 days after the filing of the plaintiffs' preliminary injunction motion and just a week after the plaintiffs' last filing in support of it.

It is not enough to respond that production must occur at breakneck speed because of "the extreme gravity and urgency of this case." Pls.' Memo. at 17. DOJ does not contest—for good reason—that the plaintiffs' request involves "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence." 28 C.F.R. § 16.5(e)(1)(iv); *see* Def.'s Opp'n at 4 n.1. But all the statute requires is that, once a request is expedited, the agency process it as soon as practicable. The plaintiffs provide no authority for the proposition that *within* the category of expedited requests, DOJ has an obligation to prioritize productions based on their "gravity and urgency." To the contrary, an agency faces the same obligation for "*any*" expedited request: namely, to process it "as soon as practicable." 5 U.S.C. § 552(a)(6)(E)(iii) (emphasis added).

### C.     Balance of the Equities and the Public Interest

Finally, the balance of the equities and the public interest militate against entering a preliminary injunction here. Both parties agree that when the government is a party, these two factors merge. Pls.' Memo. at 34; Def.'s Opp'n at 15; *see Nken v. Holder*, 556 U.S. 418, 435 (2009). Granting this preliminary injunction would mean effectively granting the plaintiffs' request extra-expedited status, jumping the line ahead of other requests deemed similarly time-sensitive under FOIA's expedition standards. *See Nation Mag. v. Dep't of State*, 805 F. Supp. 68, 74 (D.D.C. 1992) (noting as against the public interest that the reordering of request processing under a FOIA preliminary injunction "would severely jeopardize the public's interest in an orderly, fair, and efficient administrative of FOIA"). For that reason, the Court must consider the inherent tradeoffs involved in ordering an agency to complete a particular FOIA request ahead of the rest

of the queue—all without the benefit of hearing from the nonparty requestors whose productions would be delayed.

Here, DOJ has explained that other expedited requests before the EOUSA include "sensitive matters such as the January 6th Capitol riots, the search on Mar-A-Lago, classified records and communications related to the Special Counsel's Office, and criminal case files for a Capital Habeas case." Cain Aff. ¶ 23. The inevitable delay in processing those requests that would result from entering a preliminary injunction here further tilts the scale in DOJ's favor.

*   *   *

The plaintiffs have brought a FOIA request that all parties involved agree carries exceptional importance, and they have raised many arguments, legal and factual, that DOJ will be required to address over the course of this litigation. The plaintiffs have not shown, however, at least at this juncture, that they are entitled to the extraordinary preliminary injunctive relief they seek.

Accordingly, it is

**ORDERED** that the plaintiffs' Motions for Leave to File Reply Declarations and Reply Memorandum, Dkts. 14, 15, are **GRANTED**; and it is further

**ORDERED** that the plaintiffs' Motion for a Preliminary Injunction, Dkt. 6, is **DENIED WITHOUT PREJUDICE**.

**SO ORDERED.**

_Dabney L. Friedrich_
DABNEY L. FRIEDRICH
United States District Judge

July 19, 2023