IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HERITAGE FOUNDATION, *et al.*,<br><br>                Plaintiffs,<br>v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE,<br><br>                Defendant. | Case No. 1:23-cv-1854-DLF |

## JOINT STATUS REPORT

On July 28, 2023, the Court ordered the Parties to meet, confer, and file a report by August 4, 2023, proposing a schedule for further proceedings. *See* Minute Order (July 28, 2023). The Parties were required to address "the status of Plaintiffs' [Freedom of Information Act ("FOIA")] request, including the number of documents responsive to the request and the anticipated date(s) for release of the requested documents." *Id.*

**Defendant's Report and Position:**

**(a) Status of plaintiffs' FOIA request.**

Defendant incorporates by reference the July 10, 2023, declaration of Kara Cain, attorney-advisor at the Executive Office of United States Attorneys ("EOUSA"), ECF No. 10-1 ("Cain Decl."). Plaintiffs' FOIA request was submitted on March 10, 2023. *Id.* ¶ 8. The request seeks:

> A. All documents and communications sent or received by David Weiss or any employee of the U.S. Attorney's Office for the District of Delaware referring or relating to Special Counsel status for the investigation concerning Hunter Biden; and
>
> B. All documents and communications between or among employees of the U.S. Attorney's Office for the District of Delaware and employees of any other U.S. Attorney's Office with venue to bring charges against Hunter Biden or his associates in that jurisdiction.

1

*Id.*

On March 22, 2023, Defendant granted expedited processing of Plaintiffs' request under 28 C.F.R. § 16.5(e)(1)(iv). *Id.* § 11. Under FOIA, Defendant must therefore produce any responsive, non-exempt records "as soon as practicable." 5 U.S.C. § 552(a)(6)(E)(iii).

### (b) Number of documents responsive to Plaintiffs' request.

The United States Attorney's Office ("USAO") for the District of Delaware was tasked by EOUSA on March 23, 2023, with conducting searches for responsive records. Cain Decl. ¶ 14. Those searches initially yielded 2,523 pages of potentially responsive records from seven different custodians. *Id.* ¶ 15. Since then, the USAO has worked to gather additional, potentially responsive records. Those records number approximately 150 pages and will be added to EOUSA's review. The total number of pages may change if, as processing continues, additional pages are located or eliminated as non-responsive.

Plaintiffs asked for a breakdown of potentially responsive pages by custodian.[1] Defendant notified Plaintiffs that, of the initial 2,523 such pages, 182 were collected from U.S. Attorney David Weiss, and 355 were collected from Assistant U.S. Attorney Lesley Wolf. The balance of pages was collected from other attorneys and administrative staff.

To date, EOUSA has conducted a first-level review of 607 pages, including all potentially responsive pages initially collected from Weiss and Wolf. EOUSA has not made any final determination, however, as to the responsiveness or exemption of those pages. A second-level review is underway and, as Ms. Cain has explained, some records may need to be referred to other Department of Justice components for equity review. At this juncture, it is impossible for Defendant to anticipate the number of records, if any, that will be responsive to Plaintiffs' request.

---

[1] Plaintiffs also asked for a breakdown by "specification," *i.e.* between the two parts of Plaintiffs' request. Defendant does not have this information and will not have it until processing is complete.

**(c) Anticipated date(s) for release of the requested documents.**

Based on the considerations stated in Ms. Cain's declaration, Defendant anticipates that EOUSA can process 350 pages per month, and that EOUSA can make its first interim response by August 25, 2023.

**(d) Further proceedings.**

Once processing is complete, this FOIA case should proceed in the ordinary course: after Defendant's final response, the Parties should meet, confer, and propose a schedule for any necessary dispositive motion. Defendant does not anticipate moving for a stay under *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C. Cir. 1976).

\* \* \*

Plaintiffs' position merits three brief responses.[2]

1. With respect to production rate, Plaintiffs misstate Ms. Cain's prior declaration. She said, in full: "Given the volume of potentially responsive records and EOUSA's other demands—including the 14 expedited requests that were received before Plaintiffs'—EOUSA *would be* prepared to enter a processing schedule of 350 pages per month on a rolling basis, *if a production order were entered*." Cain Decl. ¶ 20 (emphasis added). Thus, Plaintiffs' insinuation that EOSUA is behind its own schedule is mistaken—as are Plaintiffs' calculations of "147 days," "well *over* a month," and "2.38 pages a day." Nevertheless, as noted above, EOUSA has preliminarily reviewed hundreds of pages from the custodians that Plaintiffs themselves would prioritize.

