IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HERITAGE FOUNDATION, *et al.*,<br><br>　　　　　　　　Plaintiffs,<br>　v.<br>UNITED STATES DEPARTMENT OF JUSTICE,<br><br>　　　　　　　　Defendant. | Case No. 1:23-cv-1854-DLF |

## JOINT STATUS REPORT

On August 11, 2023, the Court ordered the Parties to meet, confer, and file a report by August 21, 2023, a joint status report. *See* Minute Order (Aug. 11, 2023). The Parties report as follows:

**Defendant's Report and Position:**

**(a) Progress on Processing Plaintiffs' FOIA request.**

The Parties have made significant strides in their attempts to reach common ground on the pace of processing, and indeed have reached agreement with respect to one of two of Plaintiffs' demands. There remains, however a gap between the proposed pace of processing going forward. To summarize briefly[1]: Plaintiffs' FOIA request was submitted on March 10, 2023, and sought:

> A. All documents and communications sent or received by David Weiss or any employee of the U.S. Attorney's Office for the District of Delaware referring or relating to Special Counsel status for the investigation concerning Hunter Biden; and
>
> B. All documents and communications between or among employees of the U.S. Attorney's Office for the District of Delaware

---

[1] Defendant incorporates by reference the July 10, 2023, declaration of Kara Cain, attorney-advisor at the Executive Office for United States Attorneys ("EOUSA"), ECF No. 10-1 ("1st Cain Decl.") and their prior report filed on August 4, 2023, ECF No. 26 ("1st JSR").

1

>and employees of any other U.S. Attorney's Office with venue to bring charges against Hunter Biden or his associates in that jurisdiction.

1st Cain Decl. ¶ 8. On March 22, 2023, Defendant granted expedited processing of Plaintiffs' request under 28 C.F.R. § 16.5(e)(1)(iv). *Id.* ¶ 11. Under FOIA, Defendant must therefore produce any responsive, non-exempt records "as soon as practicable." 5 U.S.C. § 552(a)(6)(E)(iii).

The United States Attorney's Office ("USAO") for the District of Delaware was tasked by EOUSA on March 23, 2023, with conducting searches for responsive records. 1st Cain Decl. ¶ 14. Those searches initially yielded 2,523 pages of potentially responsive records from seven different custodians. *Id.* ¶ 15. Since then, the USAO gathered 162 additional pages, most of which appear to be hard-copy records. These have been added to EOUSA's review. The total number of pages may change if, as processing continues, additional pages are located or eliminated as non-responsive.

To date, EOUSA has conducted a first-level review of 634 pages, including all 537 potentially responsive pages initially collected from custodians Weiss and Wolf. EOUSA has fully processed those 537 pages and expects to make its first interim response—addressing all 537 pages—by Friday, August 25, 2023.

**(c) Defendant's Proposal for Further Processing.**

**1. The Parties' discussions.** The Parties have agreed to prioritize custodians Weiss and Wolf. Defendant has also accepted Plaintiff's request that all 537 pages initially collected from those custodians be processed by August 31, 2023. Although the Parties have engaged in productive dialogue with respect to the remainder of the documents, ultimately they were not able to bridge the gap with respect to the remaining 2,148 pages of potentially-responsive records. Plaintiffs proposed September 30 as a deadline to process the remainder of the pages; Defendant proposed a rate that, with two proposed conditions (one of which Plaintiffs have accepted) would permit completion by approximately November 30, with briefing to follow shortly thereafter.

**2. Defendant's proposals.** After the Court rejected EOUSA's prior proposal at the August 11, 2023, status conference, Defendant proposed to Plaintiffs that EOUSA process 500 pages per month. Plaintiffs rejected that offer.[2] After further internal deliberations, Defendant proposed two means by which EOUSA could further expedite processing.

First, Defendant proposed that EOUSA pause processing of all other Heritage Foundation requests pending final release in this case. Plaintiffs accepted that proposal with one caveat—that EOUSA not pause processing of any request received after March 10, 2023—and accordingly, EOUSA expects that it can process 600 pages per month after its first interim response this Friday.

