IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HERITAGE FOUNDATION, *et al.*,<br><br>            Plaintiffs,<br>     v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE,<br><br>            Defendant. | Case No. 1:23-cv-1854-DLF |

**DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

The Court has ordered bifurcated briefing in this Freedom of Information Act ("FOIA") case. *See* Minute Order (Nov. 10, 2023). In accordance with the Court's order, Defendant U.S. Department of Justice hereby moves for partial summary judgment on the adequacy of the agency's search.

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

BACKGROUND ............................................................................................................................. 3

LEGAL STANDARD ..................................................................................................................... 5

ARGUMENT .................................................................................................................................. 6

I.  DEFENDANT IS ENTITLED TO PARTIAL SUMMARY JUDGMENT ON THE ADEQUACY OF ITS SEARCH. .............................................................................................................................. 6

    A.  The Department Conducted a Reasonable Search. ................................................. 6

    B.  It Was Reasonable to Ask Custodians Assigned to the Hunter Biden Matter, and Others at the Delaware USAO, to Participate in the Search. ................................. 8

    C.  Defendant Was Entitled To Withhold the Names of Four of the Custodians. ..... 10

II. PLAINTIFFS HAVE MUSTERED NO EVIDENCE UNDERMINING THE REASONABLENESS OF THE DEPARTMENT'S SEARCH OR THE GOOD FAITH OF ITS CUSTODIANS. .................................. 11

    A.  Plaintiffs Have Never Definitized Their Allegations of Misconduct by the Relevant Custodians. ............................................................................................ 12

    B.  Plaintiffs' November 9, 2023 Submission Falls Well Short of Carrying Plaintiffs' Burden to Rebut the Presumption of Good Faith. ................................................ 13

CONCLUSION ............................................................................................................................. 15

**INTRODUCTION**

Plaintiffs submitted a FOIA request for records about whether the U.S. Attorney in Delaware, David Weiss, was able to bring charges in other districts with respect to the President's son, Hunter Biden. *See* Compl. ¶¶ 4–5. Specifically, Plaintiffs sought (1) records related to Mr. Weiss' "Special Counsel status"; and (2) communications between the District of Delaware and other districts in which venue would have been appropriate to bring charges against Hunter Biden. *Id.* ¶ 36.[1] The only question before the Court, at this juncture, is whether the Department of Justice conducted a reasonable search for records responsive to Plaintiffs' request, using means reasonably calculated to uncover any such records. *See Watkins L. & Advoc., PLLC v. U.S. Dep't of Just.*, 78 F.4th 436, 442 (D.C. Cir. 2023).

The Department conducted a search consistent with its regular processes and in accordance with what FOIA requires. Plaintiffs do not suggest that the Department should have included additional custodians, searched other systems, or employed different search terms. Instead, Plaintiffs insist that no custodian within the District of Delaware U.S. Attorney's Office ("USAO") should have been allowed to participate in the search process, because all of them are irredeemably tainted by accusations of misconduct. That is a wholly conclusory and speculative argument, not least because Plaintiffs do not know who four of the eight custodians are—they are non-public-facing employees whose names have been withheld out of concern for their safety.

Plaintiffs do know the names of four custodians: (1) David Weiss; (2) Shannon Hanson, the First Assistant U.S. Attorney in Delaware; (3) Shawn Weede, the Criminal Chief in Delaware; and (4) Lesley Wolf, an Assistant U.S. Attorney ("AUSA") in Delaware who was assigned to the Hunter Biden investigation. Plaintiffs also know that Mr. Weiss—who was by far the most central

---

[1] Plaintiffs' request was submitted, and their complaint filed, before Mr. Weiss was appointed a Special Counsel on August 11, 2023. *See* Order No. 5730-2023, Appointment of David C. Weiss as Special Counsel (Aug. 11, 2023), *available at* https://www.justice.gov/media/1309991/dl?inline.

1

figure in Plaintiffs' FOIA request, their application for expedited processing, their complaint, and their motion for preliminary injunction—did not participate in the search of his records. Rather, the search was performed by information technology ("IT") professionals in the District of Delaware, and the search results were reviewed by Ms. Hanson, about whom Plaintiffs have raised no allegations of misconduct. That is, even if Plaintiffs' primary argument were valid, it would not even apply to the most important custodian in this case.

