# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

HERITAGE FOUNDATION, *et al.*,

        *Plaintiffs*,

        v.

U.S. DEPARTMENT OF JUSTICE,

        *Defendant.*

No. 23-cv-1854 (DLF)

## MEMORANDUM OPINION & ORDER

Plaintiffs the Heritage Foundation and one of its officers Mike Howell brought this action against the U.S. Department of Justice seeking documents related to the investigation of Robert Hunter Biden, the son of the President of the United States Joseph R. Biden.  The plaintiffs moved for a preliminary injunction "enjoining Defendant the U.S. Department of Justice . . . from unlawfully impeding Plaintiffs' expedited access to records under the Freedom of Information Act."  Mot. for Prelim. Inj. at 1, Dkt. 6.  On July 19, 2023, the Court denied this motion.  Dkt. 18. The plaintiffs then moved for an injunction pending appeal, and on July 20, 2023, the Court denied this motion.  Dkt. 21.  The plaintiffs appealed both denials, but on September 1, 2023, they moved before the D.C. Circuit to dismiss their consolidated appeals as moot and to vacate this Court's July 19, 2023 and July 20, 2023 orders.  The D.C. Circuit dismissed the appeals as moot but "remanded to the district court with instructions to consider whether vacatur of the district court's orders . . . is warranted."  Order at 1, *Heritage Found. v. DOJ*, No. 23-5171 (D.C. Cir. Oct. 16, 2023).  For the reasons that follow, the Court concludes that vacatur is not warranted.

## I.      Background

On March 10, 2023, the plaintiffs filed a Freedom of Information Act (FOIA) request with the DOJ, seeking (1) "[a]ll documents and communications sent or received by . . . any employee of the U.S. Attorney's Office for the District of Delaware referring or relating to Special Counsel status for the investigation concerning Hunter Biden" and (2) "[a]ll documents and communications between or among employees of the U.S. Attorney's Office for the District of Delaware and employees of any other U.S. Attorney's Office with venue to bring charges against Hunter Biden or his associates in that jurisdiction."  FOIA Request at 1 (March 10, 2023), Pls.' Ex. 1, Dkt. 1-5.  The plaintiffs also requested expedited processing, *id.*, and the Department of Justice granted this request on March 27, 2023, Pls.' Ex. 10, Dkt. 1-14.

Three months after the plaintiffs filed their FOIA request, Hunter Biden was charged by information in the U.S. District Court for the District of Delaware with one count of knowingly possessing a firearm while an unlawful user of and addicted to a controlled substance, *see* 18 U.S.C. §§ 922(g)(3), 924(a)(2), and two counts of willfully failing to pay income tax, *see* 26 U.S.C. § 7203; Information, *United States v. Biden*, No. 23-cr-61 (D. Del. June 20, 2023), Dkt. 2; Information, *United States v. Biden*, No. 23-mj-274 (D. Del June 20, 2023), Dkt. 2.  The district court scheduled Hunter Biden's initial appearance for July 26, 2023.  Order, *Biden*, No. 23-cr-61 (June 21, 2023), Dkt. 3.

The plaintiffs filed this suit on June 26, 2023, alleging that based on the statements of two "IRS whistleblower[s]," the "U.S. Attorney [for the District of Delaware David] Weiss sought to charge Hunter Biden with felony tax charges" in "the District of Columbia and the Northern District of California," but "the local U.S. Attorney[s]—both appointed by President Biden— blocked him from doing so."  Compl. ¶¶ 4, 47–51, Dkt. 1.  The complaint also alleges that Weiss's

request for Special Counsel authority was denied.  *Id.* ¶ 4.  On June 29, 2023, the plaintiffs moved for a preliminary injunction, seeking to compel the DOJ "to process and produce a *subset* of records," including (1) "[a]ll non-exempt records sent or received by David Weiss or any employee of the U.S. Attorney's Office for the District of Delaware referring or relating to Special Counsel status for the investigation concerning Hunter Biden," and (2) "[a]ll non-exempt documents and communications between or among employees of the U.S. Attorney's Office for the District of Delaware and employees of any other U.S. Attorney's Office with venue to bring charges against Hunter Biden or his associates . . . for which . . . David C. Weiss is custodian."  Mot. for Prelim. Inj. at 1, Dkt. 6 (cleaned up).  The plaintiffs underscored two exigencies—"matter[s] of immense public importance that w[ould] lose value if not timely made public"—driving their motion: (1) the "on-going House investigations and raging political controversy" and (2) "whether the District Court in Delaware should reject Hunter Biden's plea on July 26, 2023."  Mem. in Supp. of Pl.'s Mot. for Prelim. Inj. at 32, Dkt. 6-1.

