```
 1                 BEFORE THE UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF COLUMBIA
 2

 3   HERITAGE FOUNDATION, et al.,    .
                                     .   Case Number 23-cv-1854
 4            Plaintiffs,            .
                                     .
 5        vs.                        .
                                     .   Washington, D.C.
 6   U.S. DEPARTMENT OF JUSTICE,     .   October 30, 2023
                                     .   11:47 a.m.
 7            Defendant.             .
     - - - - - - - - - - - - - - - -

 8

 9                    TRANSCRIPT OF STATUS CONFERENCE
                  BEFORE THE HONORABLE DABNEY L. FRIEDRICH
10                    UNITED STATES DISTRICT JUDGE

11   APPEARANCES:

12   For the Plaintiffs:            SAMUEL DEWEY, ESQ.
                                    Chambers of Samuel Everett Dewey,
13                                    LLC
                                    2200 12th Court North
14                                  Apt. 609
                                    Arlington, Virginia 22201
15
                                    KYLE BROSNAN, ESQ.
16                                  Heritage Foundation
                                    214 Massachusetts Avenue Northeast
17                                  Washington, D.C. 20002

18                                  ERIC NEAL CORNETT, ESQ.
                                    Law Office of Eric Neal Cornett
19                                  70 I Street Southeast
                                    Washington, D.C. 20003
20

21                       -- continued --

22

23

24

25
```

```
 1    APPEARANCES (CONTINUED):

 2    For the Defendant:          JASON LYNCH, ESQ.
                                  U.S. Department of Justice
 3                                Federal Programs Branch
                                  1100 L Street Northwest
 4                                Washington, D.C. 20005

 5


 6
      Official Court Reporter:    SARA A. WICK, RPR, CRR
 7                                333 Constitution Avenue Northwest
                                  Room 4704-B
 8                                Washington, D.C. 20001
                                  202-354-3284
 9
      Proceedings recorded by stenotype shorthand.
10    Transcript produced by computer-aided transcription.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1                   P R O C E E D I N G S

2         (Call to order of the court.)

3              COURTROOM DEPUTY:  Your Honor, we are in Civil Action

4    23-1854, Heritage Foundation, et al., versus U.S. Department of

5    Justice.

6         If I can have counsel please approach the podium and state

7    your names for the record, starting with the plaintiff.

8              MR. DEWEY:  Samuel Dewey for plaintiffs.  With me are

9    Neal Cornett and Kyle Brosnan from plaintiff Heritage.

10             THE COURT:  All right.  Good morning.  I'm sorry to

11   keep you all waiting.  It's been a busy morning.

12             MR. DEWEY:  I completely understand.

13             MR. LYNCH:  Good morning, Your Honor.  Jason Lynch

14   from the Department of Justice on behalf of the United States.

15             THE COURT:  All right.  Good morning.

16        All right.  I want to ask both sides a few questions on the

17   vacatur issue.  Who will be speaking for Heritage?

18             MR. DEWEY:  I will, Your Honor.

19             THE COURT:  All right.  Let me ask you this:  You

20   agree that Heritage bears the burden to show that vacatur is

21   appropriate; right?

22             MR. DEWEY:  Correct, Your Honor.

23             THE COURT:  Okay.  And do you also agree -- you talk

24   about the presumption in favor of vacatur.  Can you tell me what

25   precedent supports that presumption here in the D.C. Circuit?
```

1          MR. DEWEY:  There is no D.C. Circuit opinion directly

2     on point.  I'm going off of the general presumption from

3     *Munsingwear* and the cases following it.  That is what we read to

4     establish the presumption within the D.C. Circuit in this

5     admittedly somewhat odd context of what do you do with a

6     preliminary injunction, given what I will call the limited

7     preclusive effect or collateral consequences.

8          I don't have any cases directly on point.  What I can say

9     to try to be helpful, Your Honor, is that there are certainly

10     some cases vacating and remanding.  There are other cases

11     digging into how do we deal with the nuance of a preliminary

12     injunction.

13          Obviously, there's *Mahoney*.  There is another case that we

14     did not cite in our papers but, in preparing for the hearing, I

15     think is relevant.  It's an older case, but I will give it to,

16     Your Honor.  It's *Nader v. Volpe*, 466 F.2d 261.  The relevant

17     portion of the opinion is on Note 72, which I apologize, Your

18     Honor.  My -- which is on 272, 272, Note 72.

19          Again, that's dealing with this peculiar question of the

20     posture of the case.  And if I can -- I don't think I'm -- to be

21     helpful to the Court, I don't think we're that far from our

22     friends on we agree that a preliminary injunction ordinarily is

23     not preclusive on the merits.  The issue is what do you do with

24     a preliminary injunction that is not going to necessarily

25     reoccur on the merits but might reoccur later on in the case.

1    And there, for the reasons we submitted as to *Mahoney*,

2  which considered the question and said well, there, because of a

3  bunch of other factors, we won't vacate.

4    We think it comes out the other way, because here, there

5  would be some form of preclusive effect if there were further

6  proceedings involving a preliminary injunction.  Your Honor has

7  indicated --

8    THE COURT:  Sorry to interrupt, but I'm just

9  wondering, would there really be, because wouldn't the Court be

10  looking at new facts?  And even if the decision were wiped out,

11  vacated, I mean, it still can have persuasive effect.

