## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| HERITAGE FOUNDATION, *et al.*,<br><br>          Plaintiffs,<br>     v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE,<br><br><br>          Defendant. | Case No. 1:23-cv-1854-DLF |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The Court has already upheld Defendant the U.S. Department of Justice's search for records in this Freedom of Information Act ("FOIA") case and entered partial summary judgment in Defendant's favor. *See Heritage Found. v. U.S. Dep't of Just.*, No. 23-cv-1854-DLF, 2024 WL 3291783 (D.D.C. July 3, 2024); Order (July 3, 2024), ECF No. 49.

Defendant now moves for summary judgment on all withholding of records, in whole or in part, under 5 U.S.C. § 552(b).

## TABLE OF CONTENTS

INTRODUCTION..........................................................................................................1

BACKGROUND ..........................................................................................................2

LEGAL STANDARD ...................................................................................................3

ARGUMENT ...............................................................................................................4

I.  THE PARTIES HAVE NARROWED THE DISPUTED WITHHOLDINGS IN THIS CASE.................4

II.  THE DEPARTMENT WAS JUSTIFIED IN WITHHOLDING 155 RECORDS IN FULL. ....................5

    A.  All But Two of These Records Are Categorically Withheld Under FOIA
       Exemption 7(A). ..................................................................................................5

        1.  The Department has defined functional categories of records. ...................6

        2.  The Department has conducted a record-by-record review in order to
           assign the withheld-in-full records into those categories.............................7

        3.  The Department has explained how the release of each category would
           interfere with enforcement proceedings. ......................................................8

    B.  The Records Are Also Withheld, In Whole or In Part, Under Other FOIA
       Exemptions. .......................................................................................................10

        1.  Exemption 3...................................................................................................10

        2.  Exemption 5...................................................................................................11

        3.  Exemptions 6, 7(C), and 7(F). ......................................................................11

    C.  Two Records Are Properly Withheld In Full Under Exemption 5. .....................12

III. THE DEPARTMENT WAS JUSTIFIED IN WITHHOLDING 58 RECORDS IN PART. ....................14

CONCLUSION ...........................................................................................................20

**INTRODUCTION**

In March 2023, Plaintiffs submitted a two-part request under the Freedom of Information Act ("FOIA"). The request sought (1) records related to Mr. Weiss' "Special Counsel status"; and (2) communications between the District of Delaware and other districts in which venue would have been appropriate to bring charges against Hunter Biden. *See* Statement of Undisputed Material Facts ("SUMF") ¶ 1. The Department of Justice conducted a search for responsive records, which the Court later upheld as "more than adequate." *Heritage Found. v. U.S. Dep't of Just.*, 2024 WL 3291783, at *5 (D.D.C. July 3, 2024).

After processing the search results, the Department produced 162 pages of records in full. *See* 4th Decl. of Kara Cain (Aug. 23, 2024) ("Cain Decl.") ¶ 7. The Department also released 135 pages in part—meaning that it redacted certain portions of those pages as exempt under FOIA—and withheld another 740 pages of records in full. *Id.* In the course of re-reviewing the search results in advance of this motion, the Department determined that 78 of the records withheld in full were not, in fact, responsive to Plaintiffs' FOIA request. *Id.* ¶ 10. Accordingly, the Department moves for summary judgment on 58 records withheld in part and 155 records withheld in full.

With respect to the records withheld in full, all but two were properly withheld under the "categorical approach" to FOIA Exemption 7(A). *See Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 746 F.3d 1082, 1098–99 (D.C. Cir. 2014) ("*CREW*"). That exemption covers records or information prepared for law-enforcement purposes, where disclosing such records or information "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). An agency is allowed to withhold records categorically when they relate to an enforcement proceeding, so long as the agency (1) defines functional categories of withheld records; (2) reviews every document to ensure that it falls into one of the categories; and (3) explains how releasing each category would interfere with proceedings. *CREW*, 746 F.4th at 1098.

1

The Department has satisfied all three requirements here. SUMF ¶¶ 9–12. The other two withheld-in-full records—draft letters in response to a congressional inquiry—are exempt under FOIA Exemption 5, which includes the attorney work-product doctrine and the deliberative-process privilege. *Id.* ¶¶ 14–17.

Within the 131 pages of records withheld in part, there are 25 withholdings that Plaintiffs still dispute. Twenty-two of those redactions were made pursuant to Exemption 5, because they would reveal the Department's deliberative process—specifically, how to respond to congressional inquiries. It is well established in this district that such deliberations are shielded by Exemption 5. *See Husch Blackwell LLP v. United States Env't Prot. Agency*, 442 F. Supp. 3d 114, 123 (D.D.C. 2020) (collecting cases). Because releasing these passages would thus harm an interest protected by Exemption 5, and because nothing in the passages could reasonably be segregated and released, these 22 redactions were properly taken. Two more withholdings were appropriate under Exemption 7(A), because they would reveal the strategic thinking of Mr. Weiss and other members of the investigation team. And two other withholdings—including one passage that was also redacted under Exemption 5—were appropriate under Exemption 7(E), because they would reveal an internal Department filename used to reference the Hunter Biden investigation and, by extension, would reveal law enforcement techniques or procedures.