2. With respect to the precedent cited by Plaintiffs, Defendant does not dispute that the Court has broad authority to supervise processing and production in this case. But in exercising that discretion, courts "often give deference to the agency's release policies." *See Colbert v. FBI*,

---

[2] After Defendant tendered this response, Plaintiffs added footnotes 5, 6, 7, and 8 below. So as not to delay this filing, Defendant will reserve any response until the August 11, 2023, hearing.

No. 16-cv-1790, 2018 WL 6299966, at *3 (D.D.C. Sept. 3, 2018) (citing *Negley v. DOJ*, No. 15-cv-1004, 2018 WL 1610950, at *7 (D.D.C. Apr. 3, 2018)). In that vein, it is worth noting that none of Plaintiffs' citations below concerns EOUSA, and their argument that "DOJ" has a standard policy of 500 pages misrepresents this Court's opinion in *Colbert*. In that case, the declarant stated that the Record/Information Dissemination Section ("RIDS") of the FBI—not the Department of Justice generally, or any other of its FOIA-processing components—had instituted a policy of 500 pages per month. *See* Hardy Decl. ¶ 18, *Colbert v. FBI*, No. 1:16-cv-1790 (D.D.C. Dec. 14, 2016), ECF No. 15-1. Thus, when this Court said that "FBI has explained that *the agency's* standard policy is to process 500 pages per month for medium and large requests," *Colbert*, 2018 WL 6299966, at *3 (emphasis added), that was with respect to FBI only. The distinction is important. Mr. Hardy explained that, at RIDS, he supervised 249 employees. Hardy Decl. ¶ 2. By contrast, Ms. Cain explained that EOUSA has 25 professionals on staff. Cain Decl. ¶ 4. Plaintiffs' one-size-fits-all approach is simply not "practicable." 5 U.S.C. § 552(a)(6)(E)(iii).[3]

3. Neither of the two exhibits attached by Plaintiffs, or their characterizations of them, should change this analysis.[4]

Plaintiffs attach the transcript of Hunter Biden's plea hearing and note that Judge Noreika asked questions about the Government's and Mr. Biden's plea agreement and pretrial diversion agreement. But that only reinforces Defendant's prior arguments, and the Court's conclusion, that the district court in Delaware is "[]capable of deciding for itself whether it has sufficient

---

[3] Perhaps recognizing the varying resources available to different agencies, this Court has allowed at least two agencies to process records at the rate of 300 pages per month, even over the plaintiffs' insistence (in both cases) that the agencies process 500 pages per month. *See* Minute Order, *Citizens for Resp. & Accountability in Wash. v. U.S. Dep't of State*, No. 1:21-cv-742 (D.D.C. May 19, 2021); Minute Order, *Dailey Caller v. U.S. Dep't of Health & Human Servs.*, No. 1:20-cv-1149 (D.D.C. Sept. 22, 2020).

[4] As this is a joint filing, Defendant notes that the exhibits are attached by Plaintiffs only.

information to determine whether to accept the plea or whether it must demand more." Mem. Op. 6, ECF No. 18. Indeed, the court in Delaware has ordered briefing from the parties on this point, to be filed by August 25, 2023. *See* Oral Order, *United States v. Biden*, No. 1:23-mj-274 (D. Del. July 26, 2023). If anything, Mr. Biden's plea hearing is even *less* imminent than it was when Plaintiffs sought a preliminary injunction. That is hard to square with their continued plea for hyper-expedited processing. In any event, it remains true that "whether the court should accept Hunter Biden's guilty plea is not a political question subject to public debate that could be sparked by the production of documents under FOIA; it is a legal question for the presiding judge to determine under Rule 11 of the Federal Rules of Criminal Procedure." Mem. Op. 6.