Second, Defendant proposed that, for any record deemed exempt under 5 U.S.C. § 552(b)(7)(A), EOUSA would not process the record initially for any *other* exemptions (e.g., (b)(5) or (b)(6)). That would speed the pace by which EOUSA processes the initial queue of 2,668 pages, at which point the Parties could litigate the applicability of Exemption 7(A) and, if Defendant lost, it could *then* process those records for any other exemptions. But if Defendant prevailed on Exemption 7(A), there would be no need to litigate underlying exemptions. While piecemeal litigation is generally disfavored in FOIA cases, *see, e.g.*, *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Justice*, 854 F.3d 675, 680–81 (D.C. Cir. 2017), and while Plaintiffs did not accept this proposal, Defendant submits that this is the quickest way to litigate the Parties' competing views on whether Exemption 7(A) applies. If the Court accepts this proposal, EOUSA estimates that it could process 700 pages per month after its first interim response this Friday. Depending on how many documents are subject to Exemption 7(A), that rate could be faster. Overall, at EOUSA's proposed rate, the processing of the responsive records would likely be completed by the end of November.

---

[2] It is simply not true that 500 pages per month is "the 'default' Department processing rate." *Post*. To avoid repetition, Defendant refers the Court to pages 3–4 of the Parties' first Joint Status Report.

### (d) Defendant's Response to Plaintiffs' Proposal.

Plaintiffs propose that all potentially responsive pages initially collected from Weiss and Wolf be processed by August 31. As explained above, the Parties agree on that point; EOUSA expects to cover all such pages in its first interim response on August 25.

The only question, then, is how quickly EOSUA must process the remaining 2,148 pages.[3] On that score, the Parties are not far apart: Plaintiffs propose the end of September; Defendant proposes a pace by which it could be done by the end of November. Plaintiffs' proposal, which would require processing 1,790 pages per month, should be rejected.

**1. Prioritizing custodians.** It is undisputed that Defendant began by processing the two custodians (David Weiss and Lesley Wolf) that Plaintiffs themselves would have prioritized. Nevertheless, Plaintiffs demand the names of the other five custodians so that processing may be "prioritized" further.

The only question before the Court is how quickly EOSUA should have to process 2,148 pages; the order of custodians has nothing to do with the pace of processing. Nor does FOIA require an agency to process records in any particular order, or to disclose a list of custodians to a FOIA requestor before productions are complete.

Defendant has explained to Plaintiffs on multiple occasions that some custodians' names

---

[3] It is thus telling that Plaintiffs begin their portion of this JSR by complaining about the medium through which the Parties have conferred, instead of substantiating—legally or factually—their proposed processing pace. In any event, Defendant has explained that it often meets and confers via email, and Plaintiffs have never identified any issue that *must* be discussed by telephone.

Plaintiffs argue that Defendant's concerns are unfounded because the misleading coverage "stem[med] from reporting concerning a *publicly filed* [d]eclaration." *Post.* Putting aside that the declaration omitted other statements that would have been important context to any reader, *see* Def.'s Opp'n to Mot. for Prelim Inj. 9 & n.5, ECF No. 12-1, at least one article quoted others who were on the call and who, apparently, gave quotes other than through a publicly-filed declaration. *See Justice Department Admits It Could Delay Hunter Biden Plea Deal: Docs*, NY Post (July 7, 2023) ("A DOJ attorney [referring to the undersigned counsel] admitted to us that this sweetheart deal date was moveable.").

may be exempt under 5 U.S.C. § 552(b)(6) or (b)(7)(C). *See. e.g.*, *Bartko v. U.S. Dep't of Just.*, 898 F.3d 51, 71 (D.C. Cir. 2018) (exemption 7(C)'s "privacy protection also extends to law-enforcement personnel," who "do[] not forgo altogether any privacy claim in matters related to official business." (quoting *Lesar v. U.S. Dep't of Just.*, 636 F.2d 472, 487 (D.C. Cir. 1980)). Plaintiffs do not accept that answer, but they cannot excuse Defendant from its legal obligation under FOIA to protect employees' privacy. Defendant is still conducting the necessary balancing test, which will inform its first interim response, expected this Friday.

**2. Search adequacy.** Plaintiffs contest the adequacy of Defendant's search. But that, too, is premature. Defendant, while under no obligation to disclose search terms or methods at this stage, is committed to conferring on such terms and methods after production is complete, to avoid any unnecessary litigation in this case. Indeed, nothing prevents Plaintiffs from sending Defendant its recommended search terms now. The most expeditious way for EOUSA to process the identified documents, however, is to allow EOUSA to focus its resources on processing the search results that it has, rather than trying to re-do a search that Plaintiffs have no basis to think is deficient.