With respect to the other three named custodians, Plaintiffs have refused for months to detail *what* allegations disqualify these career prosecutors as FOIA custodians—even as recently as Plaintiffs' November 9, 2023 submission, ECF No. 32, in which they merely cite *en masse* interviews, testimony, and documents from two Internal Revenue Service ("IRS") investigators. Despite failing to muster any concrete allegations, Plaintiffs claim that they "cannot fathom how a self-collection" was allowed, "given the extensive documented accusations of misconduct by U.S. Attorney Weiss and those working under him." *Id.* at 11 (Aug. 31, 2023 email).[2]

Plaintiffs' position is long on bombast but short on facts. Given the record before it, the Court should have little trouble concluding that the Department conducted a good-faith, reasonable search. In response to Plaintiffs' FOIA request, the Department selected eight custodians—including Mr. Weiss, two of his deputies, and an AUSA assigned to the case—and searched their email archives for responsive records. Those archives are maintained by each U.S. Attorney's office and offer fully-indexed search capability for both emails and attachments. The District of Delaware chose three search terms to find records responsive to Part 1, and Plaintiffs later agreed that those terms were reasonable. The District of Delaware also chose 12 search terms (names of colleagues in one or more other districts) to find records responsive to Part 2. Those names are still

---

[2] Plaintiffs styled their November 9 response to the Court's order as a letter to the undersigned counsel, with the Parties' correspondence appended to the end of a single .pdf. Defendant will, therefore, cite the ECF page numbers of Plaintiffs filing when citing the Parties' correspondence.

being withheld, in part because the investigation and prosecution of Mr. Biden are ongoing, but Plaintiffs do not dispute that this was a reasonable way to search for records responsive to Part 2 of their request. Nor do Plaintiffs dispute that the District of Delaware applied a reasonable time limit on its email searches (2020 or later). Finally, all eight custodians also searched for hard-copy records, including notes, and ruled out that they would have kept any responsive records on other systems, such as text messages or Skype. Once the eight custodians gathered all potentially responsive records, they were transferred to the Executive Office for United States Attorneys ("EOUSA") for the ultimate responsiveness and exemption determinations.

Given these material and undisputed facts, the Department is entitled to summary judgment on the adequacy of its search.

## BACKGROUND

In evaluating the reasonableness of an agency's search, the Court may rely on an agency's "reasonably detailed [declaration], setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Petrucelli v. Dep't of Just.*, 453 F. Supp. 3d 126, 135 (D.D.C. 2020) (quoting *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999); *Oglesby v. U.S. Dep't of the Army,* 920 F.2d 57, 68 (D.C. Cir. 1990)). Defendant has attached such a declaration, along with a Statement of Undisputed Material Facts ("SUMF"). Other pertinent background is summarized as follows:

Plaintiffs brought this case because they believed that certain congressional testimony from the Attorney General was irreconcilable with statements made by two Internal Revenue Service investigators, later revealed to be Gary Shapley and Joseph Ziegler. *See* Compl. ¶¶ 3–5. Specifically, Plaintiffs had seized on allegations by those investigators "that U.S. Attorney Weiss sought to charge Hunter Biden with felony tax charges in the District of Columbia and the Northern

3

District of California, but in each case, the local U.S. Attorney—both appointed by President Biden—blocked him from doing so." *Id.* ¶ 4. Plaintiffs alleged that it was "essential" to know "whether the Attorney General misled Congress." *Id.* ¶ 8.

Notwithstanding that the Department had granted expedited processing before the litigation commenced, SUMF ¶ 4, Plaintiffs sought the extraordinary remedy of a preliminary injunction. *See* Mot. for Prelim. Inj. (June 29, 2023), ECF No. 6. The Court denied that motion on July 19, 2023, for several independent reasons. *See Heritage Found. v. U.S. Dep't of Just.*, No. 23-cv-1854-DLF, 2023 WL 4678763, at *1 (D.D.C. July 19, 2023). Plaintiffs appealed from the PI denial and moved for an injunction pending that appeal. *See* ECF Nos. 19, 21. The Court denied that motion summarily, *see* Minute Order (July 20, 2023), from which Plaintiffs also appealed, *see* ECF No. 22. Plaintiffs then sought an injunction pending appeal from the D.C. Circuit, which likewise denied Plaintiffs' motion summarily for failing to "satisf[y] the stringent requirements for" such relief. *See* Order (July 24, 2023), ECF No. 24. Ten days before Plaintiffs' opening appellate brief was due, they moved to dismiss their appeal as moot. *See* Mot. for Voluntary Dismissal, *Heritage Found. v. U.S. Dep't of Justice*, Nos. 23-5168, 5171 (D.C. Cir. Sep. 1, 2023), Doc. No. 2015158.