On July 19, 2023, the Court denied the motion for a preliminary injunction, holding that the plaintiffs had not shown that they faced irreparable harm, that they were likely to succeed on the merits, or that the balance of the equities or public interest weighed in their favor.  Order of July 19, 2023 at 4, Dkt. 18.  The plaintiffs appealed the Court's denial.  *See* Notice of Interlocutory Appeal, Dkt. 19.  They also moved for an injunction pending appeal, directing the DOJ to produce "any non-exempt records . . . that reflect, memorialize, or explain any decision on a request for regulatory or statutory Special Counsel Status by . . . Weiss."  Mot. for Inj. Pending Appeal at 1, Dkt. 21.  In a July 20, 2023 minute order, the Court denied the motion because the plaintiffs effectively sought a new injunction—something "that is not properly presented in a motion for

injunction pending appeal." Minute Order of July 20, 2023. The plaintiffs appealed this order as well. *See* Notice of Interlocutory Appeal, Dkt. 22.

Before the D.C. Circuit, on July 21, 2023, the plaintiffs filed an emergency motion for an injunction pending appeal. *See* Pls.-Appellants' Emergency Mot. for Inj. Pending Appeal, *Heritage Found. v. DOJ*, No. 23-5168 (D.C. Cir. filed July 21, 2023). On July 24, 2023, the D.C. Circuit denied the plaintiffs' motion, affirming this Court's denial on the ground that "[a]ppellants have not satisfied the stringent requirements for an injunction pending appeal." Order at 1, *Heritage Found.*, No. 23-5168 (D.C. Cir. July 24, 2023). The plaintiffs did not seek review from the *en banc* court or the Supreme Court. On July 26, 2023, Hunter Biden's scheduled change-of-plea hearing occurred in the District of Delaware. *See* Minute Entry, *Biden*, No. 23-cr-61 (D. Del. July 26, 2023).

The following day, the DOJ answered the plaintiffs' complaint, *see* Answer, Dkt. 25, and the Court required the parties to meet and confer and "propos[e] a schedule for further proceedings," Minute Order of July 28, 2023. In a joint status report, the parties disputed the appropriate rate at which the DOJ should produce records responsive to the plaintiffs' FOIA request. *See* Joint Status Report at 3–4, 6, Dkt. 26. The Court held an August 11, 2023 status conference and subsequently ordered the parties "to meet and confer in an effort to agree on a production schedule." Minute Order of Aug. 11, 2023. On August 21, 2023, the parties filed another joint status report, in which the DOJ proposed a production rate of 600 pages per month and the plaintiffs proposed a production rate of 1,343 pages per month. *See* Joint Status Report at 3, 17, Dkt. 27. The DOJ also represented that "all 537 potentially responsive pages initially collected from custodians Weiss and [Lesley] Wolf" would be processed by "August 25, 2023." *Id.* at 2. In an August 22, 2023 minute order, the Court ordered the DOJ (1) on or before August

4

25, 2023 to "produce all responsive records from the 537 pages of potentially responsive records collected from custodians Weiss and Wolf"; and (2) on or before October 31, 2023 to "produce all responsive records from the remaining 2,148 pages of potentially responsive records" at an approximate "rate of less than 1,000 pages per month."  Minute Order of Aug. 22, 2023.

A little over a week later, on September 1, 2023, the plaintiffs moved in the D.C. Circuit to dismiss their appeals as moot and to vacate this Court's July 19, 2023 and July 20, 2023 denials under *United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950).  The plaintiffs argued that the appeal was moot because (1) "Hunter Biden's scheduled change of plea hearing on July 26 . . . the driver of the exigency in that particular instance—has come and gone" and (2) this Court's "August 22 Minute Order has decided the issue of timing of production."  Pls.-Appellants' Mot. for Voluntary Dismissal & Vacatur at 3, *Heritage Found.*, No. 23-5168 (D.C. Cir. filed Sept. 1, 2023).  The plaintiffs further contended that vacatur is appropriate because "the pending appeals are moot through no fault of the parties, and . . . the now-moot preliminary injunction interpreting FOIA law would have important legal consequences in the future . . . if the decision is allowed to remain in place."  *Id.* at 6–7 (cleaned up).  The D.C. Circuit granted the plaintiffs' motion to dismiss as moot but "on the court's own motion . . . remanded to the district court with instructions to

consider whether vacatur of the district court's orders filed July 19, 2023 and July 20, 2023 is warranted."  Order at 1, *Heritage Found.*, No. 23-5168 (D.C. Cir. Oct. 16, 2023).