12    So what's the difference?  There certainly will be new

13  facts that won't be based on the Hunter Biden plea, will

14  probably be based on the ongoing investigations or the

15  presidential election or whatever else.

16    So isn't the preclusive effect even in this case really

17  low, the risk of that?

18    MR. DEWEY:  I don't think so, Your Honor, and I think

19  it's fairly narrow.  I think Judge Posner's opinion in *Gjersten*

20  is helpful on this point, which the government has cited and

21  which a number of the cases the government relies upon cite.  I

22  think Judge Posner there was very careful to say if there are

23  further proceedings on the preliminary injunction, that is a

24  consideration that supports vacatur.

25    And here, Your Honor, what I would say is -- and I don't

1    know what the government would say, but I could very well

2    imagine they would say well, you're here on another PI, the

3    Court's legal conclusions stand, they bind you, you cannot

4    reargue that point absent leave from the Court.

5        So that's our concern here.  I don't dispute the facts

6    would be different.  Our dispute would be -- we obviously

7    respectfully disagree with some of Your Honor's legal

8    conclusions, and were another issue to arise, we would on this

9    record expect to face an argument we would be precluded in the

10    preliminary context from rearguing that point.

11        THE COURT:  Specifically -- like give me an example of

12    the legal conclusions that you object to.

13        MR. DEWEY:  So an example would be how Your Honor

14    viewed the equities and the legal conclusion there, the legal

15    conclusion as to whether or not you can jump the expedited queue

16    or all you get under expedition is you're in the expedited

17    queue.  We would certainly want the opportunity if we chose to

18    reargue those points, and we do think it would be preclusive

19    here.

20        And not to get too far ahead, Your Honor --

21        THE COURT:  Yeah, I'm just thinking.  Sorry to

22    interrupt here.

23        MR. DEWEY:  Certainly.

24        THE COURT:  But I -- and I didn't review the order

25    immediately before this hearing this morning, but I remember

1    discussing about, you know, the queue and how there are other

2    expedited requests.

3         But did you read my opinion to say that it's simply a first

4    in line, you know, first out sort of analysis, or on the facts

5    of this exigency, it doesn't jump the queue?

6         I can envision a situation, I will tell you now, where an

7    exigent request would jump the queue.  But on this FOIA request,

8    I didn't see it.

9         So I don't know that -- to the extent you viewed my opinion

10   as asserting first in/first out and it's a regular order, I

11   didn't mean to convey that.  I think it was tied to the alleged

12   facts here and the exigency.  So I don't know that I stated it

13   quite that definitively.

14        You disagree with me, that I did suggest that it's just a

15   first in/first out?

16             MR. DEWEY:  On that and several other points, that is

17   how we read the opinion, Your Honor, and that's certainly how we

18   briefed it in the D.C. Circuit on the proceedings there for the

19   injunction pending appeal.  That is how we read it, and that is

20   our concern here, is would we be able to come back on alternate

21   facts and have a completely clean slate, or would we be facing a

22   situation where we're taking a set of law and applying the

23   facts?  We simply want to ensure we have the flexibility.

24        And I don't want to get too far ahead of myself here, Your

25   Honor, but something animating that concern is -- and I'm still

1    talking with my colleague.  We expect there to be considerable

2    disagreement over the search in a way that in our submission

3    will probably require -- our submission is the search needs to

4    be rerun and that it's entirely tainted.

5         And I don't want to get ahead of myself here, Your Honor,

6    but we have that.  We have --

7              THE COURT:  I'm wondering on that point whether -- and

8    we can talk about this.  It's not directly on point with this

9    issue, but whether we should break this down into briefing on

10   the search before we -- I know that's unusual, but given the

11   exigency of the matter, I would be interested in both sides'

12   position on that.

13             MR. DEWEY:  I'm happy to get into that, Your Honor.

14             THE COURT:  But I don't want to divert you from your

15   argument.

16             MR. DEWEY:  I was just going to say that to Your

17   Honor's point, the matter is very much proceeding, you know.

18   There was a relevant transcribed interview that was taken of the

19   U.S. Attorney for the Western District of Pennsylvania last week

20   that was reported.  My understanding as of Friday is that

21   Mr. Weiss is sitting for a transcribed interview on the 7th.

22   And my understanding is that there will be subsequent

23   congressional proceedings on this.

24        I can't say where they will go, but to Your Honor's point,

25   it's fast-moving.  Your Honor knows how the political

1    environment is.  I can't predict what will come up.

2        And again, plaintiffs' only concern is that if we're back

3    in some exigent posture, we're not bound by anything, we can

4    essentially argue it de novo.  And if that is taken care of by

5    Your Honor's statements that you didn't read the opinion the way

6    we did --

7        THE COURT:  I want to caution, I need to read it

8    again.  But I can certainly envision a situation -- and it may

9    not be even the facts you bring before me again, but I could

10   certainly envision a situation where, you know, there's risk of

11   death where I wouldn't possibly take the view that it couldn't

12   jump the expedited queue.

13       MR. DEWEY:  Understood, Your Honor.  And I'm just

14   again pointing out that our concern is narrow in this case, but

15   that's where it comes from.