Because all of the Department's withholdings were appropriate, the Court should grant this motion and enter final judgment for Defendant.

## BACKGROUND

The Department conducted a search for records responsive to both parts of Plaintiffs' FOIA request. This Court upheld that search as "more than adequate" and, contrary to several of Plaintiffs' arguments, "eminently reasonable." *Heritage Found.*, 2024 WL 3291783, at *5, *6 (D.D.C. July 3, 2024). The results of that search were produced to Plaintiffs in three iterations.

On September 1, 2023, the Department tendered a revised first interim response.[1] *See* Cain Decl. ¶ 7(a) & Ex. 1. The Department released 36 pages in full, released 94 pages in part, and withheld 122 pages in full. *Id.* ¶ 7(a). Another 301 pages were deemed duplicative and 26 pages were deemed non-responsive. *Id.*

On September 29, 2023, the Department tendered its second interim response. *See id.* ¶ 7(b) & Ex. 2. The Department released 7 pages in full, released 19 pages in part, and withheld 463 pages in full. *Id.* ¶ 7(b). Another 559 pages were deemed duplicative of records already processed. *Id.*

On October 31, 2023, the Department tendered its third and final response. *See id.* ¶ 7(c) & Ex. 3. The Department released 119 pages in full, released 22 pages in part, and withheld 130 pages in full. *Id.* ¶ 7(c). Another 701 pages were deemed duplicative of records already processed, and 445 pages were deemed non-responsive. *Id.*

In advance of this motion, the Department carefully re-reviewed every record that had initially been withheld in full. *Id.* ¶ 10. The Department determined that 78 records were not, in fact, responsive to either part of Plaintiffs' FOIA request. *Id.* Accordingly, as the case comes to this Court, the Department is only withholding as exempt from FOIA 155 records in full and 58 records in part. *Id.*

## LEGAL STANDARD

"FOIA cases typically and appropriately are decided on motions for summary judgment," *Manna v. U.S. Dep't of Just.*, 106 F. Supp. 3d 16, 18 (D.D.C. 2015) (quoting *ViroPharma Inc. v. U.S. Dep't of Health & Human Servs.*, 839 F.Supp.2d 184, 189 (D.D.C.2012), supported by nonconclusory agency affidavits or declarations, *see id.* (citing *SafeCard Servs., Inc., v. Sec. &*

---

[1] The Department had issued its first interim response on August 25, 2023. That production drew certain objections from Plaintiffs, and by agreement of the Parties, the Department issued its revised first interim response on September 1, 2023.

*Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)). The agency is required to demonstrate that any withheld information is properly exempt under one of FOIA's nine exemptions. *Watkins L. & Advoc., PLLC v. U.S. Dep't of Just.*, 78 F.4th 436, 451 (D.C. Cir. 2023). That burden is often carried by "supporting affidavits that 'describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Id.* (quoting *Elec. Frontier Found. v. U.S. Dep't of Just.*, 739 F.3d 1, 7 (D.C. Cir. 2014)).

## ARGUMENT

### I.   THE PARTIES HAVE NARROWED THE DISPUTED WITHHOLDINGS IN THIS CASE.

Through a productive meet-and-confer process, the Parties have agreed not to litigate the following categories of withheld material:

- Names of congressional staffers;

- Names of Delaware U.S. Attorney's Office employees junior to the Criminal Chief;

- Names of other Department of Justice employees who are in non-supervisory, non-public-facing roles; and

- Email addresses, phone numbers, or physical addresses.

*See* Joint Status Report (July 17, 2024), ECF No. 52.

Accordingly, these withholdings are not before the Court and the Department does not argue below why they were appropriate. And where relevant, the Department's arguments assume that this information was properly withheld.

## II.   THE DEPARTMENT WAS JUSTIFIED IN WITHHOLDING 155 RECORDS IN FULL.

The Department initially informed Plaintiffs that it had withheld 740 pages of records in full under FOIA Exemption 7(A), 5 U.S.C. § 552(b)(7)(A). *See* Cain Decl. ¶ 7. However, upon further review, the Department determined that 78 records were not responsive to either Part 1 or Part 2 of Plaintiffs' request. *Id.* ¶ 10. The Department moves for summary judgment on its withholding in full the remaining 155 records.