Plaintiffs also attach a letter from the Chairmen of the House Committees on the Judiciary, on Ways and Means, and on Oversight and Accountability. That letter largely recounts Judge Noreika's questions from the plea hearing. The fact that these committees have asked more questions and sought more documents—both of which pertain to topics *other than* that those underlying Plaintiffs' FOIA request—does not warrant further expediting EOUSA's pace. As was true at the preliminary-injunction stage, "[t]he public debate inside and outside of Congress over Hunter Biden's actions, his criminal prosecution, and any involvement therein by the President of the United States will not end on" any date certain. Mem. Op. 5. "Indeed, the issue may become even more salient over time as relevant investigations continue." *Id.*

Plaintiffs request has already been expedited significantly. *See* Cain Decl. ¶ 21 ("EOUSA is processing Plaintiffs' request ahead of more than 2,000 non-expedited requests."). Defendant's proposed pace balances resources and respects other FOIA requestors who also have been granted expedited processing. *Id.* ¶ 22–23. Defendant should be allowed to continue on that pace.

**Plaintiffs' Position:**

1. **Prioritization.**  Plaintiffs have conveyed to Defendant a willingness to prioritize

5

by Specification of the Request, but given the limited data available, that avenue appears to be foreclosed. Plaintiffs believe that U.S. Attorney David Weiss and Assistant U.S. Attorney Lesley Wolf's records are being prioritized and that such a course is appropriate. Accordingly, at this juncture Plaintiffs see no efficiencies through prioritization.

    **2.** **Search Protocols.** Plaintiffs have offered to discuss search terms and other search protocol related issues now—rather than raise those issues after the fact. Defendant declined this offer.

    **3.** **Production Rate.** Plaintiffs believe that the production rate offered by Defendant is insufficient given that as the Court previously noted "[t]he plaintiffs have brought a FOIA request that all parties involved agree carries exceptional importance." ECF No. 18, at 10. Defendant's proposed schedule would allow it 147 days to process 350 pages on a Request of "exceptional importance." FOIA demands more than processing some 2.38 pages a day in such as case.[5] The Cain Declaration (¶ 20) references a production rate of 350 pages a month as of July 10, 2023, yet Defendant does not offer a production until August 25, 2023 in this Report—well *over* a month—doubling down on the notion that Defendant will not even begin to process Plaintiffs request until it has run the full time required for an Answer and faces a scheduling conference. There is a word for that: Gamesmanship. Moreover, as this Court has previously noted, DOJ has a standard "policy" of 500 pages a month for regular *non*-expedited requests. *Colbert v. FBI*, No. 16-cv-1790 (DLF), 2018 WL 6299966, at *3 (D.D.C. Sept. 3, 2018) (Friedrich, J.).[6] Applying a rate to an expedited request that is of "exceptional importance" below a standard

---

[5] Defendant erects a strawman arguing that Plaintiffs somehow insinuate Defendant is behind schedule. Not so. Plaintiffs merely illustrate that applying Defendant's preferred monthly rate across time elapsed produces an absurdly low number of pages processed per day.

[6] Defendant spills much ink attempting to distinguish *Colbert* arguing that all that is at issue there was the FBI's processing rate and EOUSA's rate is different. As an initial matter that is incorrect.

500-page rate does not comply with FOIA.[7]  It also does not comport with the moment.  More information only settles the raging national controversy.  Fighting tooth and nail to delay the release of information only fuels the fire.

Plaintiffs believe the exceptional importance of this case and the value of the information to the ongoing events which continue to unfold at a break-neck pace—illustrated most recently by the District Court in Delaware's decision to defer decision on the plea agreement and the House of Representatives' subsequent Joint Investigation.  *See* Trans of Plea Hearing, *Biden v. United States*, Nos 23-cr-61, 23-mj-274 (D. Del. July 26, 2023) (Plaintiffs' Exhibit 1); Letter from Jim Jordan et al. to the Hon. Merrick B. Garland (July 31, 2023) (Plaintiffs' Exhibit 2).  On the admittedly incomplete current record, Plaintiffs submit this Court should enter an order requiring full production by August 31, 2023.[8]

Courts have broad discretion to "oversee and supervise the agency's progress in responding

---

Resources must be considered at the agency level as relief runs against *the agency*.  *See* ECF No. 15-1 at 10–12.  Second, it is Defendant who misstates the cite—not Plaintiffs.  *See Colbert*, 2018 WL 1610950, at *3 ("When determining the rate at which a *federal agency* must respond to FOIA requests, courts often give deference to the agency's release policies.  *See Negley v. DOJ*, No. 15-cv-1004, 2018 WL 1610950, at *7 (D.D.C. Apr. 3, 2018), *appeal filed*, No. 18-5133 (D.C. Cir. May 2, 2018) (applying *DOJ's* 500-page interim release policy because the policy would "promote efficient responses to a larger number of requesters" and "the Court sees no basis to expedite release")" (emphases added)).