There is little efficiency to be gained from discussing the searches now. This is not a case in which there is a large volume of records and a FOIA or IT specialist unfamiliar with the records conducted back-end electronic searches. In those cases, discussing terms up front may well be prudent. In this case, the request was tasked to the District of Delaware and conducted by individuals who are personally familiar with the requested records and know where to look for them. The office and the relevant custodians searched their own electronic and hard-copy records.[4] That is a common and accepted method of searching in cases where the location of the documents

---

[4] As noted above, most of the 162 additional pages that were identified after the first Joint Status Report were hard-copy documents.

is known. *See, e.g.*, *Leopold v. U.S. Dep't of Justice*, 130 F. Supp. 3d 32, 40–41 (D.D.C. 2015). Indeed, it is the preferred way to search as it is the most likely to capture all responsive records.[5]

There are only 2,148 pages left to process. Plaintiffs have given no reason to interrupt that processing—which can be completed in a matter of months—to litigate search adequacy at this early stage.

**3. Reallocation of resources among DOJ components.** Plaintiffs insist that "[r]esources must be considered at the agency level, because relief runs against *the agency*." 1st JSR 7 n.6. Plaintiffs cite no authority for this proposition, which runs counter to decades of FOIA practice and regulations.

Begin with the judicial opinions cited by Plaintiffs. *See* Reply Br. 10 (July 13, 2023), ECF No. 15-1. In *Fiduccia v. United States Department of Justice*, the Ninth Circuit rejected FBI's request for a stay of *eight years* to answer an *1,800-page* request. 185 F.3d 1035, 1041 (9th Cir. 1999). That is not remotely comparable to Defendant's proposal in this case. Even still, the Ninth Circuit merely said that "[i]t *may be* that agency heads, such as the Attorney General in this case, *can be* forced by [FOIA] to divert staff from programs they think more valuable to [FOIA] compliance." *Id.* (emphasis added). That equivocal dictum is anything but a broad rule of FOIA processing. And it cannot be an interpretation of "as soon as practicable," 5 U.S.C. § 552(a)(6)(E)(iii), in any event, because the request in *Fiduccia* was not expedited. *Id.* In sum, *Fiduccia* has little application here and certainly does not support Plaintiffs' reallocation-of-resources theory.

Going even further afield, Plaintiffs cite an in-chambers opinion by Justice Scalia denying

---

[5] Plaintiffs imply below, without basis, that there is something inherently suspicious about the District of Delaware conducting a search of its own records. That suggestion should be rejected. There is no justification—before a single document has been produced—for impugning the integrity of career professionals in the Department, who are entitled to a presumption of regularity and good faith. *Bartko*, 898 F.3d at 74.

6

a motion by the State of Mississippi, citing "state budgetary cuts," for extension of time to petition for *certioari*. *Mississippi v. Turner*, 498 U.S. 1306, 1306 (1991) (Scalia, J., In Chambers). Even if that opinion were binding precedent—which it is not, *see Roman Cath. Archbishop of Washington v. Bowser*, 531 F. Supp. 3d 22, 31 n.5 (D.D.C. 2021)—it would have no application to a FOIA case in which the agency is not asking to be excused from any procedural requirement.[6] To the contrary, the Department has taken on *more* requirements by granting expedited processing.

The third cited opinion, *In re Aiken County*, concerned the Nuclear Waste Policy Act of 1983, which required the Nuclear Regulatory Commission ("NRC") to act on the Department of Energy's license application within three years of its submission—or four years, if NRC issued a written report explaining why. 725 F.3d 255, 257 (D.C. Cir. 2013). Given that more than five years had passed without action, the D.C. Circuit issued a writ of *mandamus*. In response to NRC's argument that it lacked sufficient appropriations, the Court of Appeals described the "key point" as follows: "The Commission is under a legal obligation to continue the licensing process, and it has at least $11.1 million in appropriated funds—a significant amount of money—to do so." *Id.* at 259. The D.C. Circuit never opined on the pace at which NRC had to act; the agency merely had to "promptly continue with the legally mandated licensing process." *Id.* at 267. In other words, holding of *Aiken County* is, at most, that an agency cannot do *nothing* when faced with a statutory mandate and possessing at least some funds with which to act. But EOUSA is not asking to put its pencils down. The Parties merely dispute how many hundreds of pages per month EOUSA must process. *Aiken County* has nothing to say on that question.