Meanwhile, in this Court, the Parties proposed alternative paces of production for the potentially responsive records. *See* Joint Status Rep. (Aug. 21, 2023), ECF No. 27. The Court entered a production order on August 22, 2023, with which the Department has abided—making interim productions on August 25, 2023, and September 29, 2023, and a final production on October 31, 2023[3]. *See* SUMF ¶¶ 35–38. The agency has processed more than 3,000 pages and released—in whole or in part—all responsive, non-exempt records. *Id.* ¶ 39.

The Court also ordered the Parties to confer on the agency's search terms. *See* Minute

---

[3] The Parties disagreed about the manner in which Defendant processed those pages in its first interim response. To avoid any dispute, Defendant re-released those records in a "revised first interim response" on September 1, 2023.

4

Order (Aug. 22, 2023). In a series of emails over the ensuing weeks, Defendant explained in detail how the search was conducted. This correspondence was recently attached by Plaintiffs to their November 9, 2023 submission. *See* ECF No. 32 at 5–17. The Department answered follow-up questions from Plaintiffs and provided them far more information than merely the "search terms" that the Court had ordered. The Department even agreed to re-run searches by Mr. Weede and a non-attorney employee at the Delaware USAO—who had searched using their Outlook client interfaces instead of through Proofpoint—and to replace the tranches previously collected, to the extent they differed. *See id.* at 8 (Sep. 7, 2023 email).

Defendant also sought to confirm that no compromise—such as re-running Ms. Wolf's search only—would satisfy Plaintiffs. Unfortunately, Plaintiffs' position is as absolute as it is unfounded: "There is no basis for compromise here. The searches were tainted *period*." *Id.* at 13 (emphasis in original).

## LEGAL STANDARD

"In order to obtain summary judgment [on the adequacy of its search] the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Watkins L.*, 78 F.4th at 442 (quoting *Oglesby*, 920 F.2d at 68). An agency need not "search every record system" or "demonstrate that all responsive documents were found and that no other relevant documents could possibly exist." *Id.* (quoting *Oglesby*, 920 F.2d at 68 (citation omitted)). Rather, "[a]n agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Id.* (quoting *Valencia-Lucena*, 180 F.3d at 325 (cleaned up)).

# ARGUMENT

## I. DEFENDANT IS ENTITLED TO PARTIAL SUMMARY JUDGMENT ON THE ADEQUACY OF ITS SEARCH.

### A.    The Department Conducted a Reasonable Search.

Defendant will not repeat here the process by which it searched for responsive records; that is detailed in Ms. Cain's declaration and the accompanying Statement of Undisputed Material Facts. Instead, the Department will illustrate why that process was adequate.

To evaluate the adequacy of a search under FOIA, a court must first examine the scope of the request itself. *See Nation Mag., Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 889 (D.C. Cir. 1995). Plaintiffs submitted their FOIA request on March 10, 2023, seeking (1) records related to "Special Counsel status" of David Weiss; and (2) records of communications between the District of Delaware and "any other U.S. Attorney's Office with venue to bring charges against Hunter Biden." SUMF ¶ 1.

Plaintiffs' request was facially overbroad in several respects. For example, neither Part 1 nor Part 2 contained any time limitation. Furthermore, Part 2 was unbounded by subject matter; on its face, it would have swept in every email sent by anyone at the District of Delaware to anyone in another district, where venue was appropriate as to Hunter Biden, about anything. Faced with a patently overbroad request, the Delaware USAO began by applying a time limit of 2020-or-later on all email searches. *Id.* ¶ 14. Plaintiffs have never disputed that temporal limitation.