On remand, the Court ordered briefing on vacatur from the parties and heard argument at an October 30, 2023 hearing.  *See* Minute Order of Oct. 16, 2023.  Both before the D.C. Circuit and this Court, the DOJ has not taken a position on whether vacatur is warranted.

## II.    Legal Standard

When "a civil case from a court in the federal system . . . has become moot while on its way [to an appellate court] or pending [the appellate court's] decision on the merits," the "established practice" is "to reverse or vacate the judgment below and remand with a direction to dismiss."[1]  *Munsingwear, Inc.*, 340 U.S. at 39.  But the decision to vacate an order under *Munsingwear* "is an equitable one" that must be "consonant to justice in view of the nature and character of the conditions which have caused the case to become moot."  *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 24, 29 (1994) (cleaned up).

---

[1] The Court assumes that *Munsingwear* principles apply to a district court's determination whether to vacate an order when the appeal of that order has been rendered moot.  In *Bancorp*, the Supreme Court observed that "a court of appeals presented with a request for vacatur of a district-court judgment may remand the case with instructions that the district court consider the request, which it may do pursuant to Federal Rule of Civil Procedure 60(b)."  *U.S. Bancorp Mortg. Co.*, 513 U.S. at 29.  But neither the Supreme Court nor "the D.C. Circuit ha[ve] . . . addressed whether the ruling in *Bancorp* [and *Munsingwear* principles generally] should apply to a request that a district court vacate its own order under Rule 60(b)."  *Comm. on Oversight & Gov't Reform v. Sessions*, 344 F. Supp. 3d 1, 8 (D.D.C. 2018).  That said, other judges in this district have "looked to *Bancorp* for guidance" when vacating under Rule 60(b).  *Id.* (citing *3M Co. v. Boulter*, 290 F.R.D. 5, 7 (D.D.C. 2013); *St. Lawrence Seaway Pilots' Ass'n v. Collins*, No. 03-cv-1204 (RBW), 2005 WL 1138916, at *2 (D.D.C. May 13, 2005); *Fund for Animals v. Mainella*, 335 F. Supp. 2d 19, 25–26 (D.D.C. 2004)).  Further, and in any event, the D.C. Circuit's remand order explicitly directed the Court to *Bancorp* and *Mahoney*, which relied on *Munsingwear* principles.  *See* D.C. Cir. Remand Order at 1.  As such, the Court will apply *Munsingwear* principles here.

In balancing the equities, courts consider various factors.  For example, vacatur "must be decreed" when review of a decision "is . . . 'prevented through happenstance'—that is to say, where a controversy presented for review has become moot due to circumstances unattributable to any of the parties."  *Id.* at 23 (quoting *Karcher v. May*, 484 U.S. 72, 82, 83 (1987)).  When "mootness results from the unilateral action of the party who prevailed in the lower court," however, the equities weigh against vacatur.  *Id.*  So too when the party seeking vacatur of an adverse decision earlier "slept on its rights," *Munsingwear Inc.*, 340 U.S. at 41, entered a settlement, *U.S. Bancorp Mortg. Co.*, 513 U.S. at 25, or sought "to have the[] [decision] wiped from the books by merely filing an appeal, then complying with the order or judgment below and petitioning for a vacatur of the adverse trial court decision," *United States v. Garde*, 848 F.2d 1307, 1311 (D.C. Cir. 1988) (cleaned up).  Courts also balance the "public interest" in establishing judicial precedents, which "are presumptively correct and valuable to the legal community as a whole," *U.S. Bancorp Mortg. Co.*, 513 U.S. at 26 (cleaned up), and the "prejudice to the parties" from the "preclusive effect" of an unvacated decision, *Mahoney v. Babbitt*, 113 F.3d 219, 224 (D.C. Cir. 1997) (cleaned up).

"[V]acatur is an 'equitable' and an 'extraordinary' remedy," so "the party seeking that remedy bears the burden of demonstrating that the relief is justified."  *Jewish War Veterans of the U.S. of Am., Inc. v. Mattis*, 266 F. Supp. 3d 248, 252 (D.D.C. 2017).