16       THE COURT:  Understood.  Okay.

17       One question just occurs to me.  Isn't it -- in my

18   experience, and granted, it's relatively limited, but it seems

19   quite unusual for the D.C. Circuit to not make the decision on

20   vacatur.

21       What am I to make of that?  Anything at all?  Is that not

22   unusual?

23       MR. DEWEY:  I would say my experience coincides with

24   Your Honor's.  I think it is not the normal course.  I don't

25   think you can read anything into a summary order, and I think

certainly there's law from both the D.C. Circuit and the Supreme
Court saying be careful of reading anything into a summary
order.

I can say, Your Honor, that as I've stated, this is a
relatively odd area of law.

THE COURT:  Very confusing, yeah.

MR. DEWEY:  If this were an antitrust case, for
example, Your Honor, and you denied a PI and we're back on the
permanent, I think I would have a very hard time advancing the
argument I'm making now.

We think we're in a different posture because of the oddity
of the case.  And it may very well be that we don't disagree.
We have the burden, and you have a lot of discretion here,
Judge.  So it may very well be the D.C. Circuit said well,
*Mahoney* was somewhat facts intensive, remand, she knows the
case, she has the discretion.

THE COURT:  And it's so equitable in nature, that
they're giving me the deference here.

MR. DEWEY:  Yeah, I could see them very well saying
well, factual, *Mahoney* says be factual, we're not going to say
any more, send it back, and Judge Friedrich can handle it with
her discretion.

THE COURT:  Right.  Can you think of other statements
of law that concern you with the opinion that the Court should
focus on in making this decision?

1     MR. DEWEY:  So I think the other is the nature of

2     irreparable harm, Your Honor.  You were against us on, as we

3     read it, two legal points there.

4     THE COURT:  One was the plea.  The judge is going to

5     be deciding whether -- that judge.  In fact, she decided not to

6     accept it.  And it seemed like I wasn't the right judge to be

7     deciding what she needed to consider in making that

8     determination.

9     So that's very unique and is not likely to repeat itself.

10    What's the other?

11    MR. DEWEY:  I think looking at the totality of both

12    the legal principle applied to that and then the legal principle

13    applied to the relevant exigency considering Congress and all

14    the other equities.

15    And again, it may very well be the case that Your Honor

16    reads the opinion differently than we did, and we completely

17    understand that.  But again, I would go back to those points.  I

18    complete -- again, I'm not trying to preclude Your Honor's

19    discretion on this point, but if Your Honor's view were to be

20    well, there's really no issue here, it's so narrow, there's no

21    fixed legal conclusion, I think that would go a long way to

22    addressing our concerns on this.

23    THE COURT:  Right.  Well, again, I need to read it

24    again.

25    MR. DEWEY:  I'm not asking Your Honor to get ahead of

1    the issue.

2        THE COURT:  But your concern is that I'm going to view

3    everything through this lens and we're going to be locked in.

4        Well, but how can you reconcile that with the Court's

5    invitation to file another if circumstances change?  So clearly,

6    I didn't rule for all time you didn't have a legitimate PI.  I

7    said on those facts.  So I think that right there suggests that

8    the Court is viewing this as very fact-specific, not that you

9    can never meet the standard for a PI in this instance.

10        MR. DEWEY:  Understood.  I don't disagree, Your Honor.

11    Again, we're not arguing there's some sort of factual finding

12    that would be preclusive here.  It was more on what we saw were

13    legal issues that were against us on the key points that I

14    outlined.

15        THE COURT:  Understood.

16        Help me understand, and I'm going to ask the government the

17    same thing, why did both parties say this case was mooted out on

18    appeal?

19        As I understand it, before me and I think also on appeal

20    you argued that you needed this information for two reasons:

21    One for the plea and two for the congressional investigations

22    that would be forthcoming.  And here, you're telling me more are

23    coming.

24        I'm shocked that the D.C. Circuit said it was moot, because

25    you did have two bases for your request.  And one expired; the

1    other did not.  And meanwhile, at the same time, you accepted

2    this Court's minute order.

3         I get your point about it would have been futile to seek en

4    banc review and cert and all of that.  But that's the case in

5    other cases as well, and the Court has mentioned those factors

6    in other cases.  I kind of get that, though.

7         But what I don't get is why you use my minute order setting

8    a schedule as a basis to moot it.  It seems like you want your

9    cake and you want to eat it, too.  So you're happy with the

10   degree to which the Court's pressing the government to move

11   quickly, but at the same time, you want to X out this precedent

12   that you don't like.

13        And it seems like you've got to choose, and the cases sort

14   of suggest as much.  Yeah, there was some happenstance beyond

15   your control.  The plea went away.

16        But, you know, question 1 is, what about the congressional

17   investigation?  That was still alive.  And why did the parties

18   agree it was mooted out in light of that?

19        And two, why did you use my minute order as a basis to moot

20   it out and now want me to vacate the opinion?

21        It seems like you're arguing on two fronts here.

22             MR. DEWEY:  If I can, Your Honor, the way we viewed it

23   is we asked for -- the prayer for the injunction was by a date

24   certain, and that date changed when we moved for the emergency

25   relief.  And as Your Honor pointed out, that was, in effect, a

new -- or Your Honor viewed it as a new claim for relief in your

minute order denying an injunction pending appeal.

THE COURT:  And was that also tied to the plea date?

I can't remember that second one.