### A.   All But Two of These Records Are Categorically Withheld Under FOIA Exemption 7(A).

Exemption 7(A) covers "records or information compiled for law enforcement purposes," to the extent that producing such records or information "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). In this case, the Department has verified that all records withheld under Exemption 7(A) were compiled for law-enforcement purposes. Cain Decl. ¶ 38. And while the D.C. Circuit has suggested that Exemption 7(A) applies only when there is an "ongoing" law-enforcement proceeding, *CREW*, 746 F.3d at 1097–98, there can be no dispute about that here. *See* Minutes of Hearing, *United States v. Biden*, No. 2:23-cv-599-MCS (C.D. Cal. May 22, 2024), ECF No. 114 (setting trial date for September 5, 2024). The only question, therefore, is whether releasing the withheld records could reasonably be expected to interfere with those proceedings. The Department has concluded that it would. Cain Decl. ¶¶ 40–46. And on that question, courts "give deference to an agency's predictive judgment." *CREW*, 746 F.3d at 1098.

Moreover, the Department need not carry its burden on a document-by-document basis. Instead, "[c]ategorical withholding is often appropriate under Exemption 7(A)." *CREW*, 746 F.3d at 1098 (citing *Nat'l Lab. Rel. Bd. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 236 (1978)). That is, "an agency may satisfy its burden of proof 'by grouping documents in categories and offering generic reasons for withholding the documents in each category." *Id.* (quoting *Maydak v. Dep't of*

*Just.*, 218 F.3d 760, 765 (D.C. Cir. 2000)). An agency "has a three-fold task" if it wants to take a categorical approach: "First, it must define its categories functionally. Second, it must conduct a document-by-document review in order to assign documents to the proper category. Finally, it must explain to the court how the release of each category would interfere with enforcement proceedings." *Id.* (quoting *Bevis v. Dep't of State*, 801 F.2d 1386, 1389–90 (D.C. Cir. 1986)). The Department has fulfilled all three tasks here.

### 1. The Department has defined functional categories of records.

The Department has defined the following categories of records that were withheld in full under Exemption 7(A):

1. Investigative Records

   a. Records that discuss **evidence** to be used, or considered for use, in the proceedings.

   b. Records that propose, schedule, or otherwise discuss **specific investigatory steps**, such as witness interviews, subpoenas, search warrants, or grand-jury presentations.

   c. Records that pertain to or would reveal **case strategy**, such as perceived strengths or weaknesses; issues pertaining to federal criminal procedure; evidentiary issues; or discovery obligations.

2. Administrative Records

   a. Records that discuss **logistical coordination**, including among U.S. Attorneys' Offices or Department components, such as requests for staffing support; office space; or access to information-technology platforms.

   b. Records that discuss **formal or legal coordination**, such as potential partnering between U.S. Attorneys' Offices and related issues, including any necessary paperwork.

   c. Records pertaining to the current or potential **case team composition**, including which agents, prosecutors, or other Department employees might participate (and in what capacity(ies)) in the proceedings.

Cain Decl. ¶ 39.

While there is no rigid taxonomy of acceptable categories under Exemption 7(A), the Department's proposal fits comfortably among those accepted by courts in this district—including by this Court. *See, e.g.*, *Dillon v. Dep't of Just.*, 102 F. Supp. 3d 272, 291–92 (D.D.C. 2015); *Shapiro v. Dep't of Just.*, No. 12-CV-313 (BAH), 2020 WL 3615511, at *17 (D.D.C. July 2, 2020); *Lewis v. U.S. Dep't of the Treasury*, No. 17-CV-0943-DLF, 2020 WL 1667656, at *5 (D.D.C. Apr. 3, 2020) (Friedrich, J.). Courts have accepted, in particular, the applicability of Exemption 7(A) to both "evidentiary/investigative materials" and "administrative materials." *Shapiro*, 2020 WL 3615511, at *17. And this Court has exempted both (1) "records of law-enforcement methods or procedures undertaken in furtherance of the investigation, including requests for information, the results of these investigative requests, dissemination of information obtained, and correspondence about the methods and procedures employed in ongoing investigations and enforcement activities"; and (2) "records of evidence, analysis of evidence, and derivative communications discussing or otherwise incorporating evidence." *Lewis*, 2020 WL 1667656, at *5. That decision was affirmed on appeal, albeit in an unpublished opinion. *See Lewis v. U.S. Dep't of the Treasury*, 851 F. App'x 214, 216 (D.C. Cir. 2021) ("On the record at hand, and in view of the deference given to an agency's predictive judgment that disclosure will harm ongoing proceedings, there is no doubt that FinCEN met its burden with respect to Exemption 7(A)." (citing *CREW*, 746 F.3d at 1098)).

Accordingly, the Court should accept the functional categories proposed by the Department.

### 2. The Department has conducted a record-by-record review in order to assign the withheld-in-full records into those categories.

The enclosed declaration confirms that the Department reviewed all 155 records and determined that each falls into at least one of the functional categories above. *See* SUMF ¶ 11. This satisfies the second step of the D.C. Circuit's framework.