[7]  Defendant simply misses the point that 350 pages a month is an offer below that seen in normal cases not one that "carries exceptional importance."  ECF No. 18, at 10.  Under Defendant's view of FOIA there is no point to expedition—FOIA will only have value to historians.

[8]  Defendant's response boils down to "nothing to see here."  That the Request "carries exceptional importance" has no impact on *actual* effective rate of production.  ECF No. 18, at 10.  If expedition matters only as to ordering mechanisms under which Plaintiffs may have to wait many months for information of relevance and interest *now*, then FOIA cannot inform an on-going debate.  That position cannot be squared with the authority Plaintiffs cite stating that the importance and saliency of a request justifies an accelerated production rate—including *Colbert*.  And whatever deference to a release policy is appropriate, that deference applies in a run of the mill case—not one of "exceptional importance" as the standard release policy is *by definition* not calibrated to such a case.  *But see Al-Fayed v. CIA*, 254 F.3d 300, 307 (D.C. Cir. 2001) (agency receives no deference to its interpretation of FOIA's text).

7

to the request." *Seavey v. DOJ*, 266 F.Supp.3d 241, 244 (D.D.C. 2017). "A court therefore may use its equitable powers to require the agency to process documents according to a court-imposed timeline." *Clemente v. FBI*, 71 F.Supp.3d 262, 269 (D.D.C. 2014); *accord Villanueva v. DOJ*, No. 19-cv-23452 (AMC), 2021 WL 5882995, at *3 (S.D. Fla. Dec 13, 2021); *Advocs. for the West v. Bonneville Power Admin.*, No. 20-cv-1028 (AC), 2021 WL 2229280, at *6 (D. Ore. June 2, 2021); *Middle East F. v. DHS*, 297 F.Supp.3d 183, 186 (D.D.C. 2018). Plaintiffs believe two such factors justify acceleration here.

*First*.  Courts agree that public interest in the records is relevant; the more interest, the higher the processing rate. *See, e.g.*, *White v. DOJ*, 460 F.Supp.3d 725, 758–59 (S.D. Ill. 2020) ("existence of articulable public interest in records" relevant to processing rate); *Open Soc'y Just. Initiative v. CIA*, 399 F.Supp.3d 161, 167 (S.D.N.Y. 2019) ("exceptional public importance" of subject of request supported aggressive processing rate); *Seavey*, 266 F.Supp.3d at 248 (higher processing rate justified in part because academic requestor's research project was of "substantial substance" in an important area of history); *ACLU v. DOD*, 339 F.Supp.2d 501, 504 (S.D.N.Y. 2004) (acceleration justified in part because information concerning treatment of detainees in war on terror is a "matter[] of significant public interest"); *NRDC v. Dep't of Energy*, 191 F.Supp.2d 41, 43 (D.D.C. 2002) (higher processing rate justified in part because "the material which Plaintiff seeks is of extraordinary public interest.  The subject of energy policy, especially since the terrible events of September 11, 2001, is of enormous concern to consumers, to environmentalists, to the Congress, and to industry."); *cf. Middle East F.*, 297 F.Supp.3d at 186–87 (accelerated production rated denied in part because plaintiff did not "claim[]—other than in vague and generalized statements that the material 'is of significant importance to the debates of the day' and of 'time-sensitive importance' to debates over appropriations—that accelerated processing is necessary.").