In their position below, Plaintiffs add a fourth citation: to Judge Pillard's concurrence in

---

[6] Even on its terms, Justice Scalia's opinion excepts "the results of events unforeseen and uncontrollable by counsel and client." *Id.* at 1306. Neither EOUSA nor its counsel can control how many FOIA requests are submitted at any given time, how many of those will warrant expedited processing, or how many records may be responsive to each request.

*Judicial Watch v. DH*S, 895 F.3d 770, 780 (D.C. Cir. 2018) (Pillard, J., concurring). Putting aside that Plaintiffs' lead citation is *again* an opinion with no binding effect whatsoever—Judge Pillard wrote only for herself, and only on the mootness question—the opinion says nothing about assessing the appropriate processing rate at the agency vs. component level. *See generally id.* If Plaintiffs are invoking Judge Pillard's dictum that agencies "lack incentives" to "swiftly disclose all nonexempt information," that is hard to square with the Department's granting of expedited processing this case. If Plaintiffs mean to compare the Department's actions here with the Secret Service's actions in *Judicial Watch*, they have again failed to draw an apt analogy. *See id.* at 787 (Pillard, J. concurring) ("When Judicial Watch filed this suit, the nineteen sequential requests at issue here had been pending for anywhere from seven to fifteen months without a single determination—let alone production—on any of the requested travel-expense information."). In this case, DOJ granted expedited processing; made a determination within the statutory deadline; and has proposed a pace of production that will resolve Plaintiffs' request in mere months.

Weeks after this issue was first raised in the Parties' meet-and-confer correspondence, Plaintiffs still cannot offer a *single* opinion, order, or court filing that supports their reading of the statute.[7]

With no precedent to support Plaintiffs' theory, consider judicial practice—starting with this Court. The Parties both cited *Colbert v. Federal Bureau of Investigation* in their prior report. *See* 1st JSR 3–4, 6 (citing *Colbert v. Fed. Bureau of Investigation*, No. 16-cv-1790, 2018 WL 6299966, at *3 (D.D.C. Sept. 3, 2018)). There, this Court presided over a FOIA request to FBI for the investigative file of the "D.B. Cooper skyjacking incident." *Id.* at *1. The parties disputed

---

[7] Neither of Plaintiffs' two out-of-circuit, district-court cases says *anything* about whether to assess available resources at the agency or component level. *See Stevens v. Dep't of Health & Hum. Servs.*, __ F. Supp. 3d __, No. 22-cv-5072, 2023 WL 2711830, at *8 (N.D. Ill. Mar. 30, 2023); *Pub. Health and Med. Profs. For Transparency v. Food & Drug Admin.*, __ F. Supp. 3d.__ , No. 4:22-cv-915, 2023 WL 3335071, at *2 (N.D. Tex. May 9, 2023).

8

whether 500 pages per month was as "a reasonable production rate for the approximately 71,000 pages of responsive records." *Id.* at *3. In resolving that dispute, the Court relied on—and deferred to—a declaration from David Hardy, chief of FBI's Record/Information Dissemination Section ("RIDS"). On Plaintiffs' current theory, the Court erred in doing so. It should have, Plaintiffs now suggest, demanded a declaration that stated the available resources and current commitments of the entire Department of Justice.

By Plaintiffs' logic, many other courts in this District have similarly erred. *See, e.g.*, Minute Order, *James Madison Project v. U.S. Dep't of Just.*, No. 1:22-cv-92 (D.D.C. Aug. 30, 2022) (Cobb, J.) (denying the plaintiff's request for increased processing based on DOJ's representations about FBI's resources alone); Order, *Finders Keepers USA LLC v. U.S. Dep't of Just.*, No. 1:22-cv-9 (D.D.C. Apr. 18, 2022) (Mehta, J.) (entering production order after considering only FBI's representations); Minute Order, *Brady Ctr. v. Fed. Bureau Investigation* (Sep. 9, 2021) (Cooper, J.) (entering production order after considering only a declaration from FBI); Order, *Nat'l Ass'n Crim. Def. Lawyers v. Fed. Bureau of Prisons*, No. 1:18-cv-2399 (D.D.C. July 8, 2019), ECF No. 27 (Jackson, J.) (ordering the defendant to explain why the Criminal Division—not the Department of Justice as a whole—proposed to process 300 pages per month); Minute Order, *Blumenthal v. U.S. Nat'l Archives & Records Admin.*, No. 1:18-cv-2143 (D.D.C. May 21, 2020) (Moss, J.) (reducing the processing pace for the Office of Legal Counsel after considering a plea from that component, and not the Department as a whole); Minute Order, *Paul v. U.S. Dep't of Just.* (D.D.C. May 12, 2020) (McFadden, J.) (entering production order based on a declaration from FBI only); Minute Order, *Daily Caller News Found. v. Fed. Bureau of Investigation*, No. 1:18cv-1833 (D.D.C. July 1, 2019) (Kollar-Kotelly, J.) (entering production schedule after hearing arguments, including concerning a "heavy processing burden faced by the FOIA office," from FBI only). This is by no means an exhaustive list, and Defendant could—if the Court deemed it necessary—add