With respect to Part 1, each custodian's archive was searched for "special counsel," "special attorney," and "515." SUMF ¶ 16. The Parties agree that those terms were reasonably designed to yield responsive records. But merely searching the eight custodians' accounts for those three terms would have yielded grossly overbroad results. For example, because 28 U.S.C. § 515 is the statutory basis for designating a Special Assistant United States Attorney ("SAUSA"), searching "515" would have swept in every email about any SAUSA designation in any district,

with respect to any investigation. To avoid that result, the District of Delaware custodians filtered out search-term results that either did not pertain to the Hunter Biden investigation or used one of the relevant search terms in an irrelevant context—*e.g.*, "special counsel" to refer to a DOJ official's counselor (not appointment under 28 C.F.R. Part 600) or the number "515" in a signature-block phone number. SUMF ¶ 23. That was a sensible step, designed to process Plaintiffs' request most efficiently and to get them responsive records most quickly.

With respect to Part 2, each custodian's archive was searched for ten names of employees at one or more other USAOs. SUMF ¶ 18. The attorney custodians' archives were searched for two additional names. *Id.* ¶ 19. These names were adjudged by the Delaware USAO custodians—who were best positioned to know—most likely to capture records of communications with any district(s) in which venue might have been appropriate in the Hunter Biden investigation. SUMF ¶ 20. Those names and locations continue to be withheld under Exemptions 6 or 7(A), SUMF ¶ 21, but Plaintiffs do not dispute in principle that this was a reasonable way to capture records responsive to Part 2 of the request.[4]

Finally, Mr. Weiss was the one custodian who did not "self-search." ECF No. 32 at 10 (Aug. 31, 2023 email). (Although nothing disqualified Mr. Weiss from searching his own records, as the U.S. Attorney, it is common for others to perform that task on his behalf.) Mr. Weiss was clearly the focus of Plaintiffs' FOIA request, their application for expedited processing, their complaint, and their motion for preliminary injunction. Indeed, none of those four documents even mentions Ms. Hanson or Mr. Weede, *see* ECF Nos. 1, 1-5, 6, and Plaintiffs' Complaint makes only

---

[4] When the Parties proceed to litigate the agency's withholdings—or in the interim, if the Court feels it needs to know the terms in order to pass on search adequacy—Defendant would be willing to tender these terms *ex parte*.

7

limited references to Ms. Wolf.[5] To this day, Plaintiffs theory of misconduct, such as it is, still flows from Mr. Weiss. *See* ECF No. 32 at 2 (arguing that "Weiss' own conduct clearly taints his chosen prosecution team"). Putting aside that Plaintiffs still don't say what that misconduct is—and without conceding that Mr. Weiss or anyone else committed any—such allegations are unavailing because Mr. Weiss did not participate in the search of his (or anyone else's) records. Under Plaintiffs' own standard, therefore, Mr. Weiss' collection was not "tainted." That forecloses Plaintiffs' concerns as to the central custodian in this matter. But it also undermines their argument that other custodians' collections must be "tainted," because those custodians would have known that their records would overlap substantially with Mr. Weiss'.

> **B.     It Was Reasonable to Ask Custodians Assigned to the Hunter Biden Matter, and Others at the Delaware USAO, to Participate in the Search.**

There is nothing unusual about custodians searching their own files for potentially responsive records. *See Akel v. U.S. Dep't of Just.*, 578 F. Supp. 3d 88, 93, 95 (D.D.C. 2021) (affirming in pertinent part a search conducted by AUSAs for their own records); *Houser v. Church*, 486 F. Supp. 3d 117, 128, 134 (D.D.C. 2020) (affirming a search in which IRS custodians were instructed "to look for any records potentially responsive to Part 2 as they performed their searches for records responsive to Parts 1 and 3") (cleaned up); *Hunton & Williams LLP v. U.S. Env't Prot. Agency*, 248 F. Supp. 3d 220, 236 & n.15, 238, 239 (D.D.C. 2017) (the EPA "custodians searched for and collected other responsive files that would not be contained in the

---

[5] There are five total mentions of Ms. Wolf, all of them in Plaintiffs' complaint. *See* Compl. ¶¶ 67, 71, 75 79, 80. The only allegations were that she concurred in a recommendation to charge Hunter Biden for tax years 2014 and 2015 (¶ 67); that she presented the potential case to the First AUSA in the District of Columbia (¶ 71); that she was present at a June 15, 2022 meeting at Main Justice (¶ 75); that she told Mr. Shapley and others "that United States Attorney Weiss indicated that the end of September would be his goal to charge the 2014 and 2015 years, because they did not want to get any closer to a midterm election" (¶ 79); and she was part of a four-attorney team that conveyed, in an August 2022 meeting, that they would approve charges for tax years 2017, 2018, and 2019, but not 2014 or 2015 (¶ 80).