## III.   Analysis

Applying the *Munsingwear* framework, the Court concludes that numerous factors weigh against vacatur of the Court's July 19, 2023 and July 20, 2023 orders.

A.    *Happenstance*

The plaintiffs have failed to persuade the Court that appellate review of this Court's previous denials was "prevented through happenstance." *U.S. Bancorp Mortg. Corp.*, 513 U.S. at 23 (cleaned up).  Mootness by way of happenstance occurs when "a controversy presented for review has 'become moot due to circumstances unattributable to any of the parties.'" *Id.* (quoting *Karcher*, 484 U.S. at 83).  "The distinction between litigants who are and are not responsible for the circumstances that render the case moot is important." *Garde*, 848 F.2d at 1311.  "[T]he primary objective behind vacating a lower court opinion would be distorted if a party were allowed to render deliberately a judgment unreviewable by its own action." *Id.* at 1311 n.8.

The plaintiffs' appeals were not rendered moot by mere happenstance for two reasons. First, mootness arose, in part, because the plaintiffs abandoned one of their bases for seeking an injunction, a deliberate choice that was not the product of happenstance.  Under well-established D.C. Circuit precedent, vacatur should be denied "where mootness result[s] from 'the deliberate action of the losing party before the district court.'" *Nat'l Black Police Ass'n v. District of Columbia*, 108 F.3d 346, 351 (D.C. Cir. 1997) (quoting *Garde*, 848 F.2d at 1310).  Before this Court, the plaintiffs sought a preliminary injunction based on two exigencies: (1) Hunter Biden's July 26, 2023 change-of-plea hearing and (2) the "on-going Congressional oversight and possible impeachment proceedings" of President Biden.  Mot. for Prelim. Inj. at 2.  The plaintiffs reiterated these two bases for relief in their emergency motion for an injunction pending appeal before the D.C. Circuit.  *See* Pls.-Appellants' Emergency Mot. for Inj. Pending Appeal at 17, 21 (arguing irreparable harm would arise (1) "if they are unable to make use of the requested records to inform the public and Congress in advance of Hunter Bien's July 26, 2023 hearing" *and* (2) "if they cannot use the records sought to petition Congress and inform the public about the ongoing Congressional

proceedings *now* rather than later after the fast-moving investigative events have come and gone"). On July 26, 2023, Hunter Biden's change-of-plea hearing occurred, thereby mooting one, but not both, bases of the plaintiffs' motions.  But in their motion to dismiss—filed over a month after the change-of-plea hearing—the plaintiffs argued their appeals were moot because (1) "Robert Hunter Biden's scheduled change of plea hearing"—"*the* driver of exigency in that particular instance— has come and gone" and (2) "the underlying issue of the timing and the production in this FOIA case has been litigated on the merits and adjudicated" by virtue of the Court's August 22, 2023 minute order.  Pls.-Appellants' Mot. for Voluntary Dismissal & Vacatur at 3 (emphasis added). The plaintiffs treated the change-of-plea hearing as the sole exigency driving their initial motions.

Left unmentioned, however, was the other alleged "driver of exigency": namely, "fast-moving congressional investigations."  Pls.-Appellants' Emergency Mot. for Inj. Pending Appeal at 21.  This second "driver of exigency" has not, in the Court's view, dissipated.  Indeed, in a recent filing, the plaintiffs noted their intention to introduce "materials released or created as part of the *on-going* investigation into the Executive Branch's conduct of its investigation in[to] . . . Hunter Biden, by the House Committees on the Judiciary, Oversight and Accountability, and Ways & Means."  Letter of Nov. 9, 2023 at 1, Dkt. 32 (emphasis added).  Based on the omission of this exigency in their motion to dismiss their appeals, the Court infers that the mootness of the plaintiffs' appeals did not arise solely from the "happenstance" of the July 26, 2023 change-of-plea hearing coming and going.  Rather, mootness arose, at least in part, from the plaintiffs' evolving explanation of the exigencies driving their requested relief.  Such "deliberate action of the losing party before the district court" weighs against *Munsingwear* vacatur.  *Nat'l Black Police Ass'n*, 108 F.3d at 351 (quoting *Garde*, 848 F.2d at 1310).