MR. DEWEY:  It was tied to a date sufficiently before

the plea to let us analyze the documents.  And that is how we

appealed the case and viewed it in the D.C. Circuit.

So as we viewed it in the D.C. Circuit, we had a situation

where we had only sought an injunction by a date that had passed

for an event that would pass, and we probably -- and we weren't

properly up on a broader question where we could extend the

date.

THE COURT:  But why didn't you move to withdraw or

moot it out before?  Why did you wait the length of time you

waited to ask for it to be mooted out?

That date came and went, and the plea came and went.  And

you waited and got my minute order and then said let's vacate

the Court's opinion below.  It seems a little contradictory.

MR. DEWEY:  That was happenstance, Your Honor.

THE COURT:  What was happenstance?

MR. DEWEY:  The timing of that.

THE COURT:  That you just didn't think we need to moot

this out?

MR. DEWEY:  We were considering the question, Your

Honor, and then we were discussing with government what the

position would be on a request for vacatur as well, Your Honor.

It was purely happenstance. If we should have moved more -- I fully concede maybe we should have moved more quickly to file the motion to dismiss and the vacatur.

It had nothing to do with trying to take advantage of Your Honor's minute order. We put that in a factual statement because we thought it might be relevant in some sense. It is not that -- it's relevant only in the sense of both the date has come and gone and the documents at issue have been produced at the time we filed it.

We're not trying to have our cake and eat it, too. We viewed the D.C. Circuit -- as I said, Your Honor, we did want to look at the issue, but we viewed it as tied to those dates. So there was no way to resurrect it, because at that point we would be seeking relief that we did not seek below. And I don't think there's any way procedurally we could have accomplished that.

THE COURT: Okay. One of the cases neither side mentioned was *United States v. Garde*, 848 F.2d 1307, a D.C. Circuit 1988 case.

Are you familiar with that case?

MR. DEWEY: It does not come immediately to mind, Your Honor.

THE COURT: All right. Well, let me just -- to the extent both sides aren't familiar with it, let me summarize it.

So in that case, the D.C. Circuit said we don't wish to

1    encourage litigants who are dissatisfied with the decision of

2    the trial court to have them wiped from the books by merely

3    filing an appeal, then complying with the order or judgment

4    below and petitioning for vacatur of the adverse trial decision.

5    That's *Garde* at 1311.

6        And in that case, the defendant petitioned to enforce a

7    subpoena to obtain the identity of whistle blowers to aid in its

8    investigation into nuclear plant safety.  The petition was

9    denied, and the defendant appealed.

10       When the appeal was pending, the defendant complied with

11   the denial but otherwise secured the information it sought to

12   obtain by way of the subpoena, except the identity of the

13   whistle blowers.  The appeal was moot because the defendant

14   received the information about allegations of nuclear safety

15   problems.

16       So doesn't this case sort of weigh against vacatur here?  I

17   know it's not perfectly analogous, but it's -- it seems to lean

18   that way.

19           MR. DEWEY:  On those facts, Your Honor, I would say

20   no, because there the defendant, as I understand it, complied

21   voluntarily with the subpoena.  So the compliance would be an

22   act by the party to essentially -- I'm not going to say forfeit.

23   It doesn't sound like it was briefed in that posture.  But I

24   think it would flow from the *Bancorp* notion of you can forfeit

25   your right to vacatur, and you can certainly undermine your

1    right to vacatur.

2        And our position is that we have not done that here, again

3    going back to the relief was for a specific date and the event

4    in question.  We feel we moved expeditiously, and this court --

5    as you know, we immediately filed a motion for relief in this

6    court.  We filed a motion for relief in the D.C. Circuit.  And

7    as we pointed out, at that point the timeline, given the prayer

8    and the date we had picked as the date certain, in our view,

9    just didn't permit en banc review or cert review.

10       So I think again, our submission is it's tied to the date;

11   it's not tied to production.  It's a separate issue.  Because

12   there, as I understand it, the issue was do I have to produce

13   these documents, and that's an issue that's not really tied to

14   any date.  If I produce, I've mooted it out.

15       The fact that we will tomorrow get this initial set of

16   documents, Your Honor, in our view is different because the

17   relief we sought was by a date.  The relief we sought was

18   integrally tied to being able to say to the judge in Delaware

19   that, depending upon what was in the documents, here is some

20   material that we believe may be relevant.

21       And again, it's all coming back to date, and apologies

22   again if Your Honor thinks we should have move more quickly.

23           THE COURT:  I'm just wondering, should that count

24   against you.  You're saying no because you're representing to me

25   it truly was inadvertent, we were assessing whether to seek en

1    banc review.

2         It does seem, particularly when you use my order to moot it

3    out, it seems like you want the advantage of the rulings that go

4    your way but not the decision that didn't.

5         MR. DEWEY:  Again, Your Honor, I think there is a

6    distinction between the production order on a status conference

7    and the preliminary injunction.  I think those are two --

8    they're two different procedural mechanisms.  They're very

9    different, as Your Honor recognized.  So I think they're two

10   very different opinions.

11        And our concern was the ability to use the preliminary

12   injunction posture to get records by a date certain with a

13   specific exigency.  So we viewed that as separate from that, and

14   perhaps we ought not to have mentioned the minute order.  We

15   thought it was necessary to mention everything that had

16   transpired below in our filing certainly on that point.