### 3.    The Department has explained how the release of each category would interfere with enforcement proceedings.

Most importantly, the Department has explained why releasing any of these categories of information would reasonably be expected to interfere with enforcement proceedings. As noted above, courts in this district have accepted similar explanations in other cases. *See Dillon*, 102 F. Supp. 3d at 291–92; *Shapiro*, 2020 WL 3615511, at *17; *Lewis*, 2020 WL 1667656, at *5; *see also Simbaqueba v. U.S. Dep't of Def.*, No. 2:11-cv-62, 2012 WL 870862, at *8 (S.D. Ohio Mar. 14, 2012).

"The principal purpose of Exemption 7(A) is to prevent disclosures [that] might prematurely reveal the government's cases in court, its evidence and strategies, or the nature, scope, direction, and focus of its investigations, and thereby enable suspects to establish defenses or fraudulent alibis or to destroy or alter evidence." *Maydak v. U.S. Dep't of Just.*, 218 F.3d 760, 762 (D.C. Cir. 2000). In this case, the Department has explained why releasing any of the categories of records would defeat that purpose:

**1.a.** The Department withheld records—predominantly emails—in which prosecutors and other employees assigned to the Hunter Biden investigation discussed evidence relevant to the case. Releasing such records could interfere with that proceeding in obvious ways. *See* Cain Decl. ¶ 41. It would give the jury pool and the general public a preview of what evidence the government might have, before it has been properly admitted at trial. *Id.* These records would reveal the sources of evidence and thus jeopardize those sources. *Id.* And it would impermissibly reveal the work product of prosecutors, including their evaluation of the evidence.

**1.b.** The Department also withheld records—again, mostly emails—that scheduled, confirmed, or otherwise discussed specific investigatory steps. *Id.* ¶ 42. Revealing the steps taken—or not taken—would effectively paint a roadmap of the government's investigation, which could be used to thwart that investigation. *Id.* And it could implicate particularly sensitive means

of collecting information, such as the grand-jury process, which is specifically protected by other authority. *See id.*; § II.B.1., *infra*.

**1.c.** The Department withheld email communications and other records in which members of the investigative team discussed strategy. Releasing records of the government's case strategy would be particularly harmful to law enforcement proceedings. Cain Decl. ¶ 43. Anyone with knowledge of the government's strategy would be uniquely positioned to defeat that strategy. *Id.* Given their nature, many of these records would also be exempt in full under FOIA Exemption 5, which shields (among other things) deliberative materials and attorney work product. *See* § II.B.2, *infra*.

**2.a.** The Department withheld records of internal coordination, both among U.S. Attorneys' Offices and across Department components. Those records, if released, could interfere with proceedings by illuminating their scope and course to date—information that could be used by subjects or targets of an investigation to their advantage. *Id.* ¶ 44. In this case, acknowledging coordination could betray the substantive scope of criminal proceedings. *Id.* And even seemingly benign coordination, such as requests for office space or administrative support, could give targets of the investigation a useful chronology of the government's efforts to date. *Id.*

**2.b.** Apart from logistical coordination, the Department also withheld records of "formal or legal coordination." *Id.* ¶ 45. That includes requests or discussion of potential partnering agreements between U.S. Attorneys' Offices, which is a major (and revelatory) step in any investigation. *Id.* Any of this information, if released, could interfere with ongoing or future proceedings. *Id.*

**2.c.** Finally, the Department withheld records pertaining to case-team composition. *Id.* ¶ 46. As with category 2.a., revealing this sort of information would tend to reveal the substantive scope of any investigation or prosecution. *Id.* For example, adding a prosecutor from a particular

DOJ component could signal that the government was bringing (or considering bringing) charges of a particular type. *Id.* The same would be true of case agents, investigators, analysts, etc. *Id.* The Department thus has a strong interest in safeguarding its case team's composition, how that composition may have changed, and when it may have changed. *Id.*

Courts must "give deference to an agency's predictive judgment" about interference with enforcement proceedings. *CREW*, 746 F.3d at 1098. But even on a non-deferential review, the Department's explanations would more than suffice. All 155 records were properly withheld in full under Exemption 7(A).

### B.     The Records Are Also Withheld, In Whole or In Part, Under Other FOIA Exemptions.

Even if the foregoing records had not been withheld categorically under Exemption 7(A), they would still be withheld (in whole or in part) under other exemptions. While the Department need not explain the applicability of each exemption to each part of the 153 records—because that would defeat the purposes of the categorical approach—the record is clear that other exemptions apply in addition to 7(A).

### 1.     Exemption 3.

FOIA Exemption 3 protects records, or parts of records, "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3). "A common example of a qualifying Exemption 3 statute is Federal Rule of Criminal Procedure 6(e), which bars disclosure of 'a matter occurring before the grand jury.'" *Bartko v. U.S. Dep't of Just.*, 898 F.3d 51, 73 (D.C. Cir. 2018) (quoting Fed. R. Crim. P. 6(e)(2)(B)). "Specifically, Rule 6(e) protects information that would 'tend to reveal some secret aspect of the grand jury's investigation, including the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, or the deliberations or questions of jurors.'" *Id.* (quoting *Hodge v. Fed. Bureau Inv.*, 703 F.3d 575, 580 (D.C. Cir. 2013) (cleaned up)).