*Second*.  Moving in tandem with the importance of the subject matter of the request is the

exigency and time sensitivity of the value of the records sought. *See, e.g.*, *Advocs. for the West*, 2021 WL 2229280, at *6 (accelerating production schedule for records needed for use prior to regulatory decision); *Open Soc'y*, 399 F.Supp.3d at 167 ("obvious and unusual time-sensitivity" supported aggressive production rate); *Sierra Club*, 2018 WL 10419238, at *6 (accelerating production rate in part because information sought was needed for use in pending Cabinet Secretary nominee's "confirmation process" and to respond to "Defendant's rollbacks of dozens of the prior administration's regulations"); *Colbert*, 2018 WL 6299966, at *3 (considering "compelling need of the request compared to others"); *Clemente*, 71 F.Supp.3d at 269 (aggressive processing scheduled justified by "importance" of professors' work and her declining health which under the FBI's proposed processing rate may result in her dying before production was completed); *NRDC*, 191 F.Supp.2d at 43 (fact that Congress would soon consider policy issues undergirding request support higher processing rate.).

There is ample precedent for setting production rates well above the effective rate sought here—roughly some 2,700 pages a month. *See, e.g.*, *Pub. Health and Med. Profs. for Transparency v. FDA*, __ F.Supp.3d __, 4:22-cv-915 (P), 2023 WE 3335071, at 1 (N.D. Tex. May 9, 2023) (production rate of 55,000 pages a month for COVID-19 safety trial related records); *Sierra Club*, 2018 WL 10419238, at *5–6 (ordering processing rate in excess of 2,000 pages a month for records relating to nominee to be Administrator of the EPA and possible conflicts of surrounding rescinded regulations); *Seavey*, 266 F.Supp.3d at 249 (ordering request concerning FBI and other government agencies actions against the anti-war movement processed at 2,850 pages per month); *Clemente*, 71 F.Supp.3d at 268–69 (ordering request investigating "very serious allegations of corruption" regarding FBI relationships with informants processed at the rate of 5,000 page per month); *ACLU*, 339 F.Supp.2d at 503–05 (ordering "17,000 to 20,000 pages" of records concerning the Government's treatment of post- 9/11 terrorism detainees processed in a

month)[9]; *NRDC*, 191 F.Supp.2d at 41–44 (ordering request concerning post 9/11 energy policy task force chaired by Vice President processed at roughly 7,500 pages per month).

To be sure, resource considerations are relevant, as is the effect on other requestors, but Plaintiffs believe any such submissions are not adequately supported by the current record and incorporate their analysis of the Cain Declaration at 10–12 of ECF No. 15-1.  The Cain Declaration simply does not answer the key questions.  Plaintiffs submit this Court may wish to direct Ms. Cain to appear at the scheduled August 11, 2023 hearing to allow for the further exploration of these issues.  Plaintiffs have no objection to flexible and innovative approaches to move the matter along.

**4.    Further Proceedings.**  Plaintiffs anticipate seeking an accelerated schedule for all further proceedings.

Dated:  August 4, 2023                              Respectfully submitted,

/s/ Samuel Everett Dewey
SAMUEL EVERETT DEWEY
(No. 999979)
Chambers of Samuel Everett Dewey, LLC
Telephone: (703) 261-4194
Email: samueledewey@sedchambers.com

ERIC NEAL CORNETT
(No. 1660201)
Law Office of Eric Neal Cornett
Telephone: (606) 275-0978
Email: neal@cornettlegal.com

DANIEL D. MAULER
(No. 977757)
The Heritage Foundation
Telephone: (202) 617-6975
Email: Dan.Mauler@heritage.org

---

[9] *See also Order*, *ACLU v. DOD*, No. 04-cv-4151 (S.D.N.Y Nov. 1, 2022) (ECF No. 35) (ordering Department of Defense to process at 10,000 pages a month).

ROMAN JANKOWSKI
(No. 975348)
The Heritage Foundation
Telephone: (202) 489-2969
Email: Roman.Jankowski@heritage.org

*Counsel for Plaintiffs*

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director

/s/ *Jason C. Lynch*
JASON C. LYNCH (D.C. Bar No. 1016319)
Trial Attorney
Federal Programs Branch
U.S. Department of Justice, Civil Division
1100 L Street, NW
Washington, DC 20005
Telephone: (202) 514-1359
Email: Jason.Lynch@usdoj.gov

*Counsel for Defendant*