9

citations to other cases in which processing schedules were entered based on assessments at the component (not agency) level.

The truth is that none of these courts erred in considering information on a component level, because FOIA processing is decentralized. *See, e.g.*, 28 C.F.R. § 16.1(c) ("The Department [of Justice] has a decentralized system for processing requests, with each component handling requests for its records.").[8] Accordingly, "a requester should write directly to the FOIA office of the component that maintains the records being sought." *Id.* § 16.3(a)(1). Consistent with the decentralized structure, "[t]he head of a component, or designee, is authorized to grant or to deny any requests for records that are maintained by that component." *Id.* § 16.4(b). In other words, a FOIA request could be processed entirely by EOUSA without ever going outside that component. It would make little sense, therefore, to interpret "as soon as practicable" (5 U.S.C. § 552(a)(6)(E)(iii)) by reference to components that might otherwise have no role in processing that request. That is likely why Plaintiffs can muster no support for a contrary reading.

Finally, even if it were appropriate to consider resources at the Department level, those resources would need to be reallocated from other work, potentially to include other components' FOIA requests. The process of doing so would itself take time and would require EOUSA to dedicate resources to incorporating them into the ongoing process that is already proceeding at an expedited pace, and which would otherwise conclude by the end of November.

---

[8] Decentralized processing is consistent with FOIA itself, which often refers to processing components within agencies. *See* 5 U.S.C. § 551(a)(6)(A)(iii) ("The 20-day period under clause (i) shall commence on the date on which the request is first received by *the appropriate component* of the agency . . . .") (emphasis added); *id.* § 552(a)(6)(B)(iii)(III) ("the need for consultation, which shall be conducted with all practicable speed, with another agency having a substantial interest in the determination of the request or among two or more components of the agency having substantial subject-matter interest therein."); *id.* § 552(e)(2) ("Information in each report submitted under paragraph (1) shall be expressed in terms of each principal component of the agency and for the agency overall.").

**4. The public's interest.** Plaintiffs maintain that the "gravity of the moment" (*post*) militates in favor of a higher processing rate. Putting aside that Defendant has exceeded its proposed rate for the first interim response and is prepared (given one condition, explained above) to *double* that rate going forward, Plaintiffs cannot establish that the circumstances demand complete processing by their preferred date, September 30. The Court may take judicial notice of the fact that the criminal case on which Plaintiffs once predicated their Motion for Preliminary Injunction has since been dismissed, *see* Order, *United States v. Biden*, No. 1:23-mj-274 (Aug. 17, 2023), ECF No. 43, and that Mr. Weiss has been publicly authorized to bring cases in other jurisdictions, *see* Order No. 5730-2023, Appointment of David C. Weis as Special Counsel (Aug. 11, 2023), *available at* https://www.justice.gov/media/1309991/dl?inline. The Court previously found that the "public debate" over the issues in which Plaintiffs are interested would continue after the deadline they raised in their Motion for Preliminary Injunction. That remains true. But Plaintiffs can point to no event scheduled on or near September 30 by which Plaintiffs could argue that they need the documents processed. Defendant has proposed to complete processing by November 30, a date that accords with the public interest.

\* \* \*

Defendant respectfully submits that a hearing on this status report is unnecessary. The Court should consider the Parties' competing positions and enter a processing order. Should the Court prefer to hold another status conference, Defendant remains available on August 23, 2023, at the Court's convenience.

**Plaintiffs' Position:**[9]

I. **The Department has Refused to Confer with Plaintiffs on a Number of Relevant Issues.**

As an initial matter, Plaintiffs feel that their attempts to resolve matters related to production without judicial intervention have been met with an unnecessary degree of resistance.