8

email system," and the Corps of Engineers custodians "searched their email (inbox, sent mail, and archives) and electronic documents on their computer as well as hard copy files they maintained" (cleaned up)); *Leopold v. Dep't of Just.*, 130 F. Supp. 3d 32, 40–41, 41– (D.D.C. 2015) (affirming, in pertinent part, a search in which DOJ staff members were permitted to "advise[] the liaison that they either (i) had no responsive records; (ii) would conduct their own search and provide responsive material directly to the [Office of Information Policy]").[6]

Indeed, that is often the preferable method, given that custodians are "the best authorities on what records they would personally maintain." *Leopold*, 130 F. Supp. 3d at 40. In this case, for example, no member of EOUSA or the Delaware USAO's IT staff could have crafted the 12 search terms used to find records responsive to Part 2 of the request. Nor could an EOUSA FOIA professional have discerned that a hypothetical email from Mr. Weiss to an AUSA in another district, saying merely "Thanks for the call Tuesday and for your offer to support any charges we might bring," pertained to the Hunter Biden and was therefore responsive.[7] Thus, the irony of Plaintiffs' position is that if no one from the Delaware USAO had participated in the review, the search would have been *less* reasonably calculated to identify responsive records and may well have resulted in *fewer* responsive records.

Courts have upheld searches performed by custodians even when they are the subject of the FOIA request and have been accused of misconduct. In *Akel*, for example, the FOIA requestor was a convicted felon who "speculate[d] that the federal prosecutors in his case engaged in inappropriate, *ex parte* communications with the presiding judge over the course of [the requestor's] criminal proceedings." 578 F. Supp. 3d at 92. And yet the FOIA court upheld a search conducted by the very AUSAs who had prosecuted the case and defended the conviction on appeal.

---

[6] The court in *Leopold* later reconsidered its opinion, No. 14-cv-00168-APM, 2016 WL 7839130 (D.D.C. Apr. 25, 2016), for unrelated reasons.

[7] This hypothetical should not be taken to mean that any such email exists.

9

*See id.* at 93, 95.[8] If AUSAs can help fulfill a FOIA request from a man whose liberty is at stake, surely they can help fulfill a request from a public-policy organization seeking information about "Special Counsel status."

Indeed, FOIA custodians "are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *Wilson v. U.S. Dep't of Just.*, 270 F. Supp. 3d 248, 255 (D.D.C. 2017) (quoting *SafeCard Servs., Inc. v. U.S. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (cleaned up)); *cf. Al-Hela v. Biden*, 66 F.4th 217, 236 (D.C. Cir. 2023) (en banc) ("The presumption of regularity supports the official acts of public officers and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties.") (quoting *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 174 (2004)). Accordingly, once the agency has "shown that its search was reasonable, the burden is on the requester to rebut that evidence by a showing that the search was not conducted in good faith." *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996) (citing *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1383 (8th Cir. 1985)). "This [rebuttal] can be done either by contradicting the [agency's] account of the search procedure or by [presenting] evidence [showing] the [agency's] bad faith." *Id.* at 35–36 (citing *Miller*, 779 F.2d at 1384). Because Plaintiffs have not adduced such evidence of bad faith, it was reasonable for the Delaware USAO custodians to participate in the search.