Second, mootness arose in part based on the plaintiffs' acquiescence to this Court's orders. The D.C. Circuit has cautioned against "encourag[ing] litigants who are dissatisfied with the decision of [a] trial court to have [it] wiped from the books by merely filing an appeal, then complying with the order or judgment below and petitioning for a vacatur of the adverse trial decision." *Garde*, 848 F.2d at 1311 (cleaned up). In *Garde*, the Nuclear Regulatory Commission (NRC) petitioned to enforce a subpoena to obtain information about safety problems at the South Texas Nuclear Plant, including the identities of whistleblowers. *Id.* at 1308. The district court denied the petition, and the NRC appealed. *Id.* at 1308–09. While the appeal was pending, the NRC "agreed to establish a technical team to review the safety problem allegations" without knowledge of the whistleblowers' identities and "also agreed to maintain the confidentiality of the identities of the whistleblowers if it obtained that information." *Id.* at 1308. The NRC was thus able to "secure[] the information it sought to obtain by way of the subpoena, except the identities of the whistleblowers," mooting its appeal. *Id.* at 1309. The D.C. Circuit agreed that the NRC's appeal was moot because the NRC obtained "allegations of nuclear safety problems," but it declined to vacate the district court's denial because the NRC "complied with the district court judgment and as a result, rendered the appeal moot." *Id.* at 1309, 1310 n.7. The court reasoned that "the trial court's determinations ought to have the same conclusive effects that they would have if the appellant had not appealed at all." *Id.* at 1310 n.7 (quoting 1B Moore's Federal Practice ¶ 0.416(6), at 543–44 (2d ed. 1984)).

So too here. Notwithstanding the Court's denials, the plaintiffs received the requested documents and used that fact to moot their pending appeals. In both of their motions, the plaintiffs sought records and communications related to the Hunter Biden investigation on or before July 21 or July 24, 2023. *See* Mot. for Prelim. Inj. at 1; Mot. for an Inj. Pending Appeal at 1–2. The Court

denied both motions, and like the NRC, the plaintiffs appealed.  Also, like the NRC, the plaintiffs accepted they would not receive the information in the exact format requested, but in response to this Court's orders, they nevertheless advanced arguments to obtain the information.  Through those efforts, the plaintiffs "secured" the records they "sought to obtain" from the DOJ, albeit later than initially requested.  *Garde*, 848 F.2d at 1309.  The plaintiffs then cited the Court's August 22, 2023 order, which ordered disclosure of the requested records, as a basis to moot their then-pending appeals.  *See* Pls.-Appellants' Mot. for Voluntary Dismissal & Vacatur at 3–4.  As such, mootness did not arise "because of intervening circumstances over which" the plaintiffs "had no control"; rather, the plaintiffs, like the NRC, mooted their own appeals after the district court ordered the production of the requested information.  *Garde*, 848 F.2d at 1311 (quoting *Cover v. Schwartz*, 133 F.2d 541, 546 (2d Cir. 1942)).

At the October 30, 2023 hearing, the plaintiffs advanced several arguments to distinguish *Garde*.  First, the plaintiffs contended that unlike the NRC, who forfeited the right to vacatur by voluntary compliance with the district court's denial, they moved expeditiously to seek review of this Court's denials.  Second, *Garde* concerned whether the whistleblowers' identities had to be revealed at all, but here, the relevant dispute on appeal was not whether the DOJ must turn over certain records but *by what date* the DOJ must turn over those records.  Even though the plaintiffs received the requested documents by October 31, 2023, unlike *Garde*, they did not receive the relief requested in their initial motion—*i.e.*, the documents before the change-of-plea hearing.  Finally, the plaintiffs argue that their compliance with the Court's production orders was in no way incompatible with their appeals from this Court's denials of injunctive relief.

The plaintiffs' arguments are unavailing.  To start, the NRC in *Garde*, like the plaintiffs here, filed a timely appeal from the district court's adverse decision.  848 F.2d at 1309.  Further,

contrary to the plaintiffs' characterization, *Garde* and this case present the same basic issue: a party appealed a district court's order preventing the party from receiving information in the exact format requested. The NRC sought information about nuclear-safety risks without confidentiality restrictions, while the plaintiffs here sought information about the DOJ's Hunter Biden investigation by a certain date. Although neither party received the information in the exact format requested, both received the underlying information through compliance with the district court's orders while their appeals were pending. To be sure, there are differences between the two cases, such as the information in *Garde* was restricted substantively, while the information here was restricted temporally. But the plaintiffs have failed to persuade the Court that any such distinction meaningfully undermines *Garde*'s admonition that when a party "by its own action . . . foreclosed the opportunity for review of the adverse decision" it is "in no position to complain that [its] right of review of an adverse decision has been lost." *Id.* at 1311 n.9 (cleaned up). Given the strong similarities between the two cases, the Court reaches the same conclusion as the D.C. Circuit in *Garde*: the plaintiffs' appeals were not rendered moot by mere happenstance, weighing against vacatur.