17        And I should say that, you know, I think the case would be

18   moot regardless of the minute order.  If Your Honor had done

19   nothing and the government was simply producing --

20        THE COURT:  No, understood.

21        MR. DEWEY:  -- on their own, we don't think it would

22   matter, having considered the situation.

23        THE COURT:  All right.  Thank you.  And I will come

24   back with you on the search issues.

25        MR. DEWEY:  I understand, Your Honor.

1          THE COURT:  So I will hear from the government next.

2      I know you're taking no position here, and I guess it's

3  strategically important, because you may find yourself on the

4  other side here in a future case.

5      But why is the government in agreement that the case was

6  mooted out?  Do you agree with what Mr. Dewey said about this

7  really was tied to the date and the date had passed?  Is that

8  how you viewed it, even though they had sought the documents for

9  multiple reasons?

10          MR. LYNCH:  So, first of all, Your Honor, with respect

11  to not taking a position, I think that has somewhat to do with

12  the government sometimes seeks vacatur of preliminary

13  injunctions.

14      But it also has to do with the fact that we made

15  representation above, and we wanted to be consistent in this

16  court with the representations that we had made to the D.C.

17  Circuit.

18      So that's, you know, in fairness, sort of why --

19          THE COURT:  No, no, I mean before the D.C. Circuit,

20  why you viewed it as moot.  Because the date had passed?

21          MR. LYNCH:  As a general matter, the United States, as

22  any other appellee, if the appellant comes and says we think the

23  case if moot, our sort of default inclination would be to agree.

24  If you're going to dismiss your appeal, we're not going to --

25          THE COURT:  But can't they just voluntarily dismiss

the appeal?  To dismiss it as moot and the government joins

that, that suggests that the government agrees it's moot.  And I

was surprised that you would agree it was moot.

But if you did, was it because you looked at the case as

Mr. Dewey said, that the date had come and gone and you agreed

it was moot?

MR. LYNCH:  No, I think Your Honor is right.  They

were citing all along sort of two different exigencies.

THE COURT:  Right.  So why agree with that?  Why not

just say no objection to voluntarily dismissing the appeal?

MR. LYNCH:  Well, because I think if they want to

withdraw one of those purported exigencies and pin this all on

the plea hearing, which their motion pretty clearly does -- I

can read from it, but they essentially say the plea hearing was

the driver of the exigency.  So essentially, from our

perspective, that's taking off of the table one of the two

exigencies.

THE COURT:  But there was still the remaining exigency

that you're going to hear about again if they come before me

again with the PI, and you could have had the D.C. Circuit weigh

in on that.

MR. LYNCH:  Well, I think now we would be able to say

they've actually said the plea hearing was the driver of the

exigency.

THE COURT:  They could potentially move forward with

1    another PI and make similar arguments that they made before me

2    the first time.  And maybe I reject them this time; maybe I

3    don't.  But you could have had the D.C. Circuit express a view

4    on the congressional investigation prong of this.

5        It doesn't really matter for purposes here.  I was just

6    confounded by the posture.  One, why am I deciding this now; the

7    D.C. Circuit normally does it.  Two, why did the parties say

8    this was mooted out.  It didn't seem to be mooted out from my

9    perspective based on the grounds for the PI and the grounds for

10   the appeal.

11       So, you know, I'm dealing with a sticky issue that's

12   unclear law, and the circuits are not looking at it all the same

13   way, and why am I in this position.

14       Why did the D.C. Circuit and the parties put this back

15   here?  It seems like the D.C. Circuit could have eliminated

16   future litigation in this court in this case by addressing the

17   alternative basis for the appeal.

18           MR. LYNCH:  I agree it might have, Your Honor, and I

19   agree that it is a little strange to remand a *Munsingwear*

20   question to district court, since that's technically not the

21   basis for vacatur that the Court applies.  So it is a little bit

22   strange, I will grant you.

23       I'm not sure I have more to add than just sort of as a

24   general sort of litigation strategic matter, if the appellant

25   comes and says we want to dismiss our appeal, I think our

1    default again is to say okay, you know, we'll agree with that.

2         THE COURT:  I understand.  I just don't understand why

3    you joined them in the mootness.

4         MR. LYNCH:  Well, because it's not at all 100 percent

5    sure that we would prevail, just like any appeal, any appellee

6    is looking at it and thinking I can get 100 percent dismissal

7    here or I can take my chances with the D.C. Circuit on the

8    merits.

9         I don't think it should surprise anyone that in most cases

10   the appellee is going to say okay, I will agree --

11        THE COURT:  But why not just tell them we have no

12   objection to you dismissing the appeal, go ahead and voluntarily

13   dismiss the appeal; we're just not going to agree the case is

14   moot?

15        MR. LYNCH:  I can't speak on that any further, Your

16   Honor.  I apologize.

17        THE COURT:  So you filed this brief to make sure that

18   the Court understood that the denial of a preliminary injunction

19   has no res judicata effect, it would not bind anyone in a future

20   case.

21        But how do I reconcile that with *Mahoney* where the D.C.

22   Circuit clearly talked about the preclusive effect of a

23   preliminary injunction?