In this case, many records withheld under Exemption 7(A) are protected, in whole or in part, by Federal Rule of Criminal Procedure 6(e)—and thus by FOIA Exemption 3. Cain Decl. ¶ 13. That is, many of the records would reveal aspects of the grand-jury investigation(s) in this case—whether the evidence obtained, the source(s) of such evidence, or the timeline on which that evidence was obtained. *Id.*

### 2.     Exemption 5.

FOIA Exemption 5 protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency" 5 U.S.C. § 552(b)(5). The exemption encompasses, as relevant here, "the deliberative process privilege, attorney-client privilege, and attorney work-product privilege." *Cabezas v. Fed. Bureau of Inv.*, -- F.4th --, No. 22-5170, 2024 WL 3547243, at *4 (D.C. Cir. July 26, 2024) (quoting *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 267 (2021)).

Many of the 153 records withheld under Exemption 7(A) are exempt, in whole or in part, under Exemption 5. *See* Cain Decl. ¶¶ 18, 27–28. For example, emails discussing the government's case strategy are undoubtedly exempt under the work-product doctrine. Emails about whether to take specific investigatory steps and recommendations to superiors would also qualify as deliberative materials eligible for protection under Exemption 5. While the Department need not enumerate every application of Exemption 5, because these records are categorically withheld under Exemption 7(A), it is apparent that Exemption 5 also shields many of these records.

### 3.     Exemptions 6, 7(C), and 7(F).

Exemptions 6, 7(C) and 7(F) all protect—to varying degrees, and in different contexts—personal privacy. Exemption 6 protects information in "personnel and medical files and similar files" if disclosing that information "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) only applies to "records or information compiled

for la enforcement purposes," but it imposes a lower threshold for withholding: if disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* § 552(b)(7)(C); *see Am. Civ. Lib. U. v. U.S. Dep't of Just.*, 655 F.3d 1, 6 (D.C. Cir. 2011) (describing Exemption 7(C) as a "lower bar for withholding material" than Exemption 6). And Exemption 7(F), which is similarly limited to law-enforcement records, shields against disclosure that "could reasonably be expected to endanger the life or physical safety of any individual." *Id.* § 552(b)(7)(F).

All three exemptions would apply, at least in part, to the 153 records withheld in full under Exemption 7(A). *See* Cain Decl. ¶ 35. Many of the names and much of the contact information—email addresses, phone numbers, physical addresses, etc.—in these records (mostly emails) would be properly withheld under Exemption 6. And because all 155 records were compiled for law-enforcement purposes, *see* Cain Decl. ¶ 38, the Department would only have to clear the "lower bar" of Exemption 7(C) in order to protect such information. *Am. Civ. L. U.*, 655 F.3d at 6. Exemption 7(C) is not limited to government employees; it would also protect any information that could invade Mr. Biden's, a witnesses', or anyone else's privacy. Cain Decl. ¶ 36. Finally, because members of the Hunter Biden investigation and prosecution teams continue to face undue harassment—including threats to their (and their families') physical safety, *see* Cain Decl. ¶ 34—Exemption 7(F) provides yet another backstop for withholding that information.

**C.     Two Records Are Properly Withheld In Full Under Exemption 5.**

The Department withheld two records in full under Exemption 5, not Exemption 7(A). *See* Cain Decl. ¶¶ 22–24 & Ex. 4 ("*Vaughn* Index") at 23. These records are both draft letters in response to a congressional inquiry from Congressman Kenneth Buck. *Id.* ¶¶ 22–24. As noted above, Exemption 5 encompasses the work-product doctrine and the deliberative-process privilege. *See Cabezas*, -- F.4th at --, 2024 WL 3547243, at \*4.

It is well established that records of a "Department's internal deliberations about how to respond to press and Congressional inquiries are protected by the deliberative process privilege." *Husch Blackwell LLP v. U.S. Env't Prot. Agency*, 442 F. Supp. 3d 114, 123 (D.D.C. 2020) (quoting *Comm. on Oversight and Gov't Reform, U.S. House of Reps. v. Lynch*, 156 F. Supp. 3d 101, 112 (D.D.C. 2016) (internal alterations omitted). In this case, the Department has reviewed both drafts and confirmed that they are predecisional and deliberative. Cain Decl. ¶ 22. Specifically, the draft response is addressed to Congressman Buck's February 17, 2021 request that the Department retain Mr. Weiss as either the U.S. Attorney for the District of Delaware or appoint him as a Special Counsel. The draft, and edits to that draft, reflect deliberations over how the Department would respond to the congressman's letter, which implicated an ongoing investigation that had not yet been publicly acknowledged. *Id.* ¶ 23. These are sensitive subjects, over which candid deliberations are critical. *Id.* ¶ 24.