*First.* Defendant has unnecessarily truncated the meet and confer process by refusing to engage with Plaintiffs via any medium other than email exchanges so to in Defendant's telling, "avoid another instance of our discussions being misrepresented in the media." Email from Jason Lynch to Samuel Everett Dewey (Aug. 18, 2023, 3:02 PM). To date, Defendant has not identified the basis for this concern. Plaintiffs presume it stems from reporting concerning a *publicly filed* Declaration. But as articulated, this concern makes little sense. To start, Defendant has never identified the alleged "misrepresentation" in question. Moreover, the Department has a fulsome press apparatus and to Plaintiffs' knowledge the Department never pushed back on this reporting.

In an effort to accommodate the Department's concerns, Plaintiffs offered to bear the cost of arranging for a court reporter to transcribe any in-person meeting or call and provide an overnight expedited transcript to both parties. The Department rejected this offer on the basis that a transcript of a meeting or call would somehow cause "misrepresentation" in the press. But this makes no sense—by definition a complete transcript is accurate—it cannot misrepresent.

---

[9] Plaintiffs *vehemently* disagree with the Department's response to its statement, but do not respond in full here in order to comply with the August 21, Joint Status Report filing deadline.

*Second*.  Defendant has repeatedly refused requests to provide Plaintiffs with any transparency into its search processes.  Plaintiffs have repeatedly reiterated that it makes more sense to at least *discuss* those issues now in the hopes that the parties will at the bare minimum be able to present disputes more efficiently to the Court.  It simply is more efficient.  It makes no sense to discuss searches after processing is completed and potentially be forced to go back and restart processing anew in response to a concern or negotiated accommodation.  That is why an iterative process is the usual course in FOIA litigation; indeed, Federal Programs has often *initiated* such conversations in other FOIA matters with Plaintiffs.

This has recently become a matter of acute concern to Plaintiffs as in declining to discuss search terms, the Department represented that:

> The request was sent to the District of Delaware and conducted by individuals who are personally familiar with the requested records and know where to look for them.  The office and the relevant custodians searched their own electronic and hard copy records (most of the 150 additional documents that were identified after our JSR were hard copy documents; they were not the result of a deficient or incomplete electronic search).

Email from Jason Lynch to Samuel Everett Dewey (Aug. 18, 2023, 3:02 PM).  As Plaintiffs explained only several hours later:

> Reading the below it seems there may have been custodian self-searches.  If so, we are shocked.  Ms. Cain's Declaration stated that "EOUSA tasked the USAO for the District of Delaware with running searches to find records responsive to Plaintiffs' request."  Typically, that phrase indicates IT was running backend searches.  A self-search would be a *major* issue in this case where there have been repeated accusations of misconduct made against U.S. Attorney Weiss and AUSA Wolf both by Congress and *under oath by case agents with contemporaneous documentation*.  Moreover, it would also be an issue as concerns pending *Congressional* requests and the integrity of those searches and records sets.

Email from Samuel Everett Dewey to Jason Lynch (Aug. 18, 2023, 4:19 PM).  To date, the Department has not responded to these concerns.

*Third*.  To date, the Department has declined to offer any additional information on custodians to allow prioritization beyond U.S. Attorney David Weiss and AUSA Leslie Wolf.  The Department has represented that it will not provide further names because such names "may" be exempt.  Setting aside that issue, Plaintiffs have offered to proceed via positions or title.  *E.g*. David Weiss's Executive Assistant.  The Department has not responded to this offer.

*Fourth*.  The parties are at a sharp impasse concerning the issue of resources.  Plaintiffs submit resources must be adjudicated at the *Departmental* level and in light of the Department's duty to prioritize its statutory obligations.  *See, e.g.*, *Judicial Watch v. DH*S, 895 F.3d 770, 780 (D.C. Cir. 2018) (Pillard, J., concurring) ("We are well aware that FOIA processing is no picnic: It can be painstaking and sometimes highly technical for requestors, agencies, and courts alike.  But FOIA nonetheless requires each federal agency to swiftly disclose all nonexempt information, even as it must accurately sort and withhold information that falls within the statute's exemptions.  Needless to say, busy agencies, ever pressed to do more with limited resources, lack incentives to get that done.  That is precisely why Congress enacted FOIA's timeframes and authorized district courts to enjoin agencies from improperly delaying public access to non-exempt records."); *In re Aiken Cnty.*, 725 F.3d 255, 259 (D.C. Cir. 2013) (Kavanaugh, J.) (limitation in funding does not excuse compliance with statutory obligations); *Fiduccia v. DOJ*, 185 F.3d 1035, 1041 (9th Cir. 1999) "[i]t may be that agency heads, such as the Attorney General in this case, can be forced by the Freedom of Information Act to divert staff from programs they think more valuable to Freedom of Information Act compliance." ; *cf. Mississippi v. Turner*, 498 U.S. 1306, 1306–07 (1991) (Scalia, J., In Chambers) ("Like any other litigant, the State of Mississippi must choose between hiring more attorneys and taking fewer