### C. Defendant Was Entitled To Withhold the Names of Four of the Custodians.

The Department has withheld the names of four of its custodians: an AUSA assigned to the Hunter Biden investigation and three administrative personnel. These are all non-public-facing employees, whose names have been withheld under Exemption 6 or 7(C) from any disclosed

---

[8] The court ultimately ordered EOUSA to search the archives of a third, since-departed AUSA (Mr. Swaim). *Id.* at 97. But the Court never questioned, and indeed affirmed, that the other two AUSAs (Ms. Forbes and Mr. Register) could conduct what Plaintiffs call a "self-search." *Id.* at 95.

records.[9]

In this case, Defendant has also withheld their names from the agency's search declaration. That is because the Delaware USAO has experienced an extraordinary volume of threats to its employees working on the Hunter Biden matter. Cain Decl. ¶ 16. Individuals have sent more than 150 letters and left more than 40 voicemails criticizing the investigation and those who participated in it. *Id.* ¶ 17. These messages included threats, some of which suggested that USAO personnel be subjected to physical violence. *Id.* ¶ 17. Others have been vilely antisemitic. *Id.* Several threats were so serious that they were referred to the United States Marshals Service and the Federal Bureau of Investigation for assessment and potential action. *Id.* ¶ 18.

So as not to dignify these messages, the Department has not catalogued them exhaustively. Should the Court desire more evidence of these threats, Defendant would be willing to elaborate *ex parte*.

## II. PLAINTIFFS HAVE MUSTERED NO EVIDENCE UNDERMINING THE REASONABLENESS OF THE DEPARTMENT'S SEARCH OR THE GOOD FAITH OF ITS CUSTODIANS.

Whether or not they dispute the general principle that custodians may help gather potentially responsive records, Plaintiffs argue that the custodians in this case should have been disqualified. Yet, in the months since Defendant first asked, Plaintiffs still have not definitized what allegations have been made against the four named custodians or why those allegations undermine the presumption of good faith that would otherwise apply. Plaintiffs' filings in this case have made generalized reference to testimony and public allegations, but they have never done more than insinuate that these sources contain allegations sufficient to overcome FOIA's presumption of good faith. Their November 9 filing is emblematic: it lists five public sources, including a collection of sources, which total hundreds of pages of material, but which nowhere

---

[9] Defendant will support personal-privacy exemptions when the Parties ultimately litigate the agency's withholdings.

11

identifies a specific allegation of misconduct. *See generally* ECF No. 32.

Should Plaintiffs finally unveil these allegations in their cross motion for summary judgment, Defendant will respond in due course. For now, Defendant will briefly demonstrate why Plaintiffs' offerings to date are insufficient.

### A. Plaintiffs Have Never Definitized Their Allegations of Misconduct by the Relevant Custodians.

As Plaintiffs know—but conspicuously omit from their November 9 filing—Mr. Weiss did not participate in the search of his records. *Id.* 11–12 (Aug. 29, 2023 email); SUMF ¶¶ 23–34. In other words, any challenge to custodians' "self-searching" is academic with respect to his records. That leaves three custodians whose identities are known to Plaintiffs, and who participated in the search: Shannon Hanson, Shawn Weede, and Lesley Wolf. All three custodians are career federal prosecutors.

Plaintiffs cannot summon even an *accusation* of misconduct by Ms. Hanson or Mr. Weede. All Plaintiffs can bring themselves to "note" is that these custodians were "directly involved in Weiss' responses to Congress"—which, needless to say, is not misconduct—and that they "are specifically referenced by the career [IRS] whistleblowers and in the records released by the House Ways and Means Committee." ECF No. 32 at 2.[10] But the Court should not be deceived: as detailed below, that merely means that their *names appear* in those sources.[11] Based on a review of the referenced materials, neither Mr. Shapley nor Mr. Zeigler has accused Ms. Hanson or Mr. Weede

---

[10] When Defendant's counsel pointed out that its custodians are "career civil servants," Plaintiffs responded as follows: "As to your point regarding accusing 'civil servants' of misconduct—what of it? The civil service is not composed exclusively of angels. Misconduct is misconduct, and history is replete with examples of misconduct committed by civil servants." ECF No. 32 at 7 (Sep. 27, 2023 email). Thus, Plaintiffs seem to believe that the IRS whistleblowers' testimony should be credited in part because it comes from "career" employees, but that the same does not hold for the Delaware USAO.

[11] Even still, Plaintiffs' use of the term "whistleblowers" (plural) is incorrect, as only Mr. Shapely even mentioned Ms. Hanson or Mr. Weede.

of misconduct. Nor, for that matter, have Plaintiffs.