  B. *Forfeiture of Further Review*

    Another factor weighing against vacatur is that the plaintiffs "slept on [their] rights" by not seeking *en banc* or Supreme Court review. *Munsingwear Inc.*, 340 U.S. at 41. A controversy may become moot "when the losing party . . . decline[s] to pursue its appeal." *Karcher*, 484 U.S. at 83. When a "losing part[y] . . . elect[s] not to seek further relief upon the entry of [the court of appeals's] order," they are "squarely within the reasoning of *U.S. Bancorp* governing forfeiture of the right to vacatur." *Mahoney*, 113 F.3d at 221. In *Mahoney*, for example, the D.C. Circuit granted the plaintiffs emergency injunctive relief, but the government did not seek "a stay, either

from" the *en banc* court "or from the Circuit Justice or any other Justice of the Supreme Court." *Id.* at 220. When the appeal later became moot, the D.C. Circuit held that vacatur of the injunction order was inappropriate because the government, as the "losing part[y]," "elected not to seek further relief upon the entry of our order" even though it had 24 hours to do so. *Id.* at 221–22. The government had thus "accepted the effects of [the] emergency order," so "the *Munsingwear* procedure [was] inapplicable." *Id.* (quoting *Karcher*, 484 U.S. at 83).

In a similar fashion, the plaintiffs here did not seek "review of the D.C. Circuit's [July 24, 2023] denial of emergency relief from the *en banc* D.C. Circuit or ma[k]e an application to the Chief Justice" before Hunter Biden's July 26, 2023 change-of-plea hearing. Pls.' Resp. at 3, Dkt. 29. According to the plaintiffs, such review of the D.C. Circuit's adverse decision was "simply impracticable" within 40 hours. *Id.* at 4. But in *Mahoney*, the government's failure to seek further review—there, within 24 hours—weighed against *Munsingwear* vacatur. *See Mahoney*, 113 F.3d at 221–22. Although the plaintiffs, like the government in *Mahoney*, had only a "short" "time" to seek further review, they could have done so by requesting review from the *en banc* court or Circuit Justice. *Id.* at 221. Under *Mahoney*, the plaintiffs' failure to seek review weighs against vacatur.

C.   *Preclusion*

The Court's previous denials carry minimal, if any, preclusive effect, and this too weighs against vacatur. "A decision's preclusive effect (whether claim preclusion or issue preclusion) bars future litigation of that same cause of action or of the same issue of law or fact litigated between the parties," and "the preclusive effect of a judgment on later litigation in the same case can be a proper reason for a court to grant the equitable remedy of vacatur." *Jewish War Veterans of the U.S. of Am., Inc.*, 266 F. Supp. 3d at 252. "Preclusion is normally based on a decision as to

the controversy between the litigating parties," and as such, will turn on "the fact-specific elements of" a decision the appeal of which has become moot. *Mahoney*, 113 F.3d at 222, 224.

The parties dispute whether the Court's July 19, 2023 and July 20, 2023 orders carry preclusive effect and would thus prejudice the plaintiffs absent vacatur. On one hand, the plaintiffs argue they "'may encounter some lingering though remote possibility of residual collateral harm' stemming 'from the unreviewed Order' and therefore '[r]ecourse to the equitable tradition of vacatur may be warranted, then, partly because it eliminates that possibility altogether.'" Pls.' Resp. at 5 (quoting *Am. Fam. Life Assur. Co. of Columbus v. FCC*, 129 F.3d 625, 631 (D.C. Cir. 1997)). Given that "[p]roduction is on-going[,] the parties may not resolve all extant disputes related to production without judicial intervention; and thus, further questions regarding expedition of production may yet arise." *Id.* On the other hand, the government argues that "[t]he denial of a preliminary injunction has no *res judicata* effect; it would not bind anyone in any future case." Gov't Resp. at 2, Dkt. 30. Although the D.C. Circuit has vacated the denial of a preliminary injunction in past cases, the government argues that "none of those [decisions] acknowledged that the denial of a preliminary injunction has no lasting effect and *nonetheless* that it should be vacated." *Id.* at 4.