24        I mean, there's something.  It might not be much, but you

25   don't -- you're not -- I'm confused by the position.  It seems

1   like a PI can have some -- it's not going to have res judicata

2   effect in terms of the merits, and it's not going to have a

3   preclusive effect if the facts change a lot.  But you don't mean

4   to suggest that it has no preclusive effect?

5           MR. LYNCH:  No, I do, Your Honor.  It does not

6   preclude anyone from arguing anything.  It's not law of the

7   case.  It doesn't have issue preclusion effects.  So there's no

8   collateral estoppel.  There's no res judicata or claim

9   preclusion effect.  It's an interlocutory order from the

10  district court which, needless to say, does not bind any other

11  court, but it does not even bind Your Honor.

12      And I was trying to think as I was sitting at counsel's

13  table how to sort of cut through this most quickly and save

14  everybody the most time and effort.

15      I think that Mr. Dewey's concerns about our arguing that

16  you're bound by your prior order if we were to litigate a

17  renewed PI is misplaced.  To be sure, we may say you got it

18  right the first time and that's persuasive and there's no reason

19  for you to revisit your reasoning, you got it right.

20      But that is not an estoppel argument.  That's not a res

21  judicata argument.  It's not a preclusive argument.  So --

22          THE COURT:  How do you reconcile that with the D.C.

23  Circuit's words in *Mahoney* where the D.C. Circuit held that,

24  quote, the preclusive effect of a preliminary injunction is

25  attenuated and poses little risk of prejudice to the party?

1          I mean, it's minimal, but it's not nonexistent, is it?

2          MR. LYNCH:  I think strictly speaking it is

3     nonexistent.  I mean, I can't speak to what the D.C. Circuit had

4     sort of --

5          THE COURT:  Well, then why would they even remand it?

6     I mean, why wouldn't they just not even ask for me to consider

7     it?

8          MR. LYNCH:  I don't know why this was remanded to this

9     court, Your Honor.

10         THE COURT:  Because I think it has potentially some

11    preclusive effect.

12         MR. LYNCH:  I can't see how it --

13         THE COURT:  In this case, I think minimal, if any, but

14    in a case, it could.

15         MR. LYNCH:  All of what you asked Mr. Dewey to state

16    as the legal conclusions that he thought would bind you going

17    forward, all of those can be revisited.  None of them is

18    precluded --

19         THE COURT:  I know, but can't you envision a case in

20    which it would have preclusive effect?

21         Let's say there's a circuit split on some issue and I take

22    the position this is the law, the D.C. Circuit hasn't addressed

23    it, and that is resurfacing again in a PI?  You don't think that

24    that can have some degree of preclusive effect?  And if not,

25    then why does the D.C. Circuit send it down here and say what it

does in *Mahoney*?

MR. LYNCH:  I can't speak to why the D.C. Circuit sent this back down, but I can say it's black letter law that it would not be preclusive, Your Honor.  You could revisit it. Either side could ask you to revisit it at any time.  It's an interlocutory order.

THE COURT:  But that's the case for any decision I ever render.  I can reconsider any ruling I ever make.  That's the district court.  Nothing precludes me from revisiting any of my orders.

MR. LYNCH:  I think once we get to final judgment, there are some limitations in terms of --

THE COURT:  In a case like this, ongoing rulings.

MR. LYNCH:  Sure.  That's why I think we're able to put together a page-long string cite of circuit courts that say we don't vacate preliminary orders.

THE COURT:  But you don't have a single D.C. Circuit case --

MR. LYNCH:  We have an unpublished one in a footnote, Your Honor.

THE COURT:  But then there's subsequent case law after that that suggests otherwise.

MR. LYNCH:  I don't know that there's any case that suggests otherwise.  There are cases where the Court of Appeals had said either the opinion denying the PI or the portion of the

1    PI or a portion of it will be vacated.  But I don't know of any

2    case that has reasoned through the logic that's in that lengthy

3    string cite we put together, which is that the preliminary

4    injunctions are interlocutory, they don't have precedential

5    effect, and therefore, there's no need to vacate them.  I don't

6    know of any circuit decision that has said notwithstanding that

7    we still are going to go ahead and vacate it.

8         THE COURT:  But their action of sending it back down

9    to consider it has to mean that they think that it has some

10   preclusive effect, or why would they do it?  It's just wasting

11   my time.

12        MR. LYNCH:  Again, I don't know why they did it, Your

13   Honor.  But Mr. Dewey perhaps said it best.  You might not read

14   too much into the summary order here.

15        THE COURT:  Let me ask you about -- I'll just say, I

16   want to take a look at the case the plaintiffs cited.  Do you

17   know anything about that case?  Do you want to --

18        MR. LYNCH:  The *Volpe*, I have not looked at it, Your

19   Honor.

20        THE COURT:  I am going to take a look at that case,

21   but I will just say, where I stand now, I am inclined to not

22   vacate my earlier opinion, but I will put out a short order in

23   the next day or two, and I will review that case before I do.

24        Moving on to the status of this case before me now,

25   Mr. Dewey says there are issues with the scope of the search.  I

know it's unconventional to split the briefing into the search and then look at the exemptions.  I've resisted that in other cases.