Furthermore, as required by FOIA, "the agency reasonably foresees that disclosure would harm an interest protected by" the deliberative-process privilege. 5 U.S.C. § 552(a)(8)(i)(I); Cain Decl. ¶¶ 23–24. That privilege is meant to foster the fulsome and frank exchange of ideas within an agency. "It reflects the view that if agencies were 'to operate in a fishbowl, the frank exchange of ideas and opinions would cease and the quality of administrative decisions would consequently suffer.'" *Waterman v. Internal Revenue Serv.*, 61 F.4th 152, 157 (D.C. Cir. 2023) (quoting *Dudman Commc'ns Corp. v. Dep't of the Air Force*, 815 F.2d 1565, 1567 (D.C. Cir. 1987) (cleaned up)). If Department employees knew that their draft responses to Congress—or proposed edits to such drafts—would be made public, that would chill employees from offering frank suggestions, which would keep the agency from making the best possible decision. Cain Decl. ¶ 24. *See Waterman*, 61 F.4th at 157 ("The 'ultimate purpose' of the deliberative process privilege is 'to prevent injury to the quality of agency decisions.'" (quoting *Nat. Lab. Rel. Bd.*, 421 U.S. at 151)). The Department

also conducted a careful, line-by-line review of the 131 redacted pages to determine whether any information could reasonably be segregated for release. Cain Decl. ¶¶ 57–58. It could not. *Id.*

## III. THE DEPARTMENT WAS JUSTIFIED IN WITHHOLDING 58 RECORDS IN PART.

The Department released 58 records in part—*i.e.*, with certain redactions taken. As noted above, Plaintiffs agreed not to dispute the Department's withholding of (1) names of congressional staffers; (2) names of Delaware U.S. Attorney's Office employees junior to the Criminal Chief; (3) names of other Department of Justice employees who are in non-supervisory, non-public-facing roles; and (4) email addresses, phone numbers, or physical addresses.

That leaves 25 unique withholdings before the Court, which may be summarized as follows:

| # | Citation | Record | Exemption(s) | Description |
|---|----------|--------|--------------|-------------|
| 1 | Rev'd 1st Interim Resp. at 1, 40, 42, 43, 48, 116, 119, 121, 123; 3d Interim Resp. at 132 | Email between EOUSA and David Weiss re: "Congressional Inquiry regarding Hunter Biden" (April 1, 2021) | (b)(5) | Comment from EOUSA employee re drafting process and participants. |
| 2 | Rev'd 1st Interim Resp. at 39, 41, 46, 115, 122. | Email chain among USAO-DE and EOUSA re "Congressional Inquiry regarding Hunter Biden" (April 1, 2021) | (b)(5) | Comment from EOUSA employee re drafting process (whether, and how to edit a draft letter in response to congressional inquiry). |
| 3 | Rev'd 1st Interim Resp. at 43, 119, 120. | Email chain among USAO-DE and EOUSA re "Congressional Inquiry regarding Hunter Biden" (April 1, 2021) | (b)(5) (b)(7)(E) | Comment from Mr. Weiss on how to frame letter in response to congressional inquiry.<br><br>Comment includes an internal filename used to refer to Hunter Biden investigation. |

| 4 | Rev'd 1st Interim Resp. at 51 (twice). | Email chain among USAO-DE employees and other DOJ Components re "WSJ article" (March 28, 2022) | (b)(7)(E) | Internal filename used to refer to investigation into Hunter Biden. |
|---|---|---|---|---|
| 5 | Rev'd 1st Interim Resp. at 58. | Email chain among USAO-DE employees re "2022-05-09 CEG RHJ to USA Weiss (Biden Investigation)" May 25, 2022) | (b)(5) | Comment from EOUSA employee on strategy for responding to congressional inquiry. |
| 6 | Rev'd 1st Interim Resp. at 58. | Email chain among USAO-DE employees re "2022-05-09 CEG RHJ to USA Weiss (Biden Investigation)" May 25, 2022) | (b)(5) | Comment from EOUSA employee on strategy for responding to congressional inquiry. |
| 7 | Rev'd 1st Interim Resp. at 58. | Email chain among USAO-DE employees re "2022-05-09 CEG RHJ to USA Weiss (Biden Investigation)" May 25, 2022) | (b)(5) | Comment from First Assistant U.S. Attorney ("FAUSA") on strategy for responding to congressional inquiry. |
| 8 | Rev'd 1st Interim Resp. at 59. | Email chain among USAO-DE employees re "2022-05-09 CEG RHJ to USA Weiss (Biden Investigation)" May 25, 2022) | (b)(5) | Comment from FAUSA on substance of potential response to congressional inquiry. |
| 9 | Rev'd 1st Interim Resp. at 81. | Untitled email dated August 9, 2022 | (b)(7)(A) | Email from Mr. Weiss to himself with certain information relevant to the ongoing investigation. |
| 10 | Rev'd 1st Interim Resp. at 82, 99, 108. | Email chain among USAO-DE employees re "2022-05-09 CEG RHJ to USA Weiss (Biden Investigation)" (June 7, 2022) | (b)(5) | Comment from FAUSA on strategy for responding to congressional inquiry. |