14

appeals. Its budget allocations cannot, and I am sure were not expected to, alter this Court's filing requirements.").

Plaintiffs also submit that necessarily any discussion of resources must take into account the Department's actions—or lack thereof—to supplement any putative resource deficit. *See, e.g.*, *Stevens v. Dep't of Health & Hum. Servs.*, __ F.Supp.3d__, No. 22-cv-5072 (MFK), 2023 WL 2711830, at *8 (N.D. Ill. Mar. 30, 2023) ("it is hard to swallow the proposition that an agency may, by its decisions on how to allocate resources, effectively make FOIA's expedited processing provision a dead letter."); *id.* at *8 ("ICE does not respond to Stevens's contention that ICE could have met its FOIA obligations by submitting appropriate budget requests"); *Pub. Health and Med. Profs. For Transparency v. FDA*, __ F.Supp.3d.__, No. 4:22-cv-915(P), 2023 WL 3335071, at*2 (N.D. Tex. May 9, 2023) ("And while the Court recognizes the limited resources that the FDA has dedicated to FOIA requests, the number of resources an agency dedicates to such requests does not dictate the bounds of an individual's FOIA rights.").

The Department disagrees.

Plaintiffs have been frank with the Department that in their view the Court has foreclosed the Department's position absent the Department providing more authority or data. But no such authority or data has been provided. To date, the Department has simply reiterated its position that EOUSA's resources are what matters and re-upped its *ipse dixit* as to the limitations of those resources. Aside from a recitation of Minute Orders which have no precedential affect and an effort to distinguish Plaintiffs' authority marked more by protestation than anything else, the Department has no way responded to the extant questions raised *by the Court* concerning processing rates and resources. Accordingly, Plaintiffs respectfully request that that the Court require the attendance of Kara Cain at the tentatively scheduled August 23, 2023 hearing.

Plaintiffs request this Court enter a production schedule by which all records for which U.S. Attorney Weiss and AUSA Wolf are custodians are produced by August 31, 2023, and all remaining records are produced by September 30, 2023.

*First*.  The Department's starting position after the August 11, 2023 hearing was to offer 500 pages a month, *i.e.*, the "default" Department processing rate for a case the Court has repeatedly stated concerns a FOIA request of "exceptional importance."  ECF No. 18, at 10.  Plaintiffs conveyed to the Department that was too little too late and was divorced from the gravity of the situation and the Court's conclusions concerning resources.  The only response from the Department was to offer to increase processing rates if *Plaintiffs* agreed to extraordinary accommodations.  Plaintiffs did so by voluntarily re-prioritizing their other pending requests.[10]  Based on that accommodation the Department offers 600 pages a month.  Thus, the Department has agreed to a production rate going forward beyond the "standard" Department rate of 500 pages a month only because *Plaintiffs* made an extraordinary accommodation.  Put differently, the Department has refused to accord the Request any expedited processing rate of its own accord other than processing some 537 records in the month of August.

*Second*.  Taking the Department's preferred rate, 2,148 pages at 600 pages a month, processing likely will not be completed until mid-December.  Part of that delay is because Defendant apparently did not begin processing the Request until at least after they answered Plaintiffs' Complaint.  Taking December 15, 2023 as a representative date, the Department proposes taking some 280 days to process a total of 2,685 pages—about 9.58 pages a day.  That pushes the boundary of propriety for delay absent an *Open America* stay in an *ordinary* FOIA

---

[10] The Department does not appear to have explored other alternatives discussed during the August 11, 2023 hearing such as moving resources from EOUSA's "regular" request queue.