Plaintiffs previously tried to single out Ms. Wolf. *See* ECF No. 32 at 7 (Sep. 27, 2023 email). But even then, Plaintiffs could only allude to "sworn testimony by congressional whistleblowers alleging that she acted improperly." *Id.* Plaintiffs have never cited specific testimony, never identified any improper conduct, and have never explained why any such misconduct would disqualify Ms. Wolf (or anyone else) from gathering records that are potentially responsive to a request about whether Mr. Weiss had the ability to bring charges against Hunter Biden in other districts. What alleged misconduct by Ms. Wolf suggests that she would hide documents on that topic? More to the point, which allegation is so serious and so credible that it overcomes FOIA's presumption that she did not? Plaintiffs have never said.

As of this filing, Defendant has not been presented with any specific allegation by Plaintiffs of any misconduct by Mr. Weiss, Ms. Hanson, Mr. Weede, or Ms. Wolf. As demonstrated in the following section, that includes Plaintiffs' most recent filing.

### B. Plaintiffs' November 9, 2023 Submission Falls Well Short of Carrying Plaintiffs' Burden to Rebut the Presumption of Good Faith.

Plaintiffs told the Court at the October 30, 2023 status conference, as they have told Defendant for months, that they would be relying on "sworn congressional testimony." On November 9, they submitted to the Court a list of five sources—and in one case, a collection of sources—that they intend to rely on in their briefing. Far from "th[e] information" to be cited in a "lengthy factual brief," which the Court contemplated might be turned over to mitigate the burden of responding to yet-unmade allegations, *see* Minute Order (Nov. 2, 2023), Plaintiffs' filing is yet another example of unparticularized claims and tautological conclusions. And contrary to Plaintiffs' assurances to Defendant and the Court, four of the five sources cited in their November 9 submission are *not* sworn testimony. *See* ECF No. 32 at 2–3. The only sworn testimony is from

13

a July 19, 2023 hearing, which contains no mention of Shawn Weede or Shannon Hanson.[12] Defendant's counsel had already searched that testimony for mentions of those custodians and found nothing, which is why they asked months ago for Plaintiffs to definitize their allegations. Plaintiffs simply refuse to admit that they have none.

Plaintiffs' other four sources fare no better. Source 1.a. is an interview of Mr. Shapley, in which the only reference to Ms. Hanson and Mr. Weede is that they attended a meeting. Mr. Shapley did not even know Ms. Hanson's or Mr. Weede's titles, let alone accuse them of any misconduct. Neither Source 1.b. (an affidavit from Mr. Shapley) nor Source 2 (an interview of Mr. Ziegler) even references Ms. Hanson or Mr. Weede. And Source 4 is an index of dozens of documents on which Ms. Hanson appears not at all, and on which Mr. Weede is twice listed as one of several correspondents. It takes little effort to confirm that these sources do not identify or reflect any allegation or indicia or misconduct.

Mr. Weiss' and Ms. Wolf's names appear more frequently in the referenced materials. But their inclusion proves nothing more than that, which hardly carries Plaintiffs' burden. These sources have been available to Plaintiffs for weeks or, in some cases, for months. Defendant has sought since at least September 7 to learn what specific evidence substantiates Plaintiffs' sweeping claims of misconduct as relevant to this FOIA case. *See* ECF No. 32 at 8–9 (Sep. 7, 2023 email). Plaintiffs have had ample opportunity to do so. They have not.

---

[12] Defendant's counsel had already searched this 265-page document for "Shannon," "Hanson," "Shawn," and "Weede" and found no results. Perhaps tellingly, Plaintiffs were careful in their letter not to allege that Hanson or Weede are actually implicated by the July 19 testimony: "Plaintiffs note that both Shawn Weede and Shannon Hanson were (and apparently are) directly involved in Weiss' responses to Congress and are specifically referenced by the career Internal Revenue Service whistleblowers and in the records released by the House Ways and Means Committee." ECF No. 32 at 2.

14

## CONCLUSION

For the foregoing reasons, Plaintiffs should grant Defendant's motion and hold that the agency conducted an adequate search under FOIA.

Dated:  November 22, 2023              Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director

/s/ *Jason C. Lynch*
JASON C. LYNCH (D.C. Bar No. 1016319)
Trial Attorney
Federal Programs Branch
U.S. Department of Justice, Civil Division
1100 L Street, NW
Washington, DC 20005
Telephone: (202) 514-1359
Email: Jason.Lynch@usdoj.gov

*Counsel for Defendant*