Neither party's arguments persuade the Court. First, the Court does not share the government's confidence that the denial of a preliminary injunction carries no preclusive effect. In *Mahoney*, the D.C. Circuit considered the "risk of prejudice" arising from "the preclusive effect" of a preliminary injunction. 113 F.3d at 224. "[T]he fact-specific elements of our opinion" are "essential to preclusive effect," and "[i]n the unlikely event that these same parties again face each other in litigation involving a claim of issue preclusion based on this litigation, then that preliminary stage of this litigation would be a factor for the future court to weigh in evaluating that

14

argument." *Id.* The *Mahoney* Court went on to cite with approval the Seventh Circuit's decision in *CFTC v. Board of Trade* for the proposition that "findings in support of a preliminary injunction are tentative and that they therefore are *generally* unlikely to have preclusive effect, but . . . in [a] particular case they might." *Id.* (quoting 701 F.2d 653, 657–58 (7th Cir. 1983)). Other judges in this district have echoed *Mahoney*'s reasoning that a preliminary-injunction order may, in some cases, carry preclusive effect. *See, e.g.*, *Bridgeforth v. Bronson*, 584 F. Supp. 2d 108, 116 (D.D.C. 2008) ("A court's granting of a preliminary injunction does not generally form a basis for collateral estoppel" because it "does not amount to an adjudication of the ultimate rights in controversy. [But] [i]n limited circumstances, collateral estoppel may apply where the proceedings made the findings sufficiently firm to remove any compelling reason to permit the issues to be relitigated." (cleaned up)); *Sadat I. v. Nielsen*, No. 17-cv-1976, 2019 WL 108854, at *4 (D.D.C. Jan. 4, 2019) (holding that a preliminary injunction lacked preclusive effect because the court's previous order "merely held that Plaintiffs are *likely* to succeed on the merits of *some* of their claims" and "despite Plaintiffs' limited success at the preliminary injunction stage, they must still prove their claims on the merits"). The government directs the Court to numerous out-of-Circuit precedents in support of its position, but the Court is bound to follow *Mahoney*, which suggests that the preclusive effect of a preliminary-injunction order—whether a grant or a denial—will depend on the particular facts of a case. *See* Gov't Resp. at 3–4 (citing cases).

Second, with respect to the particular facts of *this* case, the Court's prior decisions carry minimal, if any, preclusive effect. To determine whether a prior decision adjudicating a motion for a preliminary injunction carries preclusive effect, courts consider various factors, including whether the "prior judgment resolved [any] disputed issues of fact," *Mahoney*, 113 F.3d at 224, "amount[ed] to an adjudication of the ultimate rights in controversy," *Bridgeforth*, 584 F. Supp.

2d at 116, or made findings "'sufficiently firm' to remove any compelling reason to permit the issues to be relitigated," *id.* (quoting *Hawksbill Sea Turtle v. FEMA*, 126 F.3d 461, 474 n.11 (3d Cir. 1997)).  There are no such indicia of preclusion here.  Neither the July 19, 2023 nor the July 20, 2023 orders "resolved [any] disputed issues of fact" between the parties.  *Mahoney*, 113 F.3d at 224.  The Court also did not adjudicate the "ultimate rights in controversy."  *Bridgeforth*, 584 F. Supp. 2d at 116.  Although the Court concluded that DOJ "raised serious doubts about the plaintiffs' likelihood of success" on the issue of "whether DOJ is *actually* processing the request as soon as practicable," the Court was clear about the tentative nature of its decision.  Order of July 19, 2023 at 8 (cleaned up).  For example, the Court acknowledged that the plaintiffs "have raised many arguments, legal and factual, that DOJ will be required to address over the course of this litigation," and the Court's denial means only that "[t]he plaintiffs have not shown . . . *at least at this juncture*, that they are entitled to the extraordinary preliminary injunctive relief they seek." *Id.* at 10 (emphasis added).  The Court's caveats are emblematic of the "hasty and abbreviated" nature of emergency motions practice, which "allow[s] no time for discovery, nor for adequate review of documents or preparation and presentation of witnesses."  *Sole v. Wyner*, 551 U.S. 74, 84 (2007).  Under these circumstances, the Court concludes that its previous orders did not make findings that were "sufficiently firm to remove any compelling reason to permit the issues to be relitigated." *Bridgeforth*, 584 F. Supp. 2d at 116.