But given the exigencies here and given that the decisions the Court renders on the search are very -- you know, can be easily -- they don't overlap with exemption determinations, why shouldn't the Court -- if there really is a dispute that the parties can't work out now, why shouldn't the Court -- why shouldn't I have you tee that up for me now and decide it so that we're not waiting until the Court makes determinations on exemptions and then you're going back and saying it's going to take three weeks to do another search and then we have delays in the summer?

I don't know.  Hypothetically.  I'm hoping not.  I hope the whole thing can be resolved more quickly than that.

But what's the downside, if you all can't agree on the search terms, to tee that up now?

MR. LYNCH:  Well, first, I just want to say, Your Honor, I do apologize.  I'm not here with authorization to sign on to a course of action like that.  I was only prepared to discuss the vacatur issue today.

I will say I think that we are usually the ones tagged with trying to get two bites at the apple or pursuing piecemeal litigation.  So it's usually a constraint on the government to say you have to do it all at once.

1    If you're going to sort of, you know, make clear that this

2    is not --

3        THE COURT:  No, you all argue in FOIA cases all the

4    time don't make us do this piecemeal.

5        MR. LYNCH:  Right.  So I think in general, that is

6    worthy of consideration, if I can get back to my clients and

7    supervisor --

8        THE COURT:  Okay.  That's fine.  I would like you all

9    to talk.  First of all, I would like for you all to work this

10   out.

11       MR. LYNCH:  I'm not sure --

12       THE COURT:  I am frustrated that, you know -- do you

13   all want to share, the plaintiffs want to share just at a high

14   level what the dispute relates to?

15   And I know you're not going to be able to take a position

16   here.  But are you all being reasonable with the scope request?

17   Do they have like a legitimate defense here on why they're not

18   going to do it?

19   I'm happy for you to add whatever you want right now, but I

20   know you're not prepared for this, and I know you don't have

21   authorization to say yeah, we can do it.  I just want some sense

22   of why there's such a gulf that you all are considering

23   briefing.  This just seems like one of those cases where both

24   parties would work it out because of time sensitivity of it.

25       MR. LYNCH:  So I think just at a high level, I think

1    we have sort of a fundamental disagreement about sort of who was

2    allowed to do the searching and collecting of records, and that,

3    I think, at the highest level is the dispute, and I think it's

4    fairly intractable.

5        It's not an issue of sort of adding one more search term --

6                THE COURT:  And there's not clear law on this already?

7                MR. LYNCH:  I think actually there is fairly clear

8    precedent, but we have a dispute about that.

9                THE COURT:  Let me hear from Mr. Dewey.

10       Mr. Dewey, if there's a whole lot of precedent in this

11   court saying it should be done the way the government's saying

12   it should be done, you're likely to lose this.

13       But tell me why you are pressing this.  Is he wrong?

14               MR. DEWEY:  He is -- I would disagree with his

15   characterization, Your Honor, and I would say as a predicate,

16   obviously we owe Your Honor a report on the 1st.  We have

17   conferred frequently.  There are issues we have worked out.

18       At this point, we're not going to challenge the search

19   terms.  We've had that --

20               THE COURT:  So it's not the terms?

21               MR. DEWEY:  It's not, Your Honor.  The issue is there

22   are seven custodians in this case.  I will take, for example,

23   Lesley Wolf, who was the lead AUSA on the matter.

24               THE COURT:  In Delaware?

25               MR. DEWEY:  Yes.

1        As has been repeatedly represented to us, Ms. Wolf searched

2    the archival tool for the e-mails and made an initial cull of

3    those documents, not the final responsiveness cull but some sort

4    of determination.

5            THE COURT:  Initial cull on whether the documents met

6    the terms?

7            MR. DEWEY:  Of whether they were responsive, Your

8    Honor.

9            THE COURT:  By responsive, you mean to the search

10   terms?

11           MR. DEWEY:  To the request.  No, Your Honor.  As it's

12   been presented to us, we understand it was not a "I'm running

13   the search terms, I'm taking it, here you go."  It was a "does

14   it relate to the matter."

15           THE COURT:  So you're objecting to that?  Like she

16   should run the search with the terms and not be making a --

17           MR. DEWEY:  Yes, Your Honor.  Ordinarily, we wouldn't

18   have a problem with it.  We do because in this case you have a

19   custodian who has been -- there is sworn testimony from career

20   law enforcement agents on this case that she engaged in

21   misconduct in this case.  They have supported that with

22   voluminous documentation, including documents signed by that

23   person.

24       And you also have a case where -- and I very much hesitate

25   to say this, Your Honor, but plaintiffs feel that Mr. Weiss was

1    not candid with Congress in his written statements.  So you have

2    a very odd case.

3        I agree with my friend, normally, no issue with the

4    custodian doing the search.  The issue was very narrow.  I'm

5    aware of only one case in this court specifically dealing with

6    it, Your Honor.

7            THE COURT:  So basically, you're going to -- you think

8    there could -- sorry to interrupt, but you're thinking there's

9    evidence that allows the Court to look behind the presumption of

10   good faith?

11           MR. DEWEY:  Substantially, Your Honor.

12           THE COURT:  All right.  Well, if true, then the Court

13   will.  I can't opine on that not knowing the facts.  But if --

14   notwithstanding the cases that the government's accorded a

15   presumption of good faith, if factually the Court determines

16   that they're not, then I would be sympathetic to the plaintiffs'

17   position.