| 11 | Rev'd 1st Interim Resp. at 82. | Email chain among USAO-DE employees re "2022-05-09 CEG RHJ to USA Weiss (Biden Investigation)" (June 7, 2022) | (b)(5) | Comment from USAO-DE employee on strategy for responding to congressional inquiry. |
|----|----|----|----|----|
| 12 | Rev'd 1st Interim Resp. at 83. | Email chain among USAO-DE employees re "2022-05-09 CEG RHJ to USA Weiss (Biden Investigation)" (June 7, 2022) | (b)(5) | Comment from FAUSA on process for responding to congressional inquiry. |
| 13 | Rev'd 1st Interim Resp. at 83. | Email chain among USAO-DE employees re "2022-05-09 CEG RHJ to USA Weiss (Biden Investigation)" (June 7, 2022) | (b)(5) | Comment from quoted email re process for responding to congressional inquiry. |
| 14 | Rev'd 1st Interim Resp. at 89, 94. | Email chain among USAO-DE employees re "2022-05-09 CEG RHJ to USA Weiss (Biden Investigation)" (June 2, 2022) | (b)(5) | Comment from Mr. Weiss on process for responding to congressional inquiry. |
| 15 | Rev'd 1st Interim Resp. at 106. | Email chain among USAO-DE employees re "2022-05-09 CEG RHJ to USA Weiss (Biden Investigation)" (July 7, 2022) | (b)(5) | Suggestion from USAO-DE employee re strategy for responding to congressional inquiry. |
| 16 | Rev'd 1st Interim Resp. at 129. | Email chain among USAO-DE employees re "Story" (October 6, 2022) | (b)(5) | Suggestion from USAO-DE Criminal Chief re case strategy in wake of news article about investigation. |
| 17 | 2d Interim Resp. at 4, 11. | Email chain among USAO-DE employees re "2022-05-09 CEG RHJ to USA Weiss (Biden Investigation)" (May | (b)(5) | Comments from Mr. Weiss on process, and suggestions for substance, for response to congressional inquiry. |

| | | | 25, 2022) | | |
|---|---|---|---|---|---|
| 18 | 2d Interim Resp. at 11. | | Email chain among USAO-DE employees re "2022-05-09 CEG RHJ to USA Weiss (Biden Investigation)" (May 25, 2022) | (b)(5) | Comments from FAUSA on process for responding to congressional inquiries. |
| 19 | 3d Interim Resp. at 4 | | Email chain among USAO-DE and USAO-C.D. Cal. re "WSJ article today" (October 7, 2022) | (b)(7)(A) | Email among prosecutors in different U.S. Attorneys' offices in wake of news article re Hunter Biden investigation. |
| 20 | 3d Interim Resp. at 131 | | Email chain among USAO-DE employees re "2022-10-26 CEG RHJ to USA Weiss (Biden Investigation)" (October 26, 2022) | (b)(5) | Comment by FAUSA on strategy for responding to congressional inquiry. |
| 21 | 3d Interim Resp. at 134 | | Email chain among USAO-DE employees re "2022-05-09 CEG RHJ to USA Weiss (Biden Investigation)" (June 2, 2022) | (b)(5) | Comment from FAUSA re responding to congressional inquiry. |
| 22 | 3d Interim Resp. at 134 | | Email chain among USAO-DE employees re "2022-05-09 CEG RHJ to USA Weiss (Biden Investigation)" (June 2, 2022) | (b)(5) | Comment from FAUSA re strategy for responding to congressional inquiry. |
| 23 | 3d Interim Resp. at 134 | | Email chain among USAO-DE employees re "2022-05-09 CEG RHJ to USA Weiss (Biden Investigation)" (June 2, 2022) | (b)(5) | Comment from FAUSA re strategy for responding to congressional inquiry. |
| 24 | 3d Interim Resp. at 139. | | Email chain among USAO-DE employees and OLA re "Congressional | (b)(5) | Feedback from FAUSA on draft response to congressional inquiry. |

| | | Inquiry regarding Hunter Biden" (April 1, 2021) | | |
|---|---|---|---|---|
| 25 | 3d Interim Resp. at 139 | Email chain among USAO-DE employees and OLA re "Congressional Inquiry regarding Hunter Biden" (April 1, 2021) | (b)(5) | Feedback from EOUSA employee on draft response to congressional inquiry. |

The common thread is that all portions redacted under Exemption 5 contain deliberations or otherwise privileged discussions about how to respond to congressional inquiries about an ongoing criminal investigation. Cain Decl. ¶ 25. As noted above, it is well established that Executive deliberations over responses to Congress are covered by Exemption 5. *Husch Blackwell LLP*, 442 F. Supp. 3d at 123. The Department has verified that all passages redacted under the deliberative-process privilege are predecisional and deliberative. Cain Decl. ¶ 25.