Request.  *See, e.g.*, *Judicial Watch v. DHS*, 895 F.3d 770, 784 (D.C. Cir. 2018) ("In speculating about the government's explanation, our colleague embraces the idea that taking "hundreds of days to process requests," Diss. Op. 795, is a permissible interpretation of an agency's obligations under FOIA, when the statutory structure and our precedent in *CREW I* [v. FEC], 711 F.3d [180,] 186–87 [(D.C. Cir. 2013)], are to the contrary.").

It simply defies the gravity of the moment as to *this* "exceptional[ly] important[t]" Request.  ECF No. 18, at 10.  Public skepticism and distrust of the Department's conduct of the Robert Hutner Biden investigation remains at an all-time high.  And recent events have only poured further fuel on the fire.  Just this weekend apparent "authorized leaks" revealed additional selected, unconfirmed, and incomplete details concerning U.S. Attorney Weiss's authority and thus the records sought by Plaintiffs' Request.[11]  The continued strategic release of selected information by either Hunter Biden or the Department only compounds public distrust and skepticism.[12]  The need for transparency is thus at its zenith; the Department's litigation position opposing more expeditious release only breeds further mistrust.

*Third*.  Plaintiffs' proposed processing schedule allows the Department roughly two months—from when the *Department* determined to begin processing—to process some 2,685 pages.  A processing rate of some 1,343 pages a month is justified by the gravity of the situation and is substantially *less* than the expedited production rates ordered by courts in relevant cases.  *See* ECF No. 26, at 9–10.  Moreover, Plaintiffs proposal to allow for a smaller production in the

---

[11] *See* Michael S. Schmidt, Luke Broadwater, and Glen Thursh, *Inside the Collapse of Hunter Biden's Plea Deal*, N.Y. Times (Aug. 19, 2023); Betsy Woodruff Swan, *In Talks with Prosecutors, Hunter Biden's Lawyers Vowed to Put the President on the Stand*, Politico (Aug 19, 2023).

[12] Plaintiffs do not allege any impropriety on part of the Department.  They merely observe the Department is a possible source of the information and an "authorized" leak is by definition "authorized."

month of August allows for some measure of built in lead time for the Department to scale up its processing resources if it so chooses.

*Fourth.*  The Department offers to increase its production rate from 600 pages per month to 700 pages per month via the expedient of *not* processing for any other Exemptions a record deemed exempt under Exemption 7(A).  Thus, the Department posits that the application of Exemption 7(A) could be litigated as a threshold matter and only if Plaintiffs prevailed would the records be processed for additional exemptions.  Operating behind the veil of the limited information the Department has chosen to provide, Plaintiffs expect to challenge 7(A) Exemptions, and they expect to prevail on those challenges.  Thus, from Plaintiffs' perspective the Department's proposal would (likely) only result in (net) delay in that processing records concurrently is generally more efficient than processing them sequentially, starting, and stopping, for a round of briefing.  To be sure, if the number of records were far greater then resolving a common threshold legal issue while processing was occurring might make sense.  And if the delta in processing rate was far more pronounced the juice may be worth the squeeze in any event.  But that just is not the case here, again, *on the limited information the Department has made available.*[13]

Dated:  August 21, 2023                           Respectfully submitted,

                                                  /s/ Samuel Everett Dewey
                                                  SAMUEL EVERETT DEWEY
                                                  (No. 999979)

---

[13]  To be clear, Plaintiffs have no objection to briefing legal issues concurrently with production if the Department wishes to accelerate briefing certain key legal questions and those questions are fully presented categorically or will be fully presented in the anticipated August production.

Chambers of Samuel Everett Dewey, LLC
Telephone: (703) 261-4194
Email: samueledewey@sedchambers.com

ERIC NEAL CORNETT
(No. 1660201)
Law Office of Eric Neal Cornett
Telephone: (606) 275-0978
Email: neal@cornettlegal.com

DANIEL D. MAULER
(No. 977757)
The Heritage Foundation
Telephone: (202) 617-6975
Email: Dan.Mauler@heritage.org

ROMAN JANKOWSKI
(No. 975348)
The Heritage Foundation
Telephone: (202) 489-2969
Email: Roman.Jankowski@heritage.org

*Counsel for Plaintiffs*

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director

/s/ *Jason C. Lynch*
JASON C. LYNCH (D.C. Bar No. 1016319)
Trial Attorney
Federal Programs Branch
U.S. Department of Justice, Civil Division
1100 L Street, NW
Washington, DC 20005
Telephone: (202) 514-1359
Email: Jason.Lynch@usdoj.gov

*Counsel for Defendant*