Further, the Court is skeptical that the merits issue at the preliminary-injunction stage— *i.e.*, "whether DOJ is *actually* processing the request as soon as practicable"—is likely to arise in the later stages of this litigation or beyond.  Order of July 19, 2023 at 8 (cleaned up).  As of October 31, 2023, the DOJ processed the plaintiffs' FOIA request and produced the requested documents. *See* Minute Order of Aug. 22, 2023.  The parties continue to dispute the good faith of the record

custodians and search terms, but in the Court's view, these are distinct issues that are unrelated to the rate of production.  Moreover, the July 19, 2023 and July 20, 2023 orders were driven, in large part, by the specific (and now moot) exigency of Hunter Biden's July 26, 2023 change-of-plea hearing.  *See* Order of July 19, 2023 at 6–7.  As such, if the plaintiffs were to file a new motion for a preliminary injunction or file another suit against the government, the factual circumstances and equities would be unlikely to repeat in identical form.  Because the Court's July 19, 2023 and July 20, 2023 orders carry minimal, if any, preclusive effect, *Munsingwear* vacatur is not warranted on this basis.

    D.    *Precedential Effect*

A final factor weighing against vacatur is the precedential value of the Court's orders.  In *Bancorp*, the Supreme Court observed that the decision whether to vacate "must also take account of the public interest" in judicial precedents.  513 U.S. at 26.  "Judicial precedents are presumptively correct and valuable to the legal community as a whole.  They are not merely the property of private litigants," *id.*, and "the precedential power of an opinion is a reason arguing against vacatur," *Mahoney*, 113 F.3d at 222–23.  In *Mahoney*, the D.C. Circuit also emphasized that the precedential weight of a decision depends, in part, on the "nature of th[e] controversy." *Id.* at 223.  *Mahoney*, for example, concerned a "prior restraint First Amendment" challenge—an issue on which "the judicial system [can] seldom establish precedent."  *Id.*

Although the Court's previous orders are unlikely to carry preclusive effect in future litigation, they still carry precedential value.  The plaintiffs argue that the Court's orders carry limited precedential value because the "nature of the controversy" here is a question "of expedited processing," which is "routinely addressed" in this Circuit and not "the sort [of issue] that almost always elude[s] Court of Appeals review."  Pls.' Resp. at 4.  True, FOIA processing cases do not

17

evade judicial review like prior-restraint cases nor do they "normally arise in the context of preliminary injunctions and appeals from their denial or grant." *Mahoney*, 113 F.3d at 223. But *Mahoney* does not limit a decision's precedential value to the substantive "nature of th[e] controversy." *Id.* Rather, *Mahoney* considered both "the reasons set forth . . . on the authority of *U.S. Bancorp*" about the *general* "precedential power of an opinion" and the *specific* "nature of this controversy." *Id.* at 222–23. Here, the Court's previous decisions carry *general* precedential value. Even assuming the subject matter is ordinary,[2] "all parties involved" appear to "agree" that the plaintiffs seek documents "carr[ying] exceptional importance" to the nation. Order of July 19, 2023 at 10. The Court's decisions concerning such important matters should "not[] be cavalierly discarded" because they reflect an "accurate historical record" of "a dispute and [that] someone was declared the winner." *I.A. v. Garland*, No. 20-5271, 2022 WL 696459, at *2 (D.C. Cir. Feb. 24, 2022) (Jackson, *J.*, concurring). In short, the plaintiffs are correct that the precedential value of the Court's orders does not "alone render[] vacatur inappropriate," but this is but one of *several* factors weighing against vacatur. *Am. Fam. Life Assur. Co. of Columbus*, 129 F.3d at 631.

*   *   *

For the above stated reasons, the Court concludes that vacatur of its July 19, 2023 and July 20, 2023 orders is not warranted.

**SO ORDERED.**

DABNEY L. FRIEDRICH
United States District Judge

December 22, 2023

---

[2] To support the proposition that "questions of expedited processing are routinely addressed," the plaintiffs cite one D.C. Circuit case from over two decades ago. Pls.' Resp. at 4–5 (citing *Al-Fayed v. CIA*, 254 F.3d 300 (D.C. Cir. 2001)).