18       This is for the government's benefit.  And I am not

19   telegraphing in any way that's where I'm going to land here, but

20   I think that that's fair.  If, in fact, you have ample evidence

21   that people have not been, you know, trustworthy in some way,

22   then it does raise concerns that that person would be making

23   decisions on the scope of the search.

24           MR. DEWEY:  And, Your Honor, to be clear, we're not

25   trying to press the point unnecessarily.  Our position has been,

1    you know, all we're saying is you have -- we understand the

2    searches are being run and forensic tools are being processed,

3    just to rerun it taking that into account.  Maybe it turns out

4    the same; maybe it doesn't.

5         THE COURT:  But it's a high standard to meet bad

6    faith.  You better have some really good evidence.  And I'm not

7    following this case in the news.  So I don't know what it is.

8    It could be.

9         MR. DEWEY:  I understand, Your Honor.  And again, I

10   think, you know, our position is that it would just be easier to

11   run it in a way that --

12        THE COURT:  Yeah.

13        MR. DEWEY:  -- takes it for everyone.  I don't

14   think --

15        THE COURT:  And I'm sympathetic to that as well.  Like

16   if there's -- if it's close at all, why not run it and get them

17   out of it and run it a second time, because I would think the

18   government really doesn't want to have a ruling on this.

19        MR. LYNCH:  I can address that, if you want.

20        THE COURT:  Sure.

21        MR. LYNCH:  It's not an issue of just we'll have

22   somebody else click search and we'll have the same results and

23   we'll see if they match.

24        What the custodian had to do because of the facial breadth

25   of the request is search for a term like "special counsel" or

"515," which is the statutory provision for SAUSA designation.
That's going to net a bunch of things, because we do SAUSA work
all over the place.

These custodians had to say well, which of these have to do
with the Hunter Biden prosecution.  It's essentially going to
the right drawer in the file cabinet.

THE COURT:  Yeah, understood.  That makes complete
sense.  And if the person who is making that call, they have
sufficient evidence of bad faith, then it can't be that person.
Someone's got to do it, but it can't be that person.

MR. LYNCH:  We don't agree with the predicate,
obviously.

THE COURT:  All right.  Again, I think this is
something you all ought to be able to work out.  If not, propose
a schedule for briefing, and I will resolve it.  I don't think
this should wait until it's fully teed up.  This will just slow
things down.  Okay?

So you all see if you can work it out.  If you can't,
propose a schedule for briefing, and I will decide it in short
order.  Okay?

MR. LYNCH:  Understood, Your Honor.

THE COURT:  All right.  Anything else?

MR. DEWEY:  Very, very quickly, Your Honor.

We will do that, and as I said, there are substantial --
it's not a case where the parties have -- are completely in

1    track, but we have worked a lot of issues out --

2           THE COURT:  Good to hear.

3           MR. DEWEY:  -- already without involving the Court.

4    This is just one where we're very set in our respective

5    positions.

6        I wanted to say quickly on the vacatur point, Your Honor,

7    as to the preclusive effect, it's cited in *Mahoney*, but page 202

8    of *Gjersten*, Judge Posner's opinion --

9           THE COURT:  Yes.

10          MR. DEWY:  -- also discussed that.

11       And I just -- I wanted to make clear, in the D.C. Circuit,

12    the government took the position they would move to dismiss if

13    we did not dismiss.  And part of the delay was a discussion of

14    okay, will you -- what's your position on vacatur, to be frank.

15       So to Your Honor's question about the government's

16    position --

17          THE COURT:  Wait.  So the government was prepared

18    to --

19          MR. DEWEY:  The government stated they were going to

20    move to dismiss the appeal as moot.

21          THE COURT:  Interesting.  Okay.

22          MR. DEWEY:  If we did not resolve the issue without

23    judicial involvement, that was the position of the government in

24    the D.C. Circuit.

25          THE COURT:  Okay.  All right.  Do you want to add

1    anything to that?

2              MR. LYNCH:  Well, since the beginning of the case,

3    Your Honor, we've disputed that there was an exigency.  I think

4    we said in our opposition to the PI, if anything, they could

5    point to the plea hearing as a date.  We've always denied that

6    the congressional investigations, sort of the existence of them

7    constitute an exigency.  You agreed with us in making your order

8    on that.

9         So yes, I think we probably would have argued that the case

10   was moot.  But agreeing with them that the plea hearing was the

11   only basis for conceivable exigency I don't think is contrary to

12   any prior position we've taken.

13             THE COURT:  All right.

14             MR. DEWEY:  I did not mean to suggest that, Your

15   Honor.  I just wanted to be clear --

16             THE COURT:  And I didn't interpret it that way.

17        Okay.  I will not put out any order and hope that you all

18   work this out, but if not, you all bring the issue to the Court

19   and propose a briefing schedule that I will consider.

20        All right?  Anything else?

21             MR. LYNCH:  No, Your Honor.

22             MR. DEWEY:  No, Your Honor.

23             THE COURT:  All right.  Thank you.

24        (Proceedings adjourned at 12:30 p.m.)

25

CERTIFICATE OF OFFICIAL COURT REPORTER


        I, Sara A. Wick, certify that the foregoing is a

correct transcript from the record of proceedings in the

above-entitled matter.



/s/ Sara A. Wick                    January 8, 2024

SIGNATURE OF COURT REPORTER         DATE