Moreover, as required by FOIA, "the agency reasonably foresees that disclosure would harm an interest protected by" the deliberative-process privilege. 5 U.S.C. § 552(a)(8)(i)(I); Cain Decl. ¶ 26. As noted above, that privilege is meant to foster the fulsome and frank exchange of ideas within an agency. *Waterman*, 61 F.4th at 157. As with the draft letters discussed above, foreknowledge that deliberations over responses to Congress would be made public would chill the openness of future deliberations when responding to Congress. As formal correspondence to a coordinate branch of government, these letters are important communications and thoroughly vetted. The disclosure of predecisional comments to draft letters to Congress would chill the willingness to offer such comments, thereby reducing the quality of the final product. *Id.*; *see Waterman*, 61 F.4th at 157 ("The 'ultimate purpose' of the deliberative process privilege is 'to prevent injury to the quality of agency decisions.'" (quoting *Nat. Lab. Rel. Bd.*, 421 U.S. at 151)). The Department also conducted a careful, line-by-line review of the 131 redacted pages to determine whether any information could reasonably be segregated for release. Cain Decl. ¶¶ 57–

58. It could not. *Id.*

The Department also applied Exemption 7(E) to two instances in which an internal filename was used in reference to the Hunter Biden investigation.[2] Exemption 7(E) covers law-enforcement records whose release "would disclose techniques and procedures for law enforcement investigations or prosecutions." 5 U.S.C. § 552(b)(7)(E). Courts in this district have upheld the application of Exemption 7(E) to "internal identifying codes," *Rojas-Vega v. U.S. Immigr. & Customs Enf't*, 302 F. Supp. 3d 300, 310–11 (D.D.C. 2018); "internal agency codes," *Ortiz v. U.S. Dep't of Just.*, 67 F. Supp. 3d 109, 123 (D.D.C. 2014); numerical codes used to identify information and individuals, *Miller v. U.S. Dep't of Just.*, 872 F. Supp. 2d 12, 29 (D.D.C. 2012); and "a code name for a Secret Service vehicle," *Schwarz v. U.S. Dep't of Treasury*, 131 F. Supp. 2d 142, 150 (D.D.C. 2000), *aff'd*, No. 00-5453, 2001 WL 674636 (D.C. Cir. May 10, 2001) (per curiam). In this case, the Department determined that releasing this internal filename could reveal law enforcement techniques or procedures. *See* Cain Decl. ¶ 55. Specifically, someone who knew the filename for the Hunter Biden investigation could associate other records or information bearing that filename *to* the Hunter Biden investigation—a link that would not otherwise be apparent. *Id.* And that link could be used to discern the techniques and procedures used to investigate Mr. Biden, which is precisely the interest that Exemption 7(E) protects. *Id.* Because disclosing the filename would harm that interest, and cannot reasonably be segregated and released, it was properly withheld.

Finally, the Department redacted two passages under Exemption 7(A). *See* Cain Decl. ¶ 48; *Vaughn* Index at 8, 17. The first passage would, if released, reveal Mr. Weiss's thought process as it concerned the ongoing investigation into Hunter Biden. Cain Decl. ¶ 50. The second passage would reveal a prosecutor's thought process as it pertained to (then) recent news coverage of the

---

[2] The two unique passages appeared a total of five times within the 58 withheld-in-part records.

yet-unpublic investigation. *Id.* ¶ 51. These are paramount interest protected by Exemption 7(A). *See Maydak*, 218 F.3d at 762 ("The principal purpose of Exemption 7(A) is to prevent disclosures [that] might prematurely reveal the government's cases in court, its evidence and strategies, or the nature, scope, direction, and focus of its investigations . . . ."). Disclosing either of these passages would harm that interest. Cain Decl. ¶¶ 50–51. And the Department has verified that neither of these passages could reasonably be segregated for release. *Id.* ¶¶ 57–58.

The Department was justified in applying every redaction to the 131 pages of records released in part.

## CONCLUSION

For the foregoing reasons, Plaintiffs should grant Defendant's motion and enter final judgment in the Department's favor.


Dated:  August 23, 2024                  Respectfully submitted,

                                         BRIAN M. BOYNTON
                                         Principal Deputy Assistant Attorney General

                                         ELIZABETH J. SHAPIRO
                                         Deputy Branch Director

                                         /s/ *Jason C. Lynch*
                                         JASON C. LYNCH (D.C. Bar No. 1016319)
                                         Trial Attorney
                                         Federal Programs Branch
                                         U.S. Department of Justice, Civil Division
                                         1100 L Street, NW
                                         Washington, DC 20005
                                         Telephone: (202) 514-1359
                                         Email: Jason.Lynch@usdoj.gov

                                         *Counsel for